IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAUL REVERE TRANSPORTATION, LLC,<br><br>Defendant. | CIVIL ACTION NO. 06 CA 12297 RCL |

UNITED STATES' STATEMENT OF MATERIAL FACTS

1. Paul Revere Transportation LLC (hereinafter "Paul Revere"), is a company doing business in the Commonwealth of Massachusetts. Ex. A, Complaint; Ex. B, Answer.[1/]

2. Paul Revere operated vehicles out of a facility at Reading Street, in Roxbury Massachusetts. Ex. C, 8/29/07 Deposition of Richard Daley at 12:22-13:5 (hereinafter Daley 8/29/07).

3. In March and April of 2006, an inspector from the EPA visited the Paul Revere Roxbury facility ("hereinafter "the facility") located at 59 Reading Street in Roxbury, Massachusetts. Ex. D, 1/22/08 EPA 30(b)(6) Deposition of Abdi Mohamoud at 26:18-22 (hereinafter "Mohamoud"); Exs. E, F (Inspection Notes); Affidavit of Abdi Mohamoud ¶ 3 (hereinafter "Aff.").

4. The inspector visited the facility seven separate times in seven weeks. Exs. E, F; Ex. G (2006 Calendar); Aff. ¶ 4.

5. During this period, the inspector witnessed between 13 and 28 vehicles, mainly buses, idling for extensive periods of times. Exs. E, F; Aff. ¶8.

6. Vehicles regularly idled for periods of almost one hour, and sometimes vehicles idled for nearly two hours:

   - On Wednesday March 1, 2006 between 5:27 a.m. and 6:30 a.m., 13 vehicles idled for periods between 12 minutes and an hour and three minutes. Of these, three vehicles idled for more than an hour. During 5:28 a.m. and 5:50 a.m., 8 vehicles idled at the same time for this 22 minute period, and 3 of them continued to idle until 6:30 a.m., more than an hour. Exs. E, F; Aff. ¶6-23.
   - On Wednesday March 8, 2006 between 5:31 a.m. and 7:02 a.m., 13 vehicles idled

[1/] All Exhibits are attached the Declaration of Rachel A. Hankey.

for periods between 31 minutes and an hour and thirty one minutes. Of these, 6 vehicles idled for over an hour, including one for over an hour and a half. Between 5:31 a.m. and 6:08 a.m., 12 vehicles idled at the same time for this 38 minute period, and 6 of those vehicles continued to idle past 6:30, a total of 59 minutes. Id.

- On Wednesday March 15, 2006 between 5:26 a.m. and 6:58 a.m., 13 vehicles idled for periods between 22 minutes and an hour and thirty two minutes. Of these, 6 vehicles idled for over an hour, including 3 for over an hour and a half. Between 5:26 a.m. and 6:01 a.m., 12 vehicles idled at the same time for this 35 minute period, and 6 of those vehicles continued to idle past 6:30 a.m., more than an hour. Id.
- On Tuesday March 21, 2006 between 5:24 a.m. and 6:59 a.m., 14 vehicles idled for periods between 10 minutes and an hour and twenty eight minutes. Of these, 3 vehicles idled for over an hour. Between 5:24 a.m. and 5:56 a.m., 9 vehicles idled at the same time for this 32 minute period, and 3 of those vehicles continued to idle past 6:30 a.m., more than an hour. Id.
- On Thursday March 30, 2006 between 5:09 a.m. and 7:00 a.m., 23 vehicles idled for periods between 20 minutes and an hour and fifty one minutes. Of these, 12 vehicles idled for over an hour, including 2 for over an hour and a half. Between 5:09 a.m. and 5:50 a.m., 18 vehicles idled at the same time for this 41 minute period, and 11 of those vehicles continued to idle until 6:10 a.m. or later, more than an hour. Id.
- On Tuesday April 4, 2006 between 4:28 a.m. and 7:00 a.m., 26 vehicles idled for periods between 13 minutes and two hours. Of these, 7 vehicles idled for an hour or more, 4 for over an hour and a half. Between 5:00 a.m. and 5:40 a.m., 7 vehicles idled at the same time for this 40 minute period, and 5 of those vehicles continued to idle until 6:15 a.m. or later, a total of 55 minutes. Id.
- On Wednesday April 12, 2006 between 4:39 a.m. and 6:55 a.m., 28 vehicles idled for periods between 16 minutes and an hour and fifty eight minutes. Of these, 12 vehicles idled for over an hour, including 7 for over an hour and a half. Between 5:06 a.m. and 5:40 a.m., 14 vehicles idled at the same time in this 34 minute period, and 10 of those vehicles continued to idle until 6:00 a.m. or later., a total of 54 minutes. Id.

Exs E, F; Aff.¶ 17-24.

7. On each inspection, multiple vehicles were idling for extensive periods at the same time. Exs. E, F; Aff. ¶ 9; Ex. D, Mohamoud at 82:16-83:3.

8. The earlier the inspector arrived, the more vehicles he witnessed idling over periods of five minutes. Exs. E, F; Aff. ¶8.

- On Wednesday March 1, the inspection began at 5:27 and documented 13 violations.
- On Wednesday March 8, the inspection began at 5:31 and documented 13 violations.
- On Wednesday March 15, the inspection began at 5:26 and documented 13 violations.

- On Tuesday March 21, the inspection began at 5:24 and documented 14 violations.
- On Thursday March 30, the inspection began at 5:09 and documented 23 violations.
- On Tuesday April 4, the inspection began at 4:28 and documented 26 violations.
- On Wednesday April 12, the inspection began at 4:39 and documented 28 violations.

9. When he first visited the facility the inspector found several buses idling upon his arrival. Ex. D, Mohamoud at 32:8-33:19; Aff. ¶ 10.

10. The inspector would walk along the chain link fence next to the facility to confirm the vehicles were idling and document vehicle numbers. Ex. D, Mohamoud at 32:6-15, 37:16-38:5; Aff. ¶ 13.

11. During the last few inspections, the inspector began arriving at the facility earlier in the morning and eventually he visited early enough that he arrived before the vehicles were turned on. Ex. D, Mohamoud at 32:6-15, 37:16-38:5; Aff. ¶ 11, 12.

12. On the earlier mornings noted in the 11 above, the inspector would document the vehicle numbers he could see from outside the facility and then note each start and stop time. Ex. D, Mohamoud at 32:19-33:9; Aff. ¶ 13, 15.

13. Several times the inspector witnessed someone go from vehicle to vehicle and start them; the vehicles would then sit idle until driven off the lot. Ex. D, Mohamoud at 36:16-24, 38:8-20, 39:2-8; Aff. ¶12.

14. During these visits the inspector did not witness anyone working on any of the buses, despite the engines being clearly visible from the street. Ex. D, Mohamoud at 40:13-23, 41:4-7, 41:20-42:3; Ex. H, Mohamoud 6 (photographs); Aff. ¶ 16.

15. From the street, the inspector could see most Paul Revere vehicles which are lined up along the fence. Ex. D, Mohamoud at 80:2-19; Ex. H, Mohamoud 6 (photographs); Ex. I, 2/28/08 Deposition of Mary Jayne Fay at 35:2-26:2; Ex. C, 8/29/07 Deposition of Richard Daley at 13:6-14:11; Ex. J, R.D.-1 (drawing by Mr. Daley): Aff. ¶ 13.

16. The inspector could see vehicles were turned on when the lights would come on and a puff of exhaust would come out the tailpipe. Ex. D, Mohamoud at 38:9-20, 84:14-18; Aff. ¶ 14.

17. Overall at the Roxbury facility, the inspector documented 132 vehicles idling 6,110 minutes over the five minute limit. Exs. E, F; Aff. ¶ 6, 25.

18. In addition, the inspector witnessed 11 vehicles idling for more than five minutes, and totaling 53 minutes, at a location on Brookline Ave. on April 5, 2006. Exs. E. F; Ex. D, Mohamoud at 59:2-63:12; Aff. ¶ 24, 25.

19. Paul Revere has not denied that this idling occurred. Ex. K, 1/23/08 Paul Revere

30(b)(6) Deposition of Richard Dailey at 28:13-22 (hereinafter "Daley 30(b)(6)")[2]; Ex. L, 3/3/08 Paul Revere 30(b)(6) Deposition of Richard Brown at 32:18-33:7 (hereinafter "Brown").

20. The EPA sent a Notice of Violation (NOV) to Paul Revere on April 13, 2006 regarding the violations. Ex. M.

21. After receiving the NOV, Richard Dailey, General Manager of Paul Revere, went to the Roxbury facility and questioned two employees regarding the idling: the morning dispatcher, James Powers, and his supervisor, Mike Swartz. Ex. K, Daley 30(b)(6) at 49:8-50:3.

22. Mr. Powers admitted to Mr. Dailey, he was starting buses on cold mornings because of complaints, from customers and drivers, about the temperature in the mornings. Ex. K, Daley 30(b)(6) at 19:19-20:10; Ex. C, Daley 8/29/07 at 49:9-50:10.

23. Mr. Powers also told Mr. Daley, he wanted to make sure the buses were able to start and ready for service. Ex. K, Daley 30(b)(6) at 19:11-15.

24. Paul Revere admitted that the idling was a violation of the law. Exs. N, O; Ex. K, Daley 30(b)(6) at 49:19-50:3.

25. Mr. Dailey issued a disciplinary warning to Mr. Powers regarding the idling. Ex. O; Ex. K, Daley 30(b)(6) at 48:14-50:3.

26. The disciplinary letter to Mr. Powers stated "We have recently been informed that our trust in you has been misplaced and that you have failed to act responsibly in conformity with our policies and procedures. Specifically, you have violated the company's five minute idling rules which are also violations of state and federal mandates. . . Notwithstanding our repeated admonitions to you and to other employees, it has come to our attention that you have violated these guidelines." Ex. O.

27. Mr. Daley issued a disciplinary warning to Mr. Swartz regarding the idling. Ex. N; Ex. K, Daley 30(b)(6) at 48:14-50:3.

28. The disciplinary letter to Mr. Swartz stated "Over the past 3 weeks, I have investigated the complaint and during the investigation it was determined that Jim Powers, the AM Dispatcher, ordered the buses to be started on cold days, to allow the buses to build up air pressure and warm up. This act is in fact a violation of the EPA 5 minute idling rule. . . When I questioned you regarding the buses running in the yard on cold mornings, you stated that you were aware the buses were running. You also stated that you were aware that Mr, Powers told the shifter to start the buses at 5:00 AM on cold days." Ex. N.

29. Mr. Swartz confirmed that the statements in the disciplinary letter were accurate. Ex. P, 10/16/07 Deposition of Michael Swartz at 40:13-42:23 (hereinafter "Swartz").

30. Mr. Daley testified he went to the facility to discuss the "issue that we had a violation that the buses were idling in the morning," with Mr. Powers, and "he started the buses and that's why he was disciplined." Ex. K, Daley 30(b)(6) at 49:19-50:3.

---

[2] Mr. Daley also testified individually on 8/29/07.

31. In cold weather, which Mr. Powers described as below 35 degrees, Mr. Powers testified he would ask Paul Revere employees to start vehicles and make sure they were working. Ex. Q, 10/16/07 Deposition of James Powers at 32:17-34:25, 37:10-21, 44:21-51:21; Ex. K, Daley 30(b)(6) at 19:11-20:10, 49:19-50:3.

32. Mr. Powers would ask an employee to start multiple vehicles, five or six at a time, depending on the scheduled runs. Ex. Q, Powers at 37:10-21, 45:10-15, 48:1-52:3.

33. Mr. Powers would make the request for an employee to start the vehicles , a few vehicles at a time, several times throughout the morning,. Ex. Q, Powers at 37:10-21, 45:10-15, 48:1-52:3.

34. Mr. Powers testified he believed the vehicles were being turned off, however, Mr. Powers instructions did not include a request that the vehicles be turned off. Ex. Q, Powers at 47:2-3, 47:20-48:12.

35. Mr. Powers did not witness employees starting or stopping the vehicles during this process. Ex. Q, Powers at 27:11-15, 31:23-24, 42:2-5, 47:13-18.

36. Mr. Powers confirmed he followed this procedure for the last four to five years, as did his supervisor, Mr. Swartz. Id. at 34:6-20; Ex. P, Swartz at 19:18-20:14.

37. Mr. Swartz only believed the vehicles were being turned off because Mr. Powers told him they were. Ex. P, Swartz at 34:14-37:25.

38. Paul Revere has not identified any individuals who can explain why the vehicles were left idling. Ex. R (Defendant's Interrogatory Responses #4); Ex. K, Daley 30(b)(6) at 12:4-16, 18:6-19:10, 24:12-14, 28:22-29:4; Ex. S, 1/23/08 Paul Revere 30(b)(6) Deposition of James Viola at 19:10-17,21:22-25 (hereinafter "Viola"); Ex. T, 1/23/08 Paul Revere 30(b)(6) Deposition of John Carney at 45:15-46:7; Ex. L, Brown at 32:18-33:4; Ex. U (30(b)(6) Notice); Ex. V (List of Designees); Ex. W, 1/23/08 Paul Revere 30(b)(6) Deposition of Thomas Gedaminsky at 9:12-15:15.

39. Mr. Powers told Mr. Daley, he would instruct a cover person to start the vehicles. Ex. N Ex. K, Daley 30(b)(6) at 18:6-19:10.

40. Paul Revere has not spoken to any employees who started the vehicles at Powers direction. Ex. K, Daley 30(b)(6) at 12:4-16, 18:6-19:10, 24:12-14, 28:22-29:4; Ex. U, Ex. V.

41. Only the following individuals were identified as people with knowledge about the reasons for idling: Mr. Powers, Mr. Swartz, Mr. Viola, Mr. Gedaminsky and Mr. Dailey. Ex. R, #4.

42. None of the individuals identified as having knowledge regarding the reasons for idling can explain the reason for the idling. Ex. K, Daley 30(b)(6) at 12:4-16, 18:6-21:20, 24:12-14, 28:22-29:4; Ex. S, Viola at 19:10-17,21:22-25; Ex. T, Carney at 45:15-46:7; Ex. L, Brown at 32:18-33:4; Ex. W, Gedaminsky at 9:12-15:15.

43. Mr. Daley could not explain why the vehicles were idling for extensive periods. Ex. K, Daley 30(b)(6) at 28:13-30:19.

44. Mr. Viola could not explain why the vehicles were idling for extensive periods. Ex. S, Viola at 19:10-17, 21:22-25.

45. Mr. Powers and Mr. Swartz could not explain the length of time the vehicles idled, as they did not know how long the vehicles were idling. Ex. Q, Powers at 27:11-15, 31:23-24, 42:2-5, 47:13-17; Ex. P, Deposition of Swartz at 34:14-37:25.

46. Mr. Gedaminsky could not explain why the vehicles were idling for extensive periods. Ex. W, Gedaminsky at 9:12-15:15.

47. Paul Revere testified, under Rule 30(b)(6), it has no understanding of why the vehicles would be idling. Ex. U; Ex. V; Ex. K, Daley 30(b)(6) at 12:4-16, 18:6-21:20, 24:12-14, 28:22-29:4; Ex. S, Viola at 19:10-17,21:22-25; Ex. T, Carney at 45:15-46:7; Ex. L, Brown at 32:18-33:4.

48. Paul Revere only had two mechanics on site during the hours of 4:00 a.m and 6:00 a.m. during the subject period, and only one other mechanic might have been on site between 6:00 a.m. and 7:00 a.m. Ex. X 11/26/07 Deposition of Ernesto Aguilar at 12:12-19 (hereinafter “Aguilar”); Ex. S, Viola at 14:12-17; Ex. K, Daley 30(b)(6) at 29:22-30:1; Ex. Y, 11/26/07 Deposition of Gregory Roland at 30:16-23 (hereinafter “Roland”).Ex. K, Daley 30(b)(6) at 35:10-13; Ex. T, Carney at 64:9-15.

49. Drivers are not trained to diagnose problems on the vehicles, so it cannot be intimated that drivers were servicing the vehicles. Ex. S, Viola at 15:2-7.

50. Paul Revere schedules its drivers just ten minutes to prepare there vehicles for departure, from the time the driver checks in to when the vehicle is driven off the lot. They do not change this allotted time in cold weather. Ex. Z, 1/23/08 Paul Revere 30(b)(6) Deposition of Frederick Jones at 18:13-19:1.

51. Vehicles not needing repair would be ready in minutes. Ex. AA, 10/17/07 Deposition of Garvin Andrews at 17:18-20, 44:24-46:15; Ex. BB 10/17/07 Deposition of James Williams at 52:18-54:17; Ex. Y, Roland at 21:2-23.

52. Vehicle manuals warn against prolonged idling. Ex. CC, p. 1-6; Ex. DD, p.51.

53. Paul Revere operates a number of buses, but most are either Thomas buses or Neoplans. Ex. EE; Ex. C, Daley 8/29/07 at 14:12-14:24.

54. The manual for the Thomas bus recommends vehicles idle for only 3-5 minutes before operation. Ex. FF, p. 28.

55. The manual for the Neoplans also recommends running the engine at part throttle, not necessarily at idle, only for five minutes before applying a load. Ex. GG, p. 49.

56. The Thomas manual only recommends idling for more time, 10-15 minutes, when the temperature drops below negative ten degrees. Ex. FF, p. 28.

57. According to the National Climatic Data Center, the minimum temperature in Boston has never dropped below negative ten degrees in the five years preceding or during EPA’s inspections. Ex. HH; Declaration of Angeles Aponte ¶ 5.

58. According to Mary Jane Fay, vehicles have idled for extensive periods of time for many

years. Ex. II (notes); Ex. I, Fay at 13:18-17:6.

59. Ms. Fay has complained to Paul Revere about the idling numerous time over the years. Ex. II; Ex. I, Fay at 13:18-14:2, 39:13-40:3, 50:13-51:13, 53:3-56:6.

60. From her window, Ms. Fay can see the buses and feel the buses rumbling when they are on. Ex. I, Fay at 19:2-13.

61. Ms. Fay kept notes of some of her complaints to Paul Revere. There are entries on these notes as early as the year 2000 and they reflect complaints as late as 2005. Ex. II; Ex. I, Fay at 13:18-17:7-21.

62. Ms. Fay testified that her complaints do not represent the only idling, but only the times she was frustrated enough to call. Ex. I, Fay at 17:7-21, 53:3-56:6.

63. Ms. Fay would only call to complain if several vehicles had been idling for at least thirty minutes. Ex. I, Fay at 17:7-21, 53:3-56:6.

64. Ms. Fay confirmed that often vehicles were unattended when they were left idling. Ex. I, Fay at 31:23-32:20, 36:14-37:8.

65. Mr. Peter Henderson worked at the Paul Revere Roxbury facility from 1995 until January 2004 as a bus cleaner. Ex. JJ, 2/28/08 Deposition of Peter Henderson at 7:5-23 (hereinafter "Henderson").

66. Mr. Henderson, when he was a Paul Revere employee, would start the vehicles in the mornings in cold weather before their runs. He would check the run sheets prepared by the dispatcher and try to start the vehicles 10 minutes prior to their run and leave it for the driver. Ex. JJ, Henderson at 22:24-23:11, 29:19-30:9, 36:1-38:17, 44:5-45:14, 62:17-21.

67. Sometimes the schedule would change and a driver would take a different bus and the bus Mr. Henderson turned on would be left running. Ex. JJ, Henderson at 12:11-21, 29:19-30:9.

68. Mr. Henderson admitted he was not a mechanic who was trained to address air pressure problems; the mechanics had to do that. Ex. JJ, Henderson at 30:17-24.

69. Mr. Henderson, like other Paul Revere employees, testified that it only took five to 10 minutes for the air pressure to build before realizing there was a problem a mechanic had to address. Ex. JJ, Henderson at 31:7-16.

70. Mr. Henderson confirmed that he was told of complaints from the neighbors about noise from idling. Ex. JJ, Henderson at 27:7-18.

71. Paul Revere is no longer excessively idling. Aff. ¶ 27; Ex. I, Fay at 43:6-19, 47:16-48:3; Ex. Z, Jones at 14:9-15:3.

72. The inspector did an inspection of the Roxbury facility on April 17, 2007. During the visit the inspector did not witness any violations of the five minute idling rule. Aff. ¶ 27.

73. Mary Jane Fay testified that she had not noticed long periods of idling recently. Ex. I, Fay at 43:6-19, 47:16-48:3.

74. Paul Revere changed its practices since the NOV. Ex. Z, Jones at 14:9-15:3. Ex. Y, Roland at 22:10-23:5, 25:19-26:6. Ex. P, Swartz at 34:3-5.

75. Paul Revere conducts the same routes Monday through Friday. Ex. Z, Jones at 11:23-12:14.

76. The minimum number of violations witnessed on any single day of inspection was 13. Exs. E, F; Aff. 26.

77. Presuming the minimum number of violations for each week day which was unobserved during the seven weeks of inspection, there would be 364 violations, 13 x 28 (4 days the inspector was not there during the seven weeks x 7). Aff. ¶ 26.

78. According to the National Climatic Data Center, discounting weekdays and holidays, there have been 280 days where the minimum temperature dropped below 35 degrees in Boston since December 2002, excluding any days reflected on Ms. Fay's notes. Exs. HH, LL, G; Aponte Decl. ¶ 6.

79. According to the National Climatic Center for March and April 2006, the minimum temperature for Boston during the 7 days of inspection in 2006 was: March 1- 18 degrees; March 8- 27 degrees; March 15: 32 degrees; March 21: 23 degrees; March 30: 43 degrees; April 4: 37 degrees; April 12- 41 degrees.

80. Paul Revere is a person within the meaning of Section 302(e) if the CAA, 42 U.S.C. § 7602(e) and 310 CMR 7.00. Ex. NN (#3).

81. Paul Revere's buses and other vehicles fall within the term "motor vehicle" as defined under 310 CMR 7.00. Ex. NN (#4).

Respectfully submitted,

RONALD J TENPAS
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

s/Rachel A. Hankey
-
RACHEL A. HANKEY
Trial Attorney
Environmental Enforcement Section

Environmental and Natural
Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044
(202) 514-4454
rachel.hankey@usdoj.gov

MICHAEL J. SULLIVAN
United States Attorney

GEORGE B. HENDERSON, II
Assistant U.S. Attorney
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3272
George.henderson2@usdoj.gov

OF COUNSEL:
GREG DAIN
Senior Enforcement Counsel
U.S. Environmental Protection Agency
One Congress Street
Boston, MA 02114
(617) 918-1777