UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 06-cv-12297 RCL |
| v. ) | |
| ) | The Honorable Reginald C. Lindsay |
| ) | REQUEST FOR ORAL |
| ) | ARGUMENT |
| PAUL REVERE TRANSPORTATION, LLC, ) | |
| ) | |
| Defendant. ) | |

REPLY MEMORANDUM IN SUPPORT OF THE
UNITED STATES' MOTION FOR SUMMARY JUDGMENT

i

I. <u>INTRODUCTION</u>

The United States of America ("United States") files this reply memorandum to Defendant Paul Revere Transportation LLC's ("Paul Revere") Opposition to the United States' Motion for Summary Judgment in the above referenced matter. Paul Revere, in its opposition fails to establish a genuine issue of material fact and therefore summary judgment should be granted. Significantly, Paul Revere acknowledges, in its opposition to the United States' motion for summary judgment, that it idled vehicles in excess of the five minute limit provided in 310 Code of Massachusetts Regulations 7.11 ("CMR"). Defendant Paul Revere Transportation, LLC's Opposition to Plaintiff's Motion for Summary Judgment. at 11 ("D. Opp."). As established in the United States' memorandum in support of its motion for summary judgment, Paul Revere simply cannot explain why its vehicles were idling. In its opposition, Paul Revere presents no evidence to explain why a single vehicle witnessed by the Environmental Protection Agency ("EPA") inspector idled for extensive periods of time. Morever, Paul Revere in a attempt to avoid summary judgment, mischaracterizes testimony and the facts established in the record. Additionally, Paul Revere attempts to disavow the testimony of its own Rule 30(b)(6) witnesses arguing the witnesses did not have personal knowledge, not once in its entire memorandum acknowledging that the testimony relied on by the United States in its motion was given on behalf of Paul Revere by a witness designated to testify for the company. Paul Revere also relies on baseless attempts to challenge the credibility of the witnessed violations, which cannot create a genuine issue of material fact. Lastly, Paul Revere attempts to avoid its burden of proof, despite law to the contrary. All of these arguments are meritless, given that no genuine

issue of material fact exists regarding Paul Revere's liability, this Court should grant summary judgment against Paul Revere as a matter of law.

## II. TESTIMONY BY PAUL REVERE

Paul Revere, in its opposition, argues that the United States has incorrectly stated that "Paul Revere has not denied that it idled far in excess of the five minute limit numerous times." D. Opp. at 16. However, Defendant itself acknowledges in its own memorandum the truth of this fact, stating, "PRT does not dispute the fact that vehicles may have idled in excess of five minutes." D. Opp. at 11. Moreover, the United States' basis for this statement was testimony by Paul Revere's designated Rule 30(b)(6) witnesses. S.M.F. ¶19 (Dk. #29-3)[1]. (Q. Does Paul Revere deny that this idling occurred? A. No. Ex. K to U.S.S.J., Richard Daley at 28:20-21 (Dkt. #29-8)[2])(Q. Does Paul Revere deny that this idling occurred? A. No, Paul Revere does not deny that there were vehicles idling. Ex. L to U.S.S.J., Richard Brown at 32:25-33:4 (Dkt. #29-8)). Besides being the General Manager and Managing Director of Paul Revere respectively, the witnesses cited were designated pursuant to Federal Rule of Civil Procedure Rule 30(b)(6) specifically to testify regarding idling during the inspections. For example, Mr. Daley was designated to testify regarding "the reasons for idling of vehicles at the Roxbury facility and the basis for this knowledge, including during the weeks of February 26, 2006 through April 15, 2006." Ex. U, V to U.S.S.J. (Dkt. #29-11). Mr. Brown was designated to testify regarding "the procedures for idling, including the reasons for this idling, including during the weeks of

---

[1] S.M.F. refers to the United States' Statement of Facts filed with its motion for summary judgment. (Docket # 29-3)("Dkt. #")

[2] U.S.S.J. refers to exhibits attached to the United States' Motion for Summary Judgment. (Dkt. #29-5 through 29-16).

February 26, 2006 to April 15, 2006." Id.

Unbelievably, Paul Revere states in its opposition that "Plaintiff inexplicably quotes PRT managers and employees, who had no personal knowledge of the alleged idling violations in March and April, 2006," arguing that none of these witnesses had personal knowledge of the alleged violations as their offices were not located at the facility. D. Opp. at 15. Yet each of these witnesses, Mr. Daley, Mr. Brown, Mr, Carney, and Mr. Viola, was designated to testify regarding idling at the facility. Ex. U, V to U.S.S.J (Dkt. #29-11). This argument misrepresents the nature of Rule 30(b)(6) testimony, and not once in its opposition does Paul Revere acknowledge to the Court that this testimony was taken under Rule 30(b)(6). In essence, the United States has not quoted Paul Revere managers, it quoted Paul Revere *itself* as each of these witnesses was not testifying personally but on behalf of Paul Revere. Ex. U, V to U.S.S.J (Dkt. #29-11). Under Rule 30(b)(6) an organization "must designate one or more officers . . .who consent to testify on its behalf," and "the persons designated must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).[3]

As noted by numerous courts, "[t]he testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the organization, not the individual deponents." McLellan Highway Corp. v. United States, 95 F. Supp. 2d 1, 9 (D. Mass. 2000) (parenthetical omitted) (citation omitted); see e.g., PPM Fin., Inc. v. Norandal USA, Inc,. 392 F.3d 889, 894-895 (7th Cir. 2004); Topp, Inc. v. Uniden Am. Corp., 2007 U.S. Dist. LEXIS 88752, *5-6 (S.D. Fla. Nov. 28, 2007);

---

[3] Each witness testified they understood they were present to testify on behalf of Paul Revere. Ex. 1, Daley 1/23/08 at 5:14-17, 6:15-18; Ex. 2, Brown at 7:3-18, 25:5-26:11; Ex. 3, Carney at 6:1-11; Ex. 4, Viola at 7:9-24 (Exhibit 1-14 are attached to this memorandum).

Astrazeneca AB v. Mylan Labs., Inc. , 490 F.Supp. 2d 381, 520 (S.D.N.Y. 2007).[4/] Thus, contrary to Defendant's suggestion, the testimony of Rule 30(b)(6) witnesses James Viola, John Carney, Richard Brown, and Richard Daley on January 23, 2008, cited in the United States memorandum, constituted the position of Paul Reveret.[5/] [6/] See Raytheon Aircradt Co. v. United States, 2007 U.S. Dist. LEXIS 66156, *9-10 (D. Kan. Sept. 6, 2007) ("The Rule 30(b)(6) designee does not give his personal opinion. Rather he presents the corporation's 'position' on the topic. The designee testifies on behalf of the corporation and this holds it accountable.") (citations omitted); Kucenko v. Marion County Sheriff, 2007 U.S. Dist. LEXIS 41190, *13-14 (S.D. Ind. June 1, 2007) (rejecting defendant's attempt to argue its own 30(b)(6) deponent was merely expressing personal opinions rather than the views of the defendant) (citation omitted);

---

[4/] Failing to produce properly prepared witnesses for a 30(b)(6) deposition is sanctionable, and Defendant was obligated to substitute or supplement witnesses if it felt the testimony was deficient, something that defendant never did. See Brazoz River Auth. v. GE Ionics, Inc., 469 F.3d 416, 433 (5th Cir. 2006); Reilly v. Natwest Markets Group Inc., 181 F.3d 253, 268-69 (2nd Cir. 1999)(upholding district court's exclusion of witnesses in part because they were not produced for 30(b)(6)); Booker v. Mass. Dep't of Pub. Health, 246 F.R.D. 387, 389 (D. Mass. 2007) (corporation is obligated to prepare its witnesses to give knowledgeable and binding answers for the corporation); Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co., 201 F.R.D. 33, 37 (D. Mass. 2001) (the law is well established that 30(b)(6) deponent has an affirmative obligation to educate himself as to the matters regarding the corporation.)

[5/] Mr. Viola is Paul Revere's Director of Maintenance and has worked in the bus industry for more than 8 years, Mr. Daley is the General Manager and has more than 30 years in the bus industry, Mr. Carney is the former Director of Maintenance and has been in the industry more than 8 years, and Mr. Brown is the Managing Director. Considering their positions, the notion that these witnesses have no understanding of when and why idling would be required is preposterous, and as noted in the United States' memorandum, none of them could explain why numerous vehicles would simultaneously idle for extended periods of time. Ex. 4, Viola at 8:25-10:3; Ex. 5, Daley 8/29/07 at 9:1-12:21; Ex. 3, Carney at 10:8-11:9; Ex. 2, Brown at 9:4-21

[6/] This testimony is also an admission by Paul Revere, for which personal knowledge is also not required. Brookover v. Mary Hitchcock Memorial Hospital, 893 F.2d 411, 415-416 (1st Cir. 1990).

Industrial Hard Chrome, Ltd. v. Hetran, Inc., 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000) (noting that parties are bound by testimony given by their designated 30(b)(6) witness).

As these depositions were taken pursuant to Rule 30(b)(6), they can be used against the Defendant. See Astrazeneca AB v. Mut. Pharm. Co, 250 F. Supp. 2d 506, 517 (E.D. Pa. 2003). Indeed, Paul Revere is not permitted to disavow its previous testimony without adequate explanation. See e.g., Hyde v. Stanley Tools, 107 F. Supp. 2d 992, 992-993 (E.D. La 2000). Several courts have precluded parties from introducing evidence attempting to contradict or disavow previous testimony. In Rainey v. American Forest & Paper Ass'n, 26 F. Supp. 2d 82 (D.D.C. 1998), the court precluded a party from attempting to introduce affidavit's contradicting its Rule 30(b)(6) testimony, holding that unless a party can prove that the information was not known or accessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition. Id. at 94; see also, Black Horse Lane Assoc., L.P. v. Dow Chemical Corp., 228 F.3d 275, 299-305 (3rd Cir. 2000) (upholding district court's decision to preclude party from asserting a position and introducing evidence contrary to a position asserted during 30(b)(6) deposition.); Super Future Equities, Inc., v. Wells Fargo Bank Minn., No. 3:06-CV-0271-B, 2007 U.S. Dist. LEXIS 91947 (N.D. Tex. Dec. 14, 2007) (excluding affidavit attempting to contradict 30(b)(6) testimony). As noted by one court, "If a party states it has no knowledge or no position as to a set of alleged facts or area of inquiry at a Rule 30(b)(6) deposition, it cannot argue for a contrary position at trial without introducing evidence explaining the reasons for the change. Otherwise, it is the attorney who is giving evidence, not the party." United States v. Taylor, 166 F.R.D. 356, 362-63 (M.D.N.C. 1996). This rule is in line with the accepted principle that a witness cannot change its previous

testimony without explanation. See , Colantuoni v. Alfred Calcagni & Sons, 44 F.3d 1, 4-5 (1st Cir. 1994); Smith v. Mitre Corp., NO. 95-10724-RCL, 1996 U.S. Dist. LEXIS 20459 (D. Mass. June 20, 1996); Vexcon Chemicals, Inc. v. Curecrete Chemical Co., Inc., No. 07-943, 2008 U.S. Dist. LEXIS 25835, *6 (E.D. Pa. March 28, 2008) (finding 30(b)(6) testimony bound plaintiff and therefore there was no genuine issue of material fact); Caruastar Industries, Inc. v. North Georgia Converting, Inc., No. 3:04CV187-H, 2006 U.S. Dist. LEXIS 91829, *18-21 (W.D. NC Dec. 19, 2006)(excluding declaration attempting to contradict previous 30(b)(6) testimony); Texas Technical Institute v. Silicon Valley, Inc., No. H-04-3349, 2006 U.S. Dist. LEXIS 6257, *21 (S.D. Tex. Jan. 31, 2006).

### III. RAISING CREDIBILITY IS NOT SUFFICIENT TO ESTABLISH A GENUINE ISSUE OF FACT

As noted in the United States' memorandum, summary judgment is appropriate if "the non moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Masanoff v. Dubois, 899 F. Supp. 782, 785-86 (D. Ma. 1995) citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 127 S. Ct. 1769, 1776 (U.S. 2007).  Furthermore, "it is well established that a mere challenge to the credibility of a movant's witnesses without any supporting evidence does not raise a trialworthy issue of fact." Masanoff, 899 F. Supp. at 785-86; citing Favorito v. Pannell, 27 F.3d 716, 721 (1st. Cir. 1994).  Yet, a review of Defendant's response to the United States' Statement of Facts and opposition illustrates that this is precisely what Defendant has

6

attempted to do with respect violations witnessed by both the EPA inspector and Mary Jayne Fay, the neighbor to Paul Revere's facility. In so doing, Defendant completely mischaracterizes or incorrectly states testimony by these witnesses and others. The Court should reject Paul Revere's misguided arguments and grant summary judgment for the Plaintiff.

    A.    <u>Defendant Misstates and Mischaracterizes the Testimony of Mr. Mohamoud.</u>

Paul Revere attempts to attack the credibility of the EPA inspector's witnessed violations, arguing the inspector could not have seen whether the vehicles were idling. In its response to the United States' Statement of Facts, Paul Revere denies that most vehicles are parked along the fence at the Roxbury facility. D. Res. SMF[7] ¶15. Yet, Paul Revere cites nothing, provides nothing, to support this contention. In fact, both the dispatcher, Mr. Powers, and the General Manager, Mr. Daley, testified that the buses are parked along the fence, with vans behind them, and drew diagrams in their depositions illustrating this fact.[8] Ex. C to U.S.S.J. at 13:6-14:5 (Dkt. #29-5); Ex. J to U.S.S.J. (Dkt. #29-7); Ex. 5, Daley 8:24-9:6; Ex. 6, Powers at 17:8-19:10 and Powers Ex. 1.

Paul Revere also argues that from across the street, Mr. Mohamoud could not have seen the idling vehicles. This contention is also not supported by the evidence, Mr. Mohamoud testified that pictures produced in this matter, PRT00142, 145-146, illustrate his vantage point, and they clearly show that not only could Mr. Mohamoud see most Paul Revere vehicles, but

---

[7] D. Res. SMF refers to Defendant Paul Revere Transportation, LLC's Statement of Disputed Facts in Response to Plaintiff's Statement of Material Facts. (Dkt. #32).

[8] Paul Revere argues that Mr. Mohamoud could not have seen beyond the vehicles next to the fence, and yet Mr. Mohamoud specifically noted that while he could see that vehicles were idling beyond the first row of buses he did not take information on those buses. Ex. D to U.S.S.J at 37:20-38:5. (Dkt # 29-6).

also, that, even in daylight, when a vehicle was turned on and its lights come on, it could be seen from across the street.[9] Ex. 9, Mohamoud at 79:12-81:8; Ex.8, PRT00142, 145-146. This was confirmed by Ms. Fay, Paul Revere's neighbor who testified that from the ground you can see nearly the entire property. Ex. 7, Fay at 34:21-36:2. Moreover, Paul Revere states that Mr. Mohamoud would sit in his car without binoculars. D. Opp. at 4-5. In fact, Mr. Mohamoud testified that on his earlier visits he would park his car and walk along the fence, within feet of the buses, and make sure that the vehicles were running. Ex. 9, Mohamoud at 32:8-34:21, 37:1-38:23, 52:16-18, 76:18-78:22, 79:10-81:8. During his later visits, Mr. Mohamoud would sit in his car, with binoculars, noting, when the lights came on and there was exhaust, the vehicle start time. Ex. 9, Mohamoud at 76:18-78:22, 79:10-81:8. Mr. Mohamoud noted twice in his testimony that on his later visits when he would sit in his car he used binoculars, and yet Paul Revere specifically asserted he did not have them.[10] D. Opp at 5. Additionally, Paul Revere argues that Mr. Mohamoud could not have heard the buses come on from across the street. D. Opp. at 5. However, Mr. Mohamoud never testified he heard them from across the street. He

---

[9] Paul Revere argues that because it was dark, Mr. Mohamoud could not have seen anything. However, this only makes it more likely that Mr. Mohamoud would have been able to see the taillights illuminate when the vehicle was turned on. In a footnote, Paul Revere questions whether the lights being on indicates the vehicle is on. D. Opp. at 8. ft. 5. As with much of Paul Revere's assertions, Paul Revere cites no evidence to support this contention. As Mr. Mohamuod noted, he confirmed that vehicles were on when the lights were on when he walked the fence. Ex. 9, Mohamoud at 32:8-34:21, 37:1-38:23, 52:16-18, 76:18-78:22, 79:10-81:8. Additionally, Mr. Roland testified he would not have left the lights on after the vehicle was checked. Ex. 10, Roland at 31:11-14.

[10] In fact, the testimony cited by Paul Revere, on page 76, confirms that Mr. Mohamoud had binoculars. Paul Revere appears to misstate or mischaracterize testimony on several occasions. It is one thing to argue for a different interpretation of testimony, another to misstate. The United States hopes the Court takes this into account in its determinations.

testified on his first visits he would walk the fence and could hear that the vehicles were on from that vantage point. Ex. 9, Mohamoud at 32:8-34:21, 37:1-38:23, 52:16-18, 76:18-78:22, 79:10-81:8. Moreover, he could see the vehicles were on because the lights came on and could see exhaust from the tailpipes. Id.

### B. Defendant Misstates and Mischaracterizes the Testimony of Ms. Fay.

Similarly, Paul Revere misstates Ms. Fay's testimony regarding idling at Paul Revere. Paul Revere contends that Ms. Fay noticed only 12 buses idling, other than the ones in her notes. D. Opp. at 7. Contrary to Paul Revere's contention, Ms. Fay testified that she witnessed multiple buses idling for extended periods so many times she could not count. Ex. I to U.S.S.J at 53:14-55:12 (Dkt # 29-7). Rather, Ms. Fay testified that in addition to the 11 times in her notes, there were perhaps another 12 times that idling at Paul Revere was so bad that she called Paul Revere to complain. Ex. I at 53:3-7. Additionally, Paul Revere claims that Ms. Fay could not have known the same vehicles were idling. This, too, is contradicted by Ms. Fay's testimony, as she explicitly stated she knew it was the same bus as the signs were lit. Ex. I at 31:11-18, 50:19-51:8, 54:18-20; Ex. 7 at 24:10-25:9. Lastly, Paul Revere claims that Ms. Fay's testimony confirms that idling was necessary because she witnessed employees working on vehicles. In fact, Ms. Fay's testimony proves quite the opposite. She stated that even when one or two people were working on a vehicle, there would be as many as eight or ten vehicles running unattended at that time. Ex. I at 31:23-32:20, 55:2-8.

## IV. PAUL REVERE IDLED WITHOUT JUSTIFICATION

Paul Revere has not and cannot explain why any of the vehicles witnessed by EPA's inspector were idling. Paul Revere admits that its employees would start several vehicles at a

9

time to "check" that they were operational. D. Opp. at 11-13. This practice is not at issue. What is at issue is the practice of leaving those vehicles to idle for extensive periods of time. Paul Revere cites to testimony to explain why the vehicles should be checked in general, but nothing that can explain the lengths at which multiple vehicles idled simultaneously. In fact, there was not a single eye witness or Rule 30(b)(6) witness identified in discovery who testified that the vehicles witnessed idling by the inspector were idling out of necessity. Indeed, Paul Revere has not identified, in the course of discovery, a single person who, on the days witnessed by the inspector, started these vehicles at Mr. Powers direction. Mr. Daley and Mr. Brown were designated as Rule 30(b)(6) witnesses on behalf of Paul Revere regarding either the "information and answers provided" in response to the United States' First Request for Interrogatories, the "specific actions taken by Paul Revere" in response to these interrogatories, including searching for employees with knowledge, and the specific actions taken by Paul Revere in response to and to prepare for the Rule 30(b)(6) deposition. Ex. U, V to U.S.S.J. Mr. Daley and Mr. Brown testified Paul Revere did not consult with Mr. Powers or Mr. Swartz in preparing its responses to interrogatories in this matter, including regarding whether idling was necessary. Ex. K to U.S.S.J., Daley 17:2-5 (Dkt. # 29-8); Ex. L to U.S.S.J., Brown at 16:5-17:1 (Dkt. # 29-8); Ex.- at 19:1-13. Although Mr. Powers stated he instructed a "cover person" to start the buses, Paul Revere made no attempt to identify and interview any "cover people." Ex. K, Daley at 18:6-21. Nor did Paul Revere, in preparing and responding to the 30(b)(6) notice- which specifically sought testimony on the reasons for the idling and procedures for idling during the inspection- attempt to identify and speak to the cover person or anyone else Mr. Powers instructed during the inspections. Ex. K, Daley at 18:22-19:10; Ex. 1, Daley 1/23/08 at 21:2-5. Not a single Paul

Revere 30(b)(6) witness could identify a single person who started the vehicles. Ex. K, Daley 1/23/08 at 28:22-23; Ex. L, Brown 33:5-10; Ex. S, Viola at 19:10-17, 21:22-25 (Dkt. # 29-11). S.M.F. 42, 47.

Having not spoken to or identified a single person who started vehicles during the inspections, Paul Revere attempts to manufacture an explanation for the idling. Paul Revere cites to the testimony of a mechanic, Gregory Roland, to support its contention. However, Mr. Roland testified that Mr. Powers did not ask him to "check" vehicles, but only to work on vehicles that were already determined inoperable.[11] Ex. 10, Roland at 18:10-14, 19:1-13, 21:2-9. Nor did Mr. Henderson, cited by Defendant, testify that he was instructed by Mr. Powers or Paul Revere to start and check the vehicles. In fact, he reiterated several times that no one had instructed him to start the vehicles and idle them, he just did it. Ex. 12, Henderson at 24:3-6, 25:20-22. Additionally, Mr. Henderson testified that he would start the buses in the mornings and then leave them idling unattended until the driver arrived, and admitted it could sit idling for extended periods. Ex. JJ to U.S.S.J., Henderson at 12:9-21, 29:19-30:9, 62:17-24 (Dkt. #29-16). This conforms with testimony by both the inspector and Ms. Fay that vehicles idled unattended for lengthy periods. Paul Revere has no basis to assert that an unattended vehicle is idling necessarily, as how can anyone know if the pressure needs to build if no one is on the bus. This is supported by testimony from Mr. Kiernan, the former director of maintenance, who testified the vehicles should not be left unattended, yet this is precisely what all the evidence

---

[11] Paul Revere also cites testimony from Mr. Paul Kiernan who did not work at Paul Revere during the inspections, so he cannot possibly explain idling during the inspections. Ex. 11 (Mr. Kiernan's term date was 1/13/06) Additionally, Mr. Kiernan testified his understanding was that Mr. Roland and Mr. Aguilar would "check" the vehicles in cold weather, when he worked at Paul Revere, something they both denied. Ex. 10, Roland at 18:10-14, 19:1-13, 21:2-9; Ex. 13, Aguilar at 15:2-21, 18:23-19:2, 20:10-24.

11

demonstrates happened. Ex.14, Kiernan at 25:24-26:18. Paul Revere also cites to testimony by the drivers that they did not idle the vehicles, which is irrelevant, as Paul Revere itself admits Mr. Powers would instruct personnel other than the drivers- before the drivers arrived- to start the vehicles. D. Opp. at 8, 12.

Paul Revere also admits that there were only two mechanics on site before 6:00 a.m. D. SOF ¶46. Yet, the EPA inspector witnessed 8 vehicles idling simultaneously for more than 20 minutes before 6:00 a.m. on March 1st; 12 vehicles idling simultaneously for more than 30 minutes prior to 6:08 a.m. on March 8th; 12 vehicles idling simultaneously for more then 30 minutes before 6:01 a.m. on March 15th; 9 vehicles idling simultaneously for more than 30 minutes before 6:00 a.m. on March 21st;, 18 vehicles idling simultaneously for more than 40 minutes before 6:00 a.m. on March 30th; 7 vehicles idling simultaneously for more than 40 minutes before 6:00 a.m. on April 4th; and 14 vehicles idling simultaneously for more than 30 minutes before 6:00 a.m. on April 12, 2006. There simply is no testimony to support that these extensive idling times were necessary. Paul Revere only cites to the testimony of Mr. Henderson, a cleaner and not a mechanic or driver, who testified at most it could take 15 minutes for the air pressure to build, and Mr. Henderson testified this "was a really rare thing." D. Opp. at 10; Ex. 12, Henderson at 64:2-5. Out of 132 violations documented at the Roxbury facility, only 7 were 15 minutes or less. Ex. F to U.S.S.J. (Dkt. #29-7). All of the evidence illustrates that the vehicles were not idling necessarily.

V. PAUL REVERE HAS THE BURDEN OF SHOWING THAT IDLING WAS NECEESSARY

Defendant pleaded as an affirmative defense that the excessive idling was necessary. Because the defense of "necessity" is an affirmative defense, Paul Revere as the party asserting

12

the defense bears the burden of proving it. As discussed in the United States' Memorandum in support of its summary judgment motion, federal courts generally do not require proof of a negative (i.e., that Paul Revere's idling was "unnecessary"). See, e.g., Mashpee Tribe v. New Seabury Corp., 592 F.2d 575, 589-90 (1st Cir. 1979); In re Acushnet River & New Bedford Harbor, 722 F. Supp. 893, 901 n.21 (D. Mass. 1989). Paul Revere, arguing it should not have the burden, cites no federal law or Massachusetts state law to the contrary. In addition, Paul Revere admits that some court's shift the burden to those "peculiarly with knowledge", but contends this is not clear in Massachussetts. D. Opp. at 17. Contrary to Defendant's contention, however, Massachusetts has adopted the well recognized rule that "where facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue." See e.g, McCormick Evidence § 337 p. 475 (6th Ed.); William Rodman & Sons, Inc. v. State Tax Commission, 373 Mass. 606, 611 (1977)(placing burden on party to whom facts were more "readily available); Afienco v. Harvard Club of Boston, 365 Mass. 320, 331 (1974)(finding one reason for the burden is that the fact was more readily ascertainable by the defendant); Knowles v. Gilchrist Co., 362 Mass. 642, 651 (1972)(citing to McCormick for the proposition that the burden should rest with the party who is in the best position to determine what actually happened); Keene v. Brigham & Woman's Hospital, 7 Mass. L. Rep. 473. *25, 1997 Mass. Super. LEXIS 255 (1997) ("The Supreme Judicial Court stated that the burden of proof should rest on the party who is in the best position to determine what actually happened.").

Additionally, Defendant contends that it does not have the burden of proof that it falls one of the enumerated exceptions in the regulation based on the 1926 case of Ansell v. Boston, 254 Mass. 208. D. Opp. at 17. It is not clear that Ansell is still good law in Massachusetts, as Courts routinely hold that defendants bear the burden of showing it falls within an exception.

13

See e.g, Kelli K. Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 170, 732 N.E.2d 289, 294 (Mass. 2000);Figuereo v. Valverde, 60 Mass. App. Ct. 76, 81 (Mass. App. Ct. 2003); South Boston Sav. Bank v. Commissioner of Revenue, 418 Mass. 695, 698 (Mass. 1994); Quazi v. Barnstable County, 2006 Mass. Super. LEXIS 83, 12-13 (Mass. Super. Ct. Feb. 3, 2006). However, it is irrelevant because as noted in the quotation provided by Defendant, when an exception is noted in a "subsequent, separate or distinct clause or statute" the party relying on the exemption must allege and provide it. The exceptions in 310 C.M.R. 7.11 are laid out in separate clauses and therefore the defendant has the burden.

## V.  CONCLUSION

For the reasons stated herein and in the United States' Motion for Summary Judgment and accompanying memorandum, the Court should grant summary judgment in favor of the Plaintiff and grant judgment as to liability for the following violations: 143 violations witnessed by the EPA inspector totaling 6,163 minutes; 6 violations witnessed by Paul Revere's neighbor; 364 violations over the seven week period of inspections; and 280 violations since December, 2002 for a total of 794 violations.

                                                Respectfully submitted,

                                                RONALD J TENPAS
                                                Assistant Attorney General
                                                Environment and Natural Resources Division
                                                U.S. Department of Justice


                                                /s/Rachel A. Hankey
                                                RACHEL A. HANKEY
                                                Trial Attorney
                                                Environmental Enforcement Section
                                                Environmental and Natural Resources Division

U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044
(202) 514-4454
rachel.hankey@usdoj.gov


MICHAEL J. SULLIVAN
United States Attorney

GEORGE B. HENDERSON, II
Assistant U.S. Attorney
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3272
George.henderson2@usdoj.gov

OF COUNSEL:
GREG DAIN
Senior Enforcement Counsel
U.S. Environmental Protection Agency
One Congress Street
Boston, MA 02114
(617) 918-1777