UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>PAUL REVERE TRANSPORTATION, LLC, )<br>)<br>Defendant. )<br>) | Civil Action No. 06-cv-12297 GAO<br><br>The Honorable George A. O'Toole Jr. |

**MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY FROM JAMES M. LYONS**

Plaintiff, the United States of America ("United States"), hereby submits this Motion *in Limine* pursuant to Rule 702 of the Federal Rules of Evidence ("FRE") and the standard set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and FRE Rules 401, 402, and 403.  Defendant, Paul Revere Transportation, LLC ("Defendant"), has designated James M. Lyons, pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure ("FRCP"), as a witness who will offer expert testimony in this action in the penalty phase.  As explained in further detail below, Mr. Lyons has submitted an expert report in connection with this litigation.  Some of Mr. Lyon's opinions, however, fail to satisfy the FRE 702 standard for expert testimony.  Moreover, Defendant failed to comply with the disclosure requirements of FRCP 26.  Additionally, Mr. Lyons proffered testimony is irrelevant, cumulative to other evidence, and a waste of time.  Therefore, the United States respectfully requests that the Court grant this Motion *in Limine* to exclude Mr. Lyons' testimony.

1

I.   **Mr. Lyons Testimony Does Not Comply With Federal Rule of Civil Procedure Rule 26 or Federal Rule of Evidence 702**

   A.   *LEGAL STANDARD*

      1.   **Rule 26 Disclosure Requirements**

FRCP 26(a)(2) provides that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Federal Rule or Evidence 702." Such party must submit a detailed report identifying the expert's qualifications, all opinions to be expressed and the basis and reasons therefore, and "the data or other information considered by the witness in forming the opinions." The First Circuit has held that these directives are mandatory since the adoption of FRCP 37(c)(1), which "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule." Klonoski M.D. v. Mahlab, M.D., 156 F.3d 255, 269 (1st Cir. 1998). "The required sanction in the ordinary case is mandatory preclusion." Id.

      2.   **Legal Standard for Admissibility of Expert Testimony**

FRE 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may offer opinion testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." In Daubert, the Supreme Court confirmed that courts play a gatekeeping role with respect to expert testimony and articulated the standard for the admission of expert testimony under FRE 702. The proffered testimony must be both reliable and relevant. See Daubert, 509 U.S. at 591-95. The Court identified several factors relevant to such an analysis, including: 1) the verifiability of the expert's opinion; 2) the opinion's error rate; 3) whether the opinion has been published and/or

subjected to peer review; and 4) the opinion's level of acceptance within the scientific community.  See id. at 589-95.  In General Electric v. Joiner, 522 U.S. 136 (1997), the Supreme Court explained that the judge exercising this duty must evaluate whether the challenged expert opinion is based on reliable scientific principles and methodologies in order to ensure that expert opinions are not "connected to existing data only by the *ipse dixit* of the expert."  Id. at 146.  In Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999), the Court made clear that this gatekeeping function applies to all manner of expert opinion, including specialized knowledge or opinion. Id. at 147-48.

The proponent of the expert testimony bears the burden of proving it satisfies the FRE 702 standard.  See United States v. Monteiro, 407 F.Supp.2d 351, 356 (D. Mass. 2006), see also Daubert 509 U.S. at 593 n. 10 ("These matters should be established by a preponderance of proof.").  While the proponent need not prove that the expert's opinion or conclusion is correct, the proponent must show that "the expert's conclusion has been arrived at in a scientifically sound and methodically reliable fashion."  Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998).  "The court must rigorously examine the data on which the expert relies, the method by which his or her opinion is drawn from applicable studies and data, and the application of the data and methods to the case at hand."  EEOC v. Beauty Ent. Inc., 361 F. Supp. 2d 11, 14 (D. Conn. 2005) (citations omitted).  A court also "must examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used." Heller v. Shaw Industries Inc., 167 F.3d 146, 153 (3rd Cir. 1999).  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.  See Ruiz-Troche, 161 F.3d at 81.

### B.   ARGUMENT

#### 1.   Defendant Did Not Comply with the FRCP 26 Disclosure Requirements.

Mr. Lyons prepared an expert report in connection with this litigation: "Expert Report of James M. Lyons" ("Report"). The Report provides Mr. Lyons' opinions on multiple topics, including that "[t]he use of catalyzed particulate traps reduces particulate matter from Diesel engines during idling as well as during on-road operations." See Declaration of Rachel A. Hankey, Ex. 1, Lyons Report pp. 2, 17 (hereinafter "Ex. 1"). Mr. Lyons then also includes in his conclusions that the "Cleaire Longview exhaust aftertreatment device . . . reduces PM emissions during idling." Id. at 2-3. However, a review of Mr. Lyons report reveals no explanation for the basis for this conclusion. At most, Mr. Lyons' report states "[d]uring idling, PM emissions would also be expected to be reduced by about 85% although NOx, HC, and CO emissions might not be affected." Ex. 1 at 16. Nothing is cited for this statement nor is any further explanation provided anywhere in Mr. Lyons' report. Id. Additionally, Mr. Lyons states as a conclusion that "[t]he voluntary use of Ultra Low Sulfur Diesel fuels and the retrofit of 12 buses with Cleaire Longview devices . . . resulted in emissions from Paul Revere being lower than required by federal or Massachusetts regulation". This conclusion is also unexplained in his report and what federal or Massachusetts regulations, Mr. Lyons is comparing Paul Revere's emissions to is unclear.[1]

Defendant has failed to comply with the FRCP 26 disclosure requirements with respect to Mr. Lyons' opinion that the use of catalyzed particulate traps reduces particulate matter from diesel engines during idling as well as during on-road operations because neither Mr. Lyons'

---

[1] The United States is not aware of any "emissions" regulations, either federal or state, which would apply to Paul Revere's operations of its vehicles, as opposed to requirements on the manufacturer.

Report nor his deposition testimony provide the "data or other information considered by the witness in forming the opinions." The Report contained no citations and no underlying data for Mr. Lyons' opinion on this topic. See 1 at 17. When asked about the basis for his opinions during his deposition, Mr. Lyons testified that he was unaware of any tests or studies related to the effectiveness of catalyzed particulate traps on idle during warm-up periods. See Ex. 2, Lyons Deposition at 65:21-24 (hereinafter "Ex. 2"). Instead, Mr. Lyons relied exclusively on the verification procedures[2] (i.e., agency approval) for his opinion regarding the effectiveness at idle, although admitting he had no knowledge regarding how these procedures were done, and to what extent they tested under idle conditions. See Deposition at 65:3-24; 85:20-86:1; 90:16-21; 91:7-92:12, 93:8-94:2; 100:4-101:11; 101:20-103:21.

In Watts v. Hill, No. 06 C 3348, 2008 U.S. Dist. LEXIS 20647 (N. D. Ill. March 12, 2008), the court excluded an expert's testimony because the expert failed to identify the basis for his opinions. The court noted "on the basis of this report, [the expert's] methodology could be anything at all, reliable or unreliable," and an opposing expert could not opine as to whether he "misinterpreted data or applied the wrong methodology without knowing what data and what methodology he used." Id. at *8-9. With respect to Mr. Lyons' opinion here, as in Watts, there is no basis to evaluate the reliability of his opinion. As FRCP 26 requires, Defendant failed to provide any basis for Mr. Lyons' opinion that the use of catalyzed particulate traps reduces particulate matter from diesel engines during idling as well as during on-road operations; such

---

[2] The Cleaire filter was verified by the California Air Resources Board, meaning it was tested for effectiveness before it was approved. The Detroit Diesel particulate filters were presumably approved by the EPA, and tested for effectiveness, although Mr. Lyons was unable to verify that Paul Revere's filters were approved because of the unavailability of precise data on the engine. Mr. Lyons relied on the fact that the filters were approved without reviewing any of the underlying data to determine whether the filters were tested at idle, and the results of those tests at idle.

failure clearly is not harmless error. See e.g. Romero v. Drummond Co., 552 F.3d 1303, 1323 (11th Cir 2008)(upholding district court's decision to exclude expert who failed to provide a report which complied with Rule 26(a)); Nat'l Union Fire Ins. Co. v. Midwestern Gen. Brokerage, Inc., 2007 U.S. Dist. LEXIS 37532 (W.D. Mo. May 23, 2007)(excluding expert who offered no explanation of how or why documents reviewed supported his conclusions).

As discussed above, the First Circuit has held that the appropriate sanction for failing to comply with discovery requirements is exclusion. See Klonoski M.D. v. Mahlab, M.D., 156 F.3d at 269. Accordingly, Paul Revere has failed to meet its burden and Mr. Lyons' testimony on his opinion regarding the effectiveness of the filters at idle and how Paul Revere's emissions compared to state and federal regulations should be excluded.

### 2. Mr. Lyons' Opinion Should be Excluded Under FRE 702

FRE 702 provides that an expert witness may only offer opinion testimony if it is based on sufficient facts or data," is the product of "reliable principles and methods," and "these methods have been applied reliably to the facts of the case." Simply, Defendant and Mr. Lyons have not provided any facts or data to support his opinion that the use of catalyzed particulate traps reduces particulate matter ("PM") from diesel engines during idling as well as during on-road operations. See Ex. 2 at 65:3-24; 85:20-86:1; 90:16-21; 91:7-92:12, 93:8-94:2; 100:4-101:11; 101:20-103:21; Ex. 5)  Indeed, an email produced by Mr. Lyons acknowledges that the filters may be less effective at idle, "On DPF [diesel particulate matters filters] effectiveness: I have not seen anything but will take a look as % control (transient versus idle) could be distinctly different, and Mr. Lyons never identified any data on their effectiveness at idle, yet did not acknowledge this in his report. See Ex. 5; Ex. 1 at 101:20-103:21.  When asked if he was aware

of any studies regarding the effectiveness of the filters during warm up periods, the precise use at issue in this case, Mr. Lyons testified he was not. See Ex. 1 at 65:21-24. The same is true regarding Lyons' opinion comparing Paul Revere's emissions to state and federal regulations. Ex. 1 at 3 (#8). Mr. Lyons opinion therefore fail to satisfy Rule 702's requirement that expert opinion be based on "sufficient facts or data." See Cook v. Sheriff of Monroe County, 402 F.3d 1092, 1113-14 (11th Cir. Fla. 2005)(upholding exclusion of expert opinion where it was not supported by "any proffered facts, explanation, or analysis" and therefore was connected to existing data by only the ipse dixit of the expert); Michigan Millers Mut. Ins. Corp. v. Benfield, 140 F.3d 915, 921 (11th Cir. Fla. 1998)(upholding exclusion where expert could not "rationally" explain how he reached conclusion)

Moreover, Defendant and Mr. Lyons have not provided the principles or methods Mr. Lyons relied upon in stating his opinion. See generally Report and Deposition. For these reasons, Defendant has failed to meet its burden, and Mr. Lyons' opinion that the use of catalyzed particulate traps reduces particulate matter from diesel engines during idling as well as during on-road operations should be excluded under FRE 702.

### 3. In addition, Mr. Lyons' Opinion Should be Excluded Under Daubert

The Court in Daubert confirmed that courts play a gatekeeping role with respect to expert testimony and articulated the standard for the admission of expert testimony under FRE 702. The Court further stated in General Electric v. Joiner, that the judge exercising this duty must evaluate whether the challenged expert opinion is based on reliable scientific principles and methodologies in order to ensure that expert opinions are not "connected to existing data only by the *ipse dixit* of the expert." 522 U.S. at 146.

Here, Mr. Lyons' opinion testimony fails to meet that standard because it is wholly unsupported by facts or data. In the section of his expert report where support should be provided, there is no discussion of any facts or methods to support his opinion. See Ex. 1 at 11-17. A court may exclude expert testimony where the "factual basis is not adequately explained." S. Grouts & Mortars, Inc. v. 3M Co., 2008 U.S. Dist. LEXIS 70222, 55-57 (S.D. Fla. Sept. 16, 2008)(citation omitted)(excluding expert where he cited no specific documents or evidence in the record to support his opinion, and the conclusions were "utterly unexplained and unsupported"); Ankuda v. R.N. Fish & Son, Inc., 535 F. Supp. 2d 170, 174 (D. Me. 2008)(excluding expert who did not explain basis of his conclusions); Atl. Rim Equities, LLC v. Slutzky, Wolfe and Bailey, LLP, 2006 U.S. Dist. LEXIS 97167, *16-17 (N.D. Ga. Nov. 21, 2006)(excluding expert testimony when expert failed to explain foundation for application of his methodology). Additionally, Paul Revere has not shown that the opinion is supported by any of the Daubert factors. Most notably, Paul Revere provides no support that such opinion has been subjected to peer review or has any acceptance in the scientific community or is based on any data, let alone reliable data. See Ex. 2 at 90:16-21, 93:17-94:3; 101:22-103:21; 104:4-104:10; see also Exhibit 5. Indeed, as noted above, Mr. Lyons knew there was no such data, and that the filters' effectiveness could be different at idle versus when the vehicle is in motion (transient). Yet he did not acknowledge this in his report. See Ex. 5; Ex. 1 at 101:20-103:21. Paul Revere is relying exclusively on the "ipse dixit" of the expert for his conclusion, as literally no data has been provided.

Mr. Lyons' opinion that Paul Revere's emission are lower than federal and state requirements fails for the same reason, no supporting facts are provided for this opinion.

Therefore, the opinion is supported by only the "ipse dixit" of the expert, and must also be excluded.

For the foregoing reasons, Mr. Lyons' opinion that the use of catalyzed particulate traps reduces particulate matter from diesel engines during idling as well as during on-road operations, and that Paul Revere's emissions are lower than federal and state requirements should be excluded for failure to meet the standard provided by the Court in Daubert.

## II.    The Remainder of Mr. Lyon's Proffered Testimony Should Be Excluded Federal Rule of Evidence 401, 402 and 403.

### A.    LEGAL STANDARD

Under the Federal Rules of Evidence, only relevant evidence is admissible in court. FRE 402. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FRE 401; see also United States v. Lewis, 40 F.3d 1325, 1339 (1st Cir. 1994). Furthermore, evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FRE 403. The testimony proffered by Mr. Lyons is either irrelevant or a waste of time because it is cumulative of other evidence or stipulations by the parties.

Mr. Lyons offers the following conclusions in his report:

(1) There are many source of air pollution in both Suffolk County and Roxbury Massachusetts besides the Paul Revere facility and vehicles operated by Paul Revere.
(2) The amount of emissions estimated by U.S. EPA to have resulted from the observed idling of vehicles at the Paul Revere facility in Roxbury and other locations during

9

> March and April 2006 is quite small compared to the emissions from all mobile sources operating in Suffolk County, Massachusetts.
> (3) Emissions from idling motor vehicles vary for gasoline and Diesel vehicles and are affected by the design of the engine and the characteristics of the emission control system. As a result, the amount of pollution produced by five minutes of idling can vary from vehicle to vehicle.
> (4) In order to estimate the total amount of emissions from idling vehicles, one needs to know, at a minimum, the age and type of each vehicle, the type of emission control system installed on the vehicle, the characteristics of fuel on which the vehicle is operating, and the duration of each vehicle's idling period.
> (5) The use of ultra low sulfur Diesel fuel reduces PM from Diesel engines during idling as well as during on-road operation.
> (6) The use of catalyzed particulate traps reduces PM from Diesel engines during idling as well as during on-road operation.
> (7) The retro-fit installation of Cleaire Longview exhaust aftertreatment devices combined with the use of ultra-low sulfur Diesel fuel reduced PM emissions during idling and PM, NOx, VOC, and CO emissions during operation.
> (8) The voluntary use of Ultra Low Sulfur Diesel fuels and the retrofit of 12 buses with Cleaire Longview devices by Paul Revere resulted in emissions from Paul Revere being lowered than required by federal or Massachusetts regulation.

Ex. 1 at 2-3. Conclusions 6-8, as discussed above, are offered with no supporting authority, and Mr. Lyons was unable to provide any at deposition. The other conclusions, as discussed below have no relevance or are cumulative in nature and therefore a waste of time.

Section 113(e) of the Act dictates that the Court consider, in assessing penalty, the following factors when determining the amount of any penalty to be assessed under the Act: (i) the size of the business; (ii) the economic impact of the penalty on the business; (iii) the violator's full compliance history and good faith efforts to comply; (iv) the duration of the violation; (v) payment by the violator of penalties previously assessed for the same violation; (vi) the economic benefit of noncompliance; and (vii) the seriousness of the violation. 42 U.S.C. §7413(e)(1). Mr. Lyons provides no useful or relevant information on any of these penalty factors.

First, conclusions (1) and (2) do not address any of these penalty factors including the seriousness of the violation. It is irrelevant that there are other sources of pollutants in Suffolk County and Roxbury, as stated in conclusion number (1), as this does not make Defendant's violation of the law any less serious or less harmful. Thus, taking the time to establish this allegation will not assist the Court in determining the seriousness of the violation.

The same is true for conclusion (2), that the emissions resulting from Defendant's violations of the law are small in comparison to **all mobile sources operating in Suffolk County.** A comparison of Paul Revere's emission to the whole county is not helpful in assessing the seriousness of the violation, nor can Mr. Lyons explain which of these other sources are due violations of the law, which is the case here. Without such a comparison, this information cannot possibly be helpful in assessing the seriousness of the Defendant's violations. Moreover, Mr. Lyons admitted he was not offering an opinion as to whether Paul Revere's emissions caused harm to its neighbors and employees, nor is he qualified to offer such an opinion. See Ex. 2 at 60:5-20.

With respect to conclusions (3) and (4), Mr. Lyons is only offering general comments about calculating emissions. They are not comments on the emissions calculations done in this matter, as Mr. Lyons testified he has not developed any alternative calculations because the calculations used in the EPA report[3] "were representative of those available in the literature." Ex. 2 at 42:18-43:7. Therefore, Mr. Lyons opinions in this respect are not probative of any fact.

With respect to conclusion (5), the United States has stipulated that Paul Revere uses low sulfur fuel. Moreover, Mr. Dave Brzezinski, the EPA expert who calculated emissions from the observed violations by Defendant, has provided a supplemental report which provides a

---

[3] The United States provided an emissions calculation from an EPA expert. See Ex. 3.

calculation of the emissions considering both the low sulfur fuel and particulate filters.[4]  See Ex. 3 and 4.  Therefore, testimony regarding low sulfur fuel and how filters work in operation from Mr. Lyons is unnecessary as it is duplicative of what is in Mr. Brzezinki's supplemental report. How the filters work during operation is irrelevant, as it is Defendant's emissions at idle that are relevant, and Mr. Lyons has provided no data on anything except the emissions during operation.

Additionally, as noted above, Mr. Lyons has provided not support for conclusions (6) through (8).  Testimony on these matters would simply waste the Court's time.  Mr. Lyons' testimony will not assist the Court in determining an appropriate penalty and should therefore be excluded.

## CONCLUSION

For the reasons stated above, the Court should preclude any expert testimony from Mr. Lyons.

    Respectfully submitted,

    JOHN C. CRUDEN
    Acting Assistant Attorney General
    Environment and Natural Resources Division
    U.S. Department of Justice


    /s/Rachel A. Hankey
    RACHEL A. HANKEY
    CA Bar No. 226325
    JEFFREY K. SANDS
    Trial Attorneys
    Environmental Enforcement Section
    Environmental and Natural Resources Division
    U.S. Department of Justice
    P.O. Box 7611

---

[4] As noted above, there is no evidence regarding the effectiveness of filters at idle.  However, Mr. Brzezinski, while explaining the lack of data in this area and the basis for his belief that the filters may not be 100% effective, has provided the Court with an estimate of what emissions would be if the filters were effective.

Ben Franklin Station
Washington, DC  20044
(202) 514-4454
rachel.hankey@usdoj.gov


MICHAEL K. LOUCKS
Acting United States Attorney

GEORGE B. HENDERSON, II
Assistant U.S. Attorney
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617) 748-3272
George.henderson2@usdoj.gov

OF COUNSEL:
GREG DAIN
Senior Enforcement Counsel
U.S. Environmental Protection Agency
One Congress Street
Boston, MA 02114
(617) 918-1777