IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————————————————————  )
UNITED STATES OF AMERICA,                     )
                                              )
                    Plaintiff,                )
                                              )
v.                                            )     C.A. NO.: 06 CA 12297 GAO
                                              )
PAUL REVERE TRANSPORTATION,  LLC  )     The Honorable George A. O'Toole Jr.
                                              )
                                              )
                    Defendant.                )
                                              )
————————————————————————— _ )


## JOINT PRE-TRIAL MEMORANDUM

Pursuant to Local Rule 16.5  and the Order for Final Pretrial conference issued by the

Court on March 24, 2009, the Plaintiff United States of America ("Plaintiff)  and the Defendant

Paul Revere Transportation LLC ("PRT" or "Defendant")  hereby submit this joint pretrial

memorandum.


**A.  Names, addresses and telephone numbers of trial counsel**

**Plaintiff**

 RACHEL A. HANKEY
Trial Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
 P.O. Box 7611
Ben Franklin Station
Washington, DC 20044

(202) 514-4454
Rachel.Hankey@usdoj.gov

JEFFREY K. SANDS
Trial Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
 P.O. Box 7611
Ben Franklin Station
Washington, DC 20044
(202) 514-3908
Jeffrey.Sands@usdoj.gov

GEORGE B. HENDERSON, II
Assistant U.S. Attorney
United States Courthouse
1 Courthouse Way, Suite 9200 Boston, MA 02210
(617) 748-3272
George.Henderson@usdoj.gov.

GREGORY DAIN, Esq.
United States
Environmental Protection Agency Region 1
1 Congress Street, Suite 1100
Mail Code: SEL
Boston, MA 02114-2023

**<u>Defendant</u>**

JONATHON D. FRIEDMANN
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
(617) 723-7700
Jfriedmann@rflawyers.com

THOMAS K. ALEXANDER
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
(617)723-7700
talexander@rflawyers.com

HONORABLE ISAAC BORENSTEIN (RET.)
Rudolph Friedmann LLP

92 State Street
Boston, MA 02109
(617)723-7700

JOHN A. MURPHY
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
(617)723-7700

ZACHARY J. TUCK
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
(617)723-7700

**B.** **Concise Summary of the positions asserted by the plaintiff and defendant with respect of liability and relief sought**

**Plaintiff**

Plaintiff has alleged that PRT has failed to comply with the federally enforceable motor

vehicle regulation found at 310 CMR § 7.11(1)(b) (the "Regulation").

The Massachusetts idling regulation provides that:

No person shall cause, suffer, allow, or permit the unnecessary operation of the
engine of a motor vehicle while said vehicle is stopped for a foreseeable period of
time in excess of five minutes. The regulation shall not apply to:

(1) vehicles being serviced, provided that the operation of the engine is essential
to the proper repair thereof, or

(2) vehicles engaged in the delivery or acceptance of foods, wares, or
merchandise for which engine assisted power is necessary and substitute alternate
means cannot be made available; or

(3) vehicles engaged in an operation for which engine power is necessary for an
associated power need other than movement and substitute alternate power means
cannot be made available provided that such operation does not cause or
contribute to a condition of air pollution.

310 CMR § 7.11(1)(b).

The Plaintiff alleges that the Defendant is liable for a civil penalty of up to $27, 500.00 per day for each violation that occurred prior to March 16, 2004 and $32,500.00 per day for each violation that occurred after March 15, 2004. The Plaintiff has alleged 132 violations witnessed by the EPA inspector totaling 6,110 minutes; 6 violations witnessed by a neighbor to the Paul Revere facility; and additional violations as a result of Paul Revere's pattern and practice, the exact number of additional violations to be determined at trial.

Plaintiff seeks the following relief: (1) an order from the court enjoining the Defendant from operating its motor vehicle engines unnecessarily while these vehicle are stopped for a foreseeable period of time in excess of five minutes in violation of 310 CMR 7.11 (1)(b); (2) assess a civil penalty against PRT for each violation of the Clean Air Act; and (3) grant such other relief that the court deems just and proper.

**Defendant**

PRT denies that it violated CMR § 7.11(1) (b) and argues that if the engines of the vehicles were operating for longer than five minutes it was because it was necessary to do so. PRT also challenges the penalties sought by the Plaintiff as a violation of the Excessive Fines Clause of the 8th Amendment to the United States Constitution.

C.     **Whether any claims or defenses have been, or will be waived or otherwise not pursued at trial**

**Plaintiff**

The Plaintiff does not waive any of the claims listed in its Complaint.

**Defendant**

PRT does not waive any of the affirmative defenses listed in its Answer, or any other affirmative defenses which may be available to it but not so identified.

**D.** **Statement of the facts established by the pleadings, admissions, or stipulated to by counsel.**

Attached as Appendix A are the stipulations reached by counsel, which include the facts established by the pleadings and admissions.

**E.** **Contested issues of fact**

Attached as Appendix B are the United States' statement of contested issues of fact.

Attached as Appendix C are the Defendant's statement of contested issues of fact.

**F.** **Any questions raised by pending motions**.

There are currently no motions pending.

**G.** **Issues of law, including evidentiary issues, together with supporting authority (per the court's request motions in limine are to be filed separately)**

# Plaintiff

The United States has filed motions in limine separately regarding evidentiary issues, and hereby outlines its position on the remaining issues of law.

**a.** **Who has the Burden of Proof with Respect to Whether Paul Revere's idling fell within the Three Listed Exceptions in 310 CMR 7.11 or Whether Operation of the Engine of the Motor Vehicle was "Necessary"?**

As outlined in the United States motion for summary judgment, an EPA inspector observed the Paul Revere Roxbury facility seven times over a period of seven weeks.[1] During his inspections, he witnessed 132 vehicles idle for far more than the maximum allotted time of five minutes. Some vehicles were witnessed idling for as long as two hours. The inspector witnessed multiple vehicles idling at the same time, and never witnessed anyone working on these vehicles. He witnessed a Paul Revere employee go from vehicle to vehicle and start the vehicle's engine, and then leave it running until it was driven off the lot. A Paul Revere employee, Mr. Powers, the morning dispatcher, admitted that in cold weather he would ask someone to go and start the vehicles, five or six at a time, before their scheduled start time.

Paul Revere has not identified in discovery, despite interrogatory requests and a deposition notice under Fed. R. Civ. P. 30(b)(6) calling for information regarding the idling, the individual(s) who started the vehicles at Mr. Powers direction. In fact, Mr. Powers told the general manager that he would instruct a "cover man" to start the vehicles, but Paul Revere has not identified a single "cover man" in discovery, nor did it speak with any when preparing for its Rule 30(b)(6) deposition. At its Rule 30(b)(6) deposition, Paul Revere testified it did not know who idled the vehicles, and did not know why they were idling. Despite having provided no information from this person(s) regarding why the vehicles were left idling, and having testified it did not know why the vehicles were idling, Paul Revere relies on general testimony regarding problems in cold weather in an attempt to justify the idling as "necessary."

In its opposition to the United States motion for summary judgment, Paul Revere claims it idled for three reasons: 1) during the drivers' pre-trip inspection; 2) in order to repair a vehicle for mechanical reasons; and 3) in order to determine if a vehicle would start and safely operate in

---

[1] All of the facts recited can be found in the United States Statement of Material Facts filed in Support of Its Motion for Summary Judgment. (Docket # 29-3)

cold weather prior to the driver being assigned said vehicle, to check that the air pressure would build. D. Opp at 11 (Docket 31). Without addressing the validity of these claims, because the facts do not support any of the above as adequate explanations for the unrefuted idling witnessed by the EPA inspector. The question presented is do any of the proffered explanations provide a defense to violation of the Massachusetts regulation, and if so who has the burden of proving the defense does or does not exist?

The Massachusetts idling regulation, 310 CMR 7.11 provides three exceptions:

The regulation shall not apply to:

(1) vehicles being serviced, provided that the operation of the engine is essential to the proper repair thereof, or
(2) vehicles engaged in the delivery or acceptance of foods, wares, or merchandise for which engine assisted power is necessary and substitute alternate means cannot be made available; or
(3) vehicles engaged in an operation for which engine power is necessary for an associated power need other than movement and substitute alternate power means cannot be made available provided that such operation does not cause or contribute to a condition of air pollution.

310 CMR § 7.11(1)(b).

Defendant did not plead, nor did it argue at summary judgment that it met any of the three exceptions listed in 310 CMR 7.11. However, on their face, Defendant's claims (although unsupported and contradicted by the evidence) are arguments seeking the benefit of the listed exceptions. Defendant's first argument that the vehicles were undergoing repair is explicitly covered by the first exception. Exception number 3 exempts idling when engine power is necessary for associated power other than movement and alternative power is not available. Paul Revere contends that it idled only for pre-trip inspections and to ensure that the vehicles has sufficient air pressure for the brakes. In essence, Paul Revere's claim is that operation of the engine was necessary for an associated power and substitute power was not available, i.e.

exception number 3 to the regulation.[2]  Therefore, despite Defendant's failure to explicitly plead as a defense that it falls within the exceptions, as explained below, the Court should instruct the jury that Defendant bears the burden of proof at trial that its actions fall within any of the listed exceptions.

Instead of explicitly pleading it fell within an exception to the regulation, however, Defendant pled, in its answer to the complaint, an affirmative defense that operation of the engine of the vehicles in question was "necessary." See Answer Seventh Aff. Def.  In this case, based on the facts developed through discovery, Defendant's affirmative defense is tantamount to it seeking the protection of one or more of the exceptions.  However, even if the Defendant is permitted to argue a defense of "necessity" generally, rather than prove its actions fell within the the specifically enumerated exceptions, as explained below "necessity" is an affirmative defense, and therefore Paul Revere as the party asserting the defense bears the burden of proving it. *Commonwealth v Cabral*, 443 Mass 171, 178 n. 15 (Mass. 2005); *Bath Iron Works Corp. v. United States Dep't of Labor,* 336 F.3d 51, 57 (1st Cir. 2003) (citing Am. Jur. 2d Evidence § 160 (2003) ("The defendant has the burden of proof with regard to counterclaims and most affirmative defenses.").

In fact, the Court has already ruled that Defendant is pursuing an affirmative defense under statutory exceptions.  In denying Paul Revere's Motion for Summary Judgment, the Court ruled "Paul Revere's **affirmative defense**, its contention that its employees' idling of the vehicles **met statutory exceptions**, tacitly acknowledges that Paul Revere was engaged in the restricted conduct." April 14, 2009 Order, p. 2 (emphasis added).  Therefore, the Rule of the

---

[2] It should be noted, however, that Paul Revere schedules less than 10 minutes for the pre-trip inspections to occur and its own procedures do not call for the engine to be on during the entire inspection.  Moreover, as outlined in the United States Motion for Summary Judgment, the time for air pressure to build is minimal and does not explain the idling witnessed by the inspector.

Case requires that, as an affirmative defense, Paul Revere carry the burden of proof at trial regarding these defenses.

> ### i. Defendant Bears the Burden of Proof that it Falls Within any of The Three Listed Exceptions.

The general rule is that a party claiming the benefit of an exception, carries the burden of proof that they fall within the exception.[3] *See Kelli K. Goodrow v. Lane Bryant, Inc.*, 432 Mass. 165, 170, 732 N.E.2d 289, 294 (Mass. 2000); *see also Harry C. Crooker & Sons, Inc. v. OSHRC*, 537 F.3d 79, *16 (1st Cir. 2008); *EEOC v. Chicago Club*, 86 F.3d 1423, 1429 (7th Cir. 1996); *United States v. Chodor*, 479 F.2d 661, 663. (1st Cir. 1973). In fact, the Supreme Court has consistently held that a party claiming to benefit from an exclusion from compliance with a statute generally has the burden of proof. *NLRB v. Ky. River Comm. Care, Inc.*, 532 U.S. 706, 711 (2001); *United States v. First City Nat'l Bank of Houston*, 386 U.S. 361, 366 (1967); *see also Fair Hous. Advocates Ass'n v. City of Richmond Heights*, 209 F.3d 626, 634 (6th Cir. 2000); *Chapman v. Dunn*, 414 F.2d 153, 159 (6th Cir. 1969). In *FTC v. Morton Salt Co.*, 334 U.S. 37 (1948), the Supreme Court, in allocating burden of proof, relied on "the general rule of statutory construction that the burden of proving justification or exemption under a special exception to

---

[3] Defendant asserts that the Court must apply state law to determine the burden of proof if there is a conflict between state and federal law, relying on cases where the court sat in diversity. As outlined, however, a conflict does not exist between state and federal law with regard to the appropriate allocation of burden of proof in this matter. Moreover, in this matter, the Court is **not** sitting in diversity, so the cases cited by Defendant are inapposite. Indeed, in a case cited by the Defendant, the Supreme Court acknowledged that federal programs, such as in the case at bar, "by their nature are and must be uniform in character throughout the Nation" and thus "necessitate formulation of controlling federal rules". United States v. Kimbell Foods, 440 U.S. 715, 728-729 (U.S. 1979)(citations omitted). The purpose of the Clean Air Act is to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare," 42 U.S.C. § 7401(b), and these goals necessitate a consistent federal approach and should be interpreted in light of this objective. To the extent that "state law would frustrate specific objectives of the federal programs," federal law must be applied. Kimbell Foods, 440 U.S. at 728-729. In this matter, in light of the federal objectives of the Clean Air Act, and the fact that this is not a diversity case, federal law regarding burden of proof is applicable.

the prohibitions of a statute generally rests on one who claims its benefits . . . ." *Id.* at 44-45

(citing to *Javierre v. Central Altagracia*, 217 U.S. 502, 507, 508 (1910)).   Thus, the Defendant

has the burden of showing it falls within one of the three listed exceptions.

Defendant argued, in its opposition to the United States' Motion for Summary Judgment,

however, that it does not have the burden of proving that if falls within one of the enumerated

exceptions in the regulation, based on the 1926 case of *Ansell v. Boston*, 254 Mass. 208, 150

N.E. 167, 169 (1926).  In *Ansell*, the court stated that the burden of proof for an exception

depended on the location of the exception within the Statute.  *Id.* at 211.  However, it does not

appear that *Ansell* is still good law in Massachusetts in this respect, as courts routinely hold that a

defendant bears the burden of showing it falls within an exception, without regard to the

placement of the exception.  *See e.g,  Kelli,* 432 Mass. at 170, (burden on defendant claiming

exception to prove employee not entitled to overtime compensation*.); Figuereo v. Valverde*, 60

Mass. App. Ct. 76, 81 (Mass. App. Ct. 2003)(court made no reference to the placement of the

exception); *South Boston Sav. Bank v. Commissioner of Revenue,* 418 Mass. 695, 698 (Mass.

1994)(holding taxpayer had burden to demonstrate exemption applied with no reference to the

placement of the exception).  In fact, in *Kelli,* the Court found Defendant had the burden of

proving an exception where the statutory language was <u>nearly identical to the language in the</u>

<u>regulation</u> here; the general section ending with the phrase "This section shall not be applicable

to . . ." and listing exceptions. (the Court did not apply federal law as it was only required if state

law provided a lesser standard "([t]he common understanding of the term, which we apply in the

absence of any Massachusetts statutory or regulatory definition, is at least as beneficial to the

employee as the Federal definition. Consequently, there is no preemption of our gloss. The judge

correctly concluded . . . was not exempt from the overtime provisions of G. L. c. 151, § 1A.); s*ee*

ALM GL ch. 151 §1A; *see also Quazi v. Barnstable County*, 2006 Mass. Super. LEXIS 83, 12-13 (Mass. Super. Ct. Feb. 3, 2006). Notably, in *Kelli* the exceptions were not in a separate statutory section as Defendant claims is required. *Id.* In *Martineau v. Director of Div. of Employment Sec.*, 329 Mass. 44, 51 (1952), the court found the party claiming the exception had the burden when the language creating the exception, "this subsection shall not apply if it is shown," and then listing exceptions (1) and (2), was only separated from the general section by a semi-colon. 329 Mass. at 51 (holding claimant has burden of showing they come within exceptions in the labor law); s*ee* ALM GL ch. 151A §25(b). *See also Commonwealth v. Nugent,* 61 Mass. App. Ct. 65, 69 (rejecting Defendant's contentions that exceptions laid out in the statute were elements of the offense rather than an affirmative defense where the exception was within the same statutory section and stated "this section shall not apply . . .).

Indeed, in *Donahue v. Heritage Prop. Inv. Trust, Inc.,* 21 Mass L. Rep. 488, *12-18 (Mass. Super. Ct. 2006), the court placed the burden, in a statute of frauds matter, on the party claiming an exception, even though the exception was laid out in the general provision of the statute and no commas, semi-colons, or period separated the exception from the general clause. Instead, the statute stated "the provisions of this section shall apply to a contract implied in fact or in law to pay reasonable compensation *but shall not apply to* a contract to pay compensation for professional services of an attorney-at-law or a licensed real estate broker or real estate salesman acting in their professional capacity." Id. at *10, ALM GL ch. 259 § 7 (emphasis added)(the court placed the burden on plaintiff stating "plaintiffs must show that they were, as a matter of law, licensed real estate brokers . .in order for this exception to apply). The language "but shall not apply" was sufficient in the general clause to create the exception. Therefore, the

placement of the exception does not control under Massachusetts law in deciding which party bears the burden of proof.

This is also the rule applied in federal courts. In *United States v. Lowry*, 512 F.3d 1194, 1199-1200 (9th Cir. 2008), the court rejected the contention that because language was in a general clause, rather than a distinct statutory section, it was an element of the crime on which the government must bear the burden. *Id. citing, United States v. Freter*, 31 F.3d 787 (9th Cir. 1994) (the doctrine is not limited to statutes in which the relevant language is in a separate section or separate sentence, but derives from the well established rule that a defendant who relies on an exception to statute has the burden of establishing the exception.)

Therefore, the Court should find, and so instruct the jury, that Defendant, as the party claiming the benefit of an exception outlined in the regulation, has the burden of proof that its behavior falls within the exception.

### ii. Defendant Bears the Burden of Proving that Operation of the Motor Vehicle Engine was Necessary.

Defendant has pleaded as an affirmative defense that the alleged idling was "necessary." However, as noted above, under the facts of this case , Defendant is actually seeking the benefit of one of the enumerated exceptions. Presuming Defendants can seek both the benefit of the enumerated exceptions and argue "necessity", however, under the facts of this case the Courtshould find "necessity" is an affirmative defense. As noted, it is well recognized that a party pleading an affirmative defense bears the burden of proving it. *Commonwealth v Cabral*, 443 Mass 171, 178 n. 15 (Mass. 2005); *Bath Iron Works Corp. v. United States Dep't of Labor*, 336 F.3d 51, 57 (1st Cir. 2003) (citing Am. Jur. 2d Evidence § 160 (2003). Well established principles regarding allocating burden of proof advocate placing the burden of proving "necessity" of idling on Defendant. Wigmore has stated that, "burden of proof allocations are

governed by principles of fairness, common sense and logic." *In re Wilhem*, 174 B.R. 398, 402 (Bankr. E.D. Wis. 1994)(quoting 9 J. Wigmore, Evidence in Trials at Common Law, § 2486 at 290). These dictates lead to several cannons of law regarding burden of proof. First, courts generally do not require a party to "prove a negative" as part of its prima facie case. Second, the ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary. In this case both rules apply, and common sense dictates placing the burden of proof on Defendant to prove that operation of the engine of the motor vehicle was "necessary."

As noted above, Massachusetts state law recognizes the creation of exceptions in a statute or regulation without regard to the location of the language of the exception, and places the burden of proof on the party claiming the exception. *See e.g.*, *Donahue*, 21 Mass L. Rep. 488, *12-18; *Kelli*, 432 Mass. at 170. Federal courts follow the same rules, and apply common sense in determining when an exception or affirmative defense is created in a statute or regulation. In *NLRB v. Ky. River Comm. Care, Inc*, the Supreme Court was faced with the question of who had the burden of proving whether employees were "supervisory" and, therefore, excluded from the definition of employees under the act in question. 532 U.S. 706, 711. In ruling that the party claiming that the employee was supervisory bore the burden of proof, the Court not only relied on the general rule that the party claiming an exception must prove it, but also on the fact that it was easier for that party to prove the employee's authority than disprove it, and "practicality therefore favors placing the burden on the party asserting supervisory status." *Id; see also United States v. Jackson,* 57 F.3d 1012 (11th Cir. 1995)("as a practical matter, requiring the government to negate the possibility, in every § 922(g)(1) case, that each defendant's convictions had been expunged or set aside . . would impose an onerous burden. A defendant will ordinarily be much

better able to raise the issue of whether his prior convictions have been expunged.)(citation omitted). Rather than applying strict rules, courts analyze the particular circumstances and fairness in assessing burden. Indeed, as one court has noted, "as a general matter, principles as to allocation of burden of proof rest on goals and access. A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See e.g., United States v. Cowart*, 90 F.3d 154, 159 (6th Cir. 1996 )(citations omitted).

To require the United States to establish that Defendant's operation of its buses at the time of the excessive idling was "unnecessary," as Paul Revere argues here, would unreasonably place the United States in the position of having to prove a negative. This would be contrary to established case law that courts generally do not require a party to "prove a negative" as part of a prima facie case. *See, e.g., Mashpee Tribe v. New Seabury Corp.*, 592 F.2d 575, 589-90 (1st Cir. 1979) (upholding the lower court's allocation of the burden of proof to avoid requiring the other party to prove a negative); *In re Acushnet River & New Bedford Harbor*, 722 F. Supp. 893, 901 n.21 (D. Mass. 1989); *Kingsland v. City of Miami*, 382 F.3d 1220, 1227-28 (11th Cir. 2004) ("it is incongruous to expect the plaintiff to prove a negative"); *Bayway Refining Co. v. Oxygenated Marketing and Trading A.G.*, 215 F.3d 219, 225 n.4 (2d Cir. 2000) *Harrow Products, Inc. v. Liberty Mut. Ins. Co.,* 64 F.3d 1015, 1020 (6th Cir. 1995); *Cole v. Stevenson*, 620 F.2d 1055, 1065 (4th Cir. 1980) ( "judicial disinclination to compel a party to prove a negative").

Placing the burden of proof on Defendant in this case is further warranted because Defendant possesses all of the evidence that could show that such operation was "necessary." "The ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary." *United States v. New York, New Haven & Hartford R.R. Co.*, 355 U.S. 253, 256 n.5 (1957); *see also United States v.*

*Cortez-Rivera*, 454 F.3d 1038, 1041 (9th Cir. 2006) ("Burdens are generally placed on the party who is in the best position to present the evidence."); *Nader v. Allegheny*, 512 F.2d 527, 539 (D.C. Cir. 1975), *rev'd on other grounds*, 426 U.S. 290 (1976)(burden of persuasion shifted where "the material necessary to prove or disprove an element 'lies particularly within the knowledge' of the defendant.); *Lowry*, 512 F.3d at 1200 ("our approach makes practical sense in this case; given the nature of the claims it would be 'far easier for the defendant to present the evidence' . . . than for the government to do so.)

Massachusetts state courts have also adopted the well recognized rule that "where facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue." *See e.g*, McCormick Evidence § 337 p. 475 (6th Ed.); *William Rodman & Sons, Inc. v. State Tax Commission*, 373 Mass. 606, 611 (1977)(placing burden on party to whom facts were more "readily available). In fact, the Massachusetts Court has relied on the definition of affirmative defense as as one that "involves a matter of . . . justification peculiarly within the knowledge of the defendant on which he can fairly be required to adduce supporting evidence." *Commonwealth v. Cabral*, 443 Mass 171, *178-79. *See e.g., Afienco v. Harvard Club of Boston*, 365 Mass. 320, 331 (1974)(finding one reason for the burden is that the fact was more readily ascertainable by the defendant); *Knowles v. Gilchrist Co*., 362 Mass. 642, 651 (1972)(citing to McCormick for the proposition that the burden should rest with the party who is in the best position to determine what actually happened); *Keene v. Brigham & Woman's Hospital*, 7 Mass. L. Rep. 473. *25, 1997 Mass. Super. LEXIS 255 (1997) ("The Supreme Judicial Court stated that the burden of proof should rest on the party who is in the best position to determine what actually happened."); *Gilbert v. Beacon Hill Credit Union*, 287 Mass. 433, 438 (Mass.

1934)(finding the judge correctly put the burden on the defendant because the matters were peculiarly within the knowledge or means of knowledge of the defendant's officers).

In this matter, a Paul Revere employee started the vehicles, and Paul Revere is the only party who would have direct knowledge of why the vehicles were left operating. Therefore, Paul Revere has information "peculiarly within in its knowledge" to explain the necessity of the vehicles idling.[4] Any contention by Paul Revere that these facts are not "particularly within its knowledge" is disingenuous as one need only look at Defendant's Opposition to the United States Motion for Summary Judgment, where Defendant contends that the inspector could not have known "the reasoning behind the idling and therefore cannot address the necessity of it" because he "failed to speak to any of the PRT employees regarding the excessive idling." D. Opp. U.S. S.J. , p. 6 (Docket #31). Contending itself that only Paul Revere employees could have understood the reasons for the idling. For these reasons, "necessity" should be considered an affirmative defense on which Defendant bears the burden of proof. *Id.* n. 15. Additionally, as noted above, Paul Revere has failed to identify in discovery, despite relevant requests, the person(s) who started the vehicles at Mr. Powers direction. Indeed, Paul Revere testified that it did not know who started the vehicles, and has not attempted to identify who started them. In light of the environmental objectives behind the law, placing the burden of proof on Defendant is appropriate in this matter.

Moreover, interpreting "unnecessary" as establishing an affirmative defense is required by the familiar canon of construction, "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."

---

[4] The fact that Paul Revere has not produced this information does not prove that it is not "particularly within its knowledge," as clearly, it is Paul Revere who operated the vehicles. The United States can only established what was observed. Rather the failure to produce this information is evidence that Paul Revere's actions do not fall within the exceptions.

*TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 449, 151 L. Ed. 2d 339 (2001) (quoting *Ducan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120, 2125, 150 L. Ed. 2d 251 (2001) (internal quotation marks omitted)); *Risk Mgmt. Found. v. Commissioner of Ins.,* 407 Mass. 498, 503 (Mass. 1990); *Board of Appeals of Hanover v. Housing Appeals Comm. in the Dep't of Community Affairs,* 363 Mass. 339, 364 (1973).  If the United States were required to prove in every action under the regulation that operation of the motor vehicle was "unnecessary" or "not necessary," than the three listed exceptions would be rendered meaningless.  Each of the listed exemptions requires that a party establish that operation of the engine is either "essential" or "necessary."  As noted below, "necessary" is defined as "absolutely essential," and therefore the words are synonymous with each other.  Therefore, the three listed exceptions would be meaningless if the United States were required to establish lack of necessity before you ever reached the three listed exceptions.  Therefore, interpreting the term "unnecessary" as establishing an affirmative defense is required by this well established principle of statutory interpretation.

Defendant seeks to avoid the burden of proof, despite all of the above reasoning, based on the fact that criminal penalties are available under the Clean Air Act.  Not because Defendant is being charged with criminal penalties, but because criminal penalties would be available in some other scenario.  The Court should reject this argument.  Criminal penalties are available under the Clean Air Act, but they are laid out in a separate section §113(c), not in §113(b) which sets out civil enforcement, under different standards. 42 U.S.C. §7413(b) and (c).

### b. Defendant's Seeks to Reargue Its Summary Judgment Argument Despite It Having Been Denied.

Defendant has rebriefed in its issues of law, its argument at Summary Judgment that the regulation is vague and that the penalty, the one that does not exist yet, violates the due process

clause. The United States does not address these arguments, as the Court denied Defendant's motion for summary judgment, and therefore Paul Revere's attempts to reargue these issues are inappropriate.

### c. __Definition of Necessary__

The federally enforceable Massachusetts regulations do not define the term "unnecessary." Under such circumstances, it should be assumed the intent was to adopt the common meaning of the word . *See e.g. Westinghouse Broadcasting Co. v. Commissioner of Revenue,* 382 Mass. 354, 357 (Mass. 1981). Additionally, the regulation should be read as a whole and in light of its objectives. *See e.g., O'Connell v. Shalala*, 79 F.3d 170, 176 (1st Cir. 1996)(citations omitted); *see also, Dowell v. Commissioner of Transitional Assistance*, 424 Mass. 610, 613 (Mass. 1997); *Singer Friedlander Corp. v. State Lottery Comm'n*, 423 Mass. 562, 565 (Mass. 1996). Therefore, a narrow construction is warranted by the environmental objectives of the regulation. *See e.g. Arnold v. UPS,* 136 F.3d 854, 860 (1st Cir. 1998) (*citing Dickerson v. New Banner Inst*., 460 U.S. 103, 118 (1983)(a statute should be read in light of its objectives)).

Webster's Third New International Dictionary defines "unnecessary" as "not necessary." "Necessary" is defined by Webster in several ways, but the most appropriate definition is that which is "absolutely essential" or "absolutely required". *Id.* This definition is reasonable in light of the environmental objectives of the regulations, and the fact that "unnecessary" is being used as an adjective to operation of the engine. Additionally, the three categorical exemptions demonstrate that what is deemed "necessary" under the regulation is extremely limited. Therefore, the Court should hold, and instruct the jury appropriately, that Defendant can only meet its burden of showing that idling was "necessary" if it can demonstrate that it was "absolutely required".

### d. **Additional Violations Not Witnessed by the EPA Inspector**

Paul Revere asks the Court to preclude the jury from inferring from the evidence the existence of additional violations beyond those witnessed by the inspector. Paul Revere has not sought to preclude any particular evidence, but rather to prevent the United States from arguing that the evidence supports the finding of violations beyond those witnessed by the EPA Inspector and others. However, the United States is permitted to rely on circumstantial evidence to support its allegations.

Paul Revere conceded that evidence of "habit of a person or of the routine practice of an organization . . . is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice" is permitted under Rule 406 of the Federal Rules of Evidence. Defendant contends this rule cannot apply here, however, because the United States is alleging numerous violations, not just a single one. However, nothing in the Rule demands such a limited construction.

Circumstantial evidence has long been admissible to prove a claim. In fact, the First Circuit has said that "under appropriate circumstances, circumstantial evidence may be given the same weight as direct evidence." *United States v. Russell*, 919 F.2d 795, 797 (1st Cir. 1990); *see also Joseph v. Fair*, 763 F.2d 9, 10 (1st Cir. 1985) (circumstantial evidence is entitled to the same weight as direct evidence). Under Rule 401 of the Federal Rules of Evidence, "[r]elevant evidence' means evidence having the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence." Fed. R. Evid. 401. The circumstantial evidence being offered by the United States certainly makes it more likely, or more probable, that the additional violations

occurred.  Defendant argues that other evidence would be more appropriate to establish the violations.  That, however, is not the test for admissibility.

Defendant also claims the evidence is prejudicial.  The only prejudice claimed by Paul Revere in this regard, however, is that the jury will find against defendant on the additional violations.  That is not precluded under Rule 403 of the Federal Rules of Evidence.

## Defendant

**1.     PRT submits that it is undisputed that the Regulation that the Plaintiff seeks to enforce, 310 CMR 7.11(1)(b),   reads as follows:**

No person shall cause, suffer, allow, or permit the unnecessary operation of the engine of a motor vehicle while said vehicle is stopped for a foreseeable period of time in excess of five minutes.  The regulation shall not apply to:

(1)     vehicles being serviced, provided that the operation of the engine is essential to the proper repair thereof, or
(2)     vehicles engaged in the delivery or acceptance of foods, wares, or merchandise for which engine assisted power is necessary and substitute alternate means cannot be made available; or
(3)     vehicles engaged in an operation for which engine power is necessary for an associated power need other than movement and substitute alternate power means cannot be made available provided that such operation does not cause or contribute to a condition of air pollution

310 CMR § 7.11(1)(b)

**2.     PRT submits that the burden of proof (both production and persuasion) to demonstrate that the operation of the engines of the vehicles was "unnecessary" when they were alleged to have been operated must be borne by the Plaintiff.**

**Argument**

Ansell v. City of Boston, 254 Mass. 208, 211, 150 N.E. 167, 169 (1926) sets forth the law regarding burden of proof and statutory interpretation in the Commonwealth of Massachusetts.

The rule as to the burden of proof, applicable both to civil and criminal cases, is that, where the duty or obligation or crime is defined by statute, *if there be an exception in the enacting clause, or an exception incorporated into the general clause, descriptive of the duty or obligation or crime then the party pleading must allege and prove that his adversary is not within the exception; but if the exception is in a subsequent, separate or distinct clause or statute, then the party relying on such exception must allege and prove it.* (emphasis added) (citations omitted).

Ansell, 254 Mass. at 211.

This rule has been upheld and cited in numerous other cases as authority including by courts outside of the Commonwealth of Massachusetts. *See,*, Erbrich Products Co., Inc. v. Wills, 509 N.E.2d 850, 858 (Ind.App. 1 Dist. Jun 29, 1987); Afienko v. Harvard Club of Boston, Mass. 320, 331, 312 N.E.2d 196, 204, 365 (1974); Boston Edison Co. v. Board of Selectmen of Concord, 355 Mass. 79, 91, 242 N.E.2d 868, 876, ( 1968); Trites v. City of Melrose,, 318 Mass. 378, 381 61 N.E.2d 656, 658 (1945). *See, also*, Marc G. Perlin and Davalene Cooper, Massachusetts Proof of Cases, § 70:4 (3d ed. 2008) ("A plaintiff who brings a proceeding seeking relief under a statute commonly must prove that he or she falls within its terms.")

PRT argues that the term "unnecessary operation" as included in the first clause of the Regulation, which PRT submits is the "enacting" or "general" clause of the Regulation, requires that the Plaintiff prove that the operation of the engines was "unnecessary" and must be part of Plaintiff's prima facie case. PRT argues that the term "unnecessary operation" identifies an element of the offense, and does not imply that PRT must establish that the operation of the engines was "necessary" as a defense. "The fundamental rule as to burden of proof is, that whenever the existence of any fact is necessary in order that a party may make out his case or establish his defense, the burden is on such a party to show the existence of such fact." Cunningham v. Commissioner of Banks, 249 Mass. 401, 431 144 N.E. 447 (1924). " The burden of pleading and proof with regard to most facts have been and should be assigned to the plaintiff

who generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion."  Kenneth S. Broun, ed., Annotation, 2 McCormick on Evidence, § 337 at pg 1. (6th ed. 2006*).*

Moreover, insofar as the phrase "unnecessary operation" may be interpreted as implying that the "necessary operation" might be exception to the offense, because the phrase "unnecessary operation" occurs in the general clause of the statute it would fall within the holding of Ansell which requires that the Plaintiff bear the burden of proving any exception that is part of the enacting or general clause.

Plaintiff has claimed that Ansell does not appear to still be good law, because Massachusetts courts have held that a defendant bears the burden of showing that it falls within an exception, without regard to the placement of the exception.  The Plaintiff cites no case that overrules Ansell.  Moreover,   the cases cited by the Plaintiff, discussed below, for the proposition that Ansell  has been superseded are inapposite. In addition to other problems, these cases do not appear to involve exceptions contained as part of the enacting or general clause and therefore placing  a burden on the party to come within the exception is  not contrary to the Ansell holding.

For example, in Kelli K. Goodrow v. Lane Bryant, Inc. 432 Mass. 165, 170, 732  N.E.2d 289, 294 (Mass. 2000),   the court applying federal law ( which preempted the state statute according to the court) referred to two different sections of  the statute and  stated " Title 29 U.S.C, *§*  213(a)(1) provides: '[S]ection 207 of this title shall not apply to with respect to… any employee employed  in a bona fide executive, administrative or professional capacity.'" Goodrow,  432 Mass. at 171.   Similarly, in Figuereo v. Valverde, 60 Mass.App.Ct. 76, 81 (Mass.App.Ct. 2003),  the court  addressed an exception contained in a  statute [i.e.,  G.L.c. c.

90§ 34M, second paragraph] which exception permitted a defendant to offset any damages it owed a plaintiff by the amount of PIP benefits paid to a plaintiff, as an exception to the general common law principle that a plaintiff may recover damages in tort for damages sustained as a result of a motor vehicle accident Figuereo, 60 Mass.App.Ct. at 78. Another reason cited by the court was that because the defendant was seeking to reduce the verdict, and as the moving party, the burden was on the defendant to prove that there was a valid PIP policy in place. Id. at 81.

The same may be said of the holding in South Boston Saving Bank v. Commissioner of Revenue, 418 Mass. 695, 698 (Mass. 1994) in which there is no evidence that G.L.c. 63, § 11, since repealed, which the court relied on to interpret if "pass through certificates" were " loans secured by the mortgage of real estate" involved an exception contained within an enacting or general clause of a statute. Likewise, in Quazi v. Barnstable County, 2006 WL 619136 (Mass.Super Ct. Feb 3, 2006), the requirement of a written notice under the Commonwealth's Whistleblower statute is contained in G.L.c. 149, § 185 (c)1 whereas the exception is contained in G.L.c. 149, § 185 (c)2 another subsection of the statute. Id. at *3. In Martineau v. Director of Div. of Employment Sec., 329 Mass. 44, 51 (1952) , applying federal law, the court noted that while the general principle was stated in Section 25 of the statute the exceptions were defined by subsection (b)(1) and (2) and therefore the claimant had the burden of proving that he came within these exceptions. Id. at 51. Finally, in Donahue v. Heritage Prop. Inv., 21 Mass.L.Rptr. 488, *12-18 (Mass.Super.Ct. 2006), there is no specific mention of which party bore the burden of proof, but the court did state that even though the evidence would be viewed in a light most favorable to the plaintiff, because he was the non-moving party in a summary judgment motion, he had failed to establish either that he was a licensed real estate broker at the time of the

transaction or, alternatively, that the writing that existed satisfied the statue of frauds. This case

can not be read for the principle that a defendant bears the burden of proof to show that it falls

within an exception, given that the court viewed the evidence in the light most favorable to the

plaintiff. Id. at *10.

Furthermore, the Ansell holding would be consistent with federal court decisions that,

without exception, require that the government bear the burden of proof in those instances in

which it is bringing an action under the Clean Air Act such as in the instant case. The Court in

United States v. SCM Corporation, 667 F.Supp. 1100, 1124 (D. Maryland 1987) stated that:

> In an enforcement proceeding under the Clean Air Act, the burden of
> establishing a violation of the applicable regulation is on the government. *See*
> Getty Oil Co. v. Ruckelshaus, 467 F.2d 349, 357 (3rd. Cir. 1972), *cert denied,* 409
> U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973) (citing United States v. Bishop
> Processing Co., 423 F.2d 469, 473 (4th Cir. 1970*), cert. denied,* 398 U.S. 904, 90
> S.Ct. 1695, 26 L.Ed.2d 63 (1970)); Chevron U.S.A., Inc. , 639 F.Supp at 777, and
> Kaiser Steel Corp, No.. 82-2623-IH, slip op. at ---. In Chevron, the court placed
> on plaintiffs, the United States and the State of Texas and City of El Paso, the
> burden of proving by a preponderance of the evidence each date on which
> defendant had violated applicable regulations. Likewise, in Kaiser Steel, the Court
> found that the government had proven a total of 33 violations, by date and time of
> violation. This Court finds no reason to depart from that approach in the case at
> hand.

United States v. SCM Corporation, 667 F.Supp. 1100, 1124 (D. Maryland 1987)


**3. PRT submits that the burden of proof (both production and persuasion) to
demonstrate that the operation of the engines did not fall within one of the three (3)
enumerated exceptions in the Regulation must be borne by the Plaintiff**.

**Argument**

The Ansell holding provides that "*if there be an exception in the enacting clause, or an*

*exception incorporated into the general clause, descriptive of the duty or obligation or crime.*

*then the party pleading must allege and prove that his adversary is not within the exception* .."

Ansell, 254 Mass. at 211. PRT submits that the three (3) enumerated exceptions, because they are enumerated in the sentence adjacent to and immediately following the general clause of the statute and introduced by the phrase "[t]he regulation shall not apply to" must be interpreted as exceptions *"incorporated into the general clause"* and are not part of a "separate or distinct clause or statute."

This interpretation would be consistent with how the case law has interpreted this provision of the Ansell holding. For example, the court in Sullivan v. Ward, 304 Mass. 614, 615-616, 24 N.E. 2d 672, 673 (1939) in discussing the Ansell holding noted that the word "except" is not necessary to constitute an exception within the meaning of the rule and that the words "unless," "other then," " not being," "not having" and similar words could accomplish the same effect and that therefore the phrase beginning with the word "unless" was clearly incorporated into the general phrase defining the liability. In the instant case the phrase "[t]he regulation shall not apply to" accomplishes the same type of incorporation into the general clause as the words "unless" or "other then" or the similar words identified in Sullivan would have. The fact that there is a period rather than a comma before the phrase "[t]he regulation shall not apply to" is irrelevant, because the use of a period rather then a comma only serves to make the two sentences easier to understand and does detract from the fact that the latter sentence is subordinate to and part of the first sentence and therefore "incorporated into the general clause."

**4.      PRT submits that the burden of proof (both production and persuasion) to demonstrate that the operation of the engine of the vehicles was "unnecessary" and did not fall within any one of three (3) enumerated exceptions must be borne by  the Plaintiff even PRT though raised the allegation that the operation of the engines was "necessary" as an affirmative defense in its Answer.**

**<u>Argument</u>**

PRT raised whether the operation of the engines was necessary as an affirmative defense. It did so as a precautionary measure since defenses that are not raised are often deemed waived, even though PRT believes that the burden of proof that the operation of the engines was "unnecessary" properly rests with the Plaintiff. It is not the accepted view in the Commonwealth of Massachusetts that matters in the pleadings that are affirmatively alleged by a defendant, which could have been denied, changes the plaintiff's burden of proof. *See, e.g.*, Wylie v. Marinofsky, 201 Mass. 583, 88 N.E. 448 (1909).

As additional authority PRT cites to McCormack on Evidence, § 337, fn 3 (6th ed. 2006) where it is stated "[t]he relationship of the burden of pleading to the burden of proof raises the question of the consequences of a party mistakenly pleading a fact upon an issue which its adversary had the burden of raising by an affirmative pleading. In the relatively few cases dealing with the question, the prevailing view is that a mistake in pleading will not generally affect the allocations of the burden of proof. For example, the court's have held that plaintiff's unnecessary allegation that he was in the exercise of due care, does not affect the defendant's burdens with regard to contributory negligence. Fitchburg Railway Co. v. Nichols, 85 Fed. 945 (1st Cir. 1898); Bevis v. Vanceburg Telephone Co., 113 S.W. 811 (Ky.1908); Wintrobe v. Hart, 13 A.2d 365 (Md. 1940)." Kenneth S. Broun, ed., Annotation, 2 McCormick on Evidence, § 337, fn 3 (6th ed. 2006*). See, also*, Effect of Unnecessary Affirmative Pleading Upon the Burden of Proof, 39 Yale L.J. 117, 119 (1929) wherein it is stated that the great majority of the jurisdictions in which the question has arisen [i.e. whether the burden of proof shifts where facts that could have been denied are affirmatively alleged] have reputed the view that slavish adherence to the mere form of the pleading is appropriate. Id. at 119.

**5.    PRT submits that the burden of proof (both production and persuasion) to demonstrate that the operation of the engine of the vehicles was "unnecessary" and did not fall within any one of three (3) enumerated exceptions must be borne  by the Plaintiff even though such proof would require proof of a "negative."**

<u>Argument</u>

Under Massachusetts law a plaintiff is required to prove every element of its claim, even if such proof requires proof of a negative fact..  "Where the issue involves a charge of culpable omission, it is incumbent on the party making the charge prove it, *<u>although the proposition be negative one,</u>* for  the other party shall be presumed to be innocent  until he is proved guilty." (emphasis added) <u>Fiske v. The New England Marine Insurance</u>, 32 Mass. 310 (1834). Furthermore, PRT submits that this it is  well established  in most jurisdictions  that that where proof of a negative fact is a necessary element of a plaintiff's case, the plaintiff has the burden of proving it. *See, e.g.,* <u>Morgan v. Exxon Corp.,</u> 869 So.2d 446 (Ala. 2003); <u>Oberly v. Howard Hughes</u> Medical Institute, 472 A.2d 366 (Del. Ch. 1984); <u>Board of</u> <u>Trade of City of Chicago v. Dow Jones & Co., Inc.,</u> 98 Ill 2d 109, 74 Ill. Dec. 582, 456 N.E.2d 84 (1983); <u>Frank Stinson Chevrolet, Inc. v. Connelly,</u> 356 N.W.2d 480 (S.D. 1984); <u>Acuity Mut.</u> <u>Ins. Co. v. Olivas,</u> 2007 WI 12, 298 Wis.2d 64, 726 N.W.2d 258 (2007).

The Plaintiff in its summary judgment motion has cited two federal cases, <u>Mashpee Tribe v. New</u> <u>Seabury Corp.,</u> 592 F.2d 575, 589-90 (1st Cir. 1979) and <u>In re Acushnet River & New</u> <u>Bedford</u> <u>Harbor,</u> 722 F.Supp. 893, 901 n.21 (D. Mass. 1989),  for the proposition that the Plaintiff is not required to prove a negative, and therefore the burden should shift to the defendant. There is no question that this proposition is only dicta in the these cases, that these cases have not been cited since for this proposition,   and therefore these opinions as expressed in these decision    are advisory rather then  controlling  on  this  issue.    Neither case cites Massachusetts law as support for this proposition.

The question of what party should bear the burden of proof is a matter of substantive state law not federal procedural law. <u>Sampson v. Channell</u>, 110 F.2d 754, 763 (1st Cir. 1940). Even in those  cases  presided over by the federal courts  which do not involve diversity of citizenship, such as the instant case, where a federal court is not required to apply state substantive law in every instance and may apply federal common law, the court may  and should take into account state interests in determining whether to apply state law.[5]  The following factors  have been identified as ones that may be utilized be a federal court  in their discretion to decide that  on a given matter state law is the most appropriate choice, and adopt it as the federal rule of decision:  (1) congressional intent as expressed in a statue or legislative history; (2) the existence of substantial state interest that would be served by the incorporation of local law; (3) the fact that the federal or state law are closely interwoven; (4) the furtherance of equity; or (5) as a matter of convenience when state law is silent on a particular issue.  Jack H. Friedenthal, Mary Kay Kane and Arthur R. Miller, <u>Friedenthal, Kane and Miller's Hornbook on Civil Procedure,</u> § 4.7, at pg. 5 (4th  ed. 2005). In the instant case, because state law is not silent on the issue, and because the issue of which party must bear the burden of proof is a substantive issue not a procedural one, Plaintiff submits that the court should  honor  the substantive law of the Commonwealth..

**6.      PRT submits that the burden of proof (both production and persuasion) to demonstrate that the operation of the engine of the vehicles was "unnecessary" and did not**

---

[5] *See, e.g.* <u>U.S. v. Kimball Food, Inc</u>. 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) (the Supreme Court pointed out that federal courts were free to adopt state law and should inquire before determining whether a state law should be followed : (1) whether following the state law would frustrate the specific  objectives of federal programs; and , (2)  would a federal rule would disrupt commercial relations predicated on state law.)  *See, also,*  <u>United States v. Yazell</u>, 382 U.S. 341, 352, 86 S.Ct. 500, 507, 15 Ld.2d 404 (1966) (in which in Justice Fortas cautioned the federal courts to show deference to state law even in cases which do not involve diversity of citizenship.)

**fall within any one of three (3) enumerated exceptions should be borne by the Plaintiff even though the Plaintiff has claimed that some facts lie peculiarly within the knowledge of PRT**

<u>Argument</u>

First, although PRT acknowledges that some case law provides that that a defendant in some circumstances may be required to prove facts that are peculiarly within its control this is not the rule in all courts. *See, e.g.,* <u>Vinton Oil & Sulphur Co. v. Gray,</u> 135 La. 1049, 66 So. 357 (1914).

Second, PRT submits that the fact, whether the operation of the engine of the vehicles was unnecessary, is not a fact peculiarly within the knowledge of PRT, since the Plaintiff has claimed to have observed violations. In fact, it has been repeatedly alleged by the Plaintiff that inspector Mohamoud and Ms. Faye have witnessed violations.

Third, the type of facts that Plaintiff alleges are peculiarly within the knowledge of PRT, whether the operation of the engine was "unnecessary" is not of the type which could not have been observed by the Plaintiff, and therefore are not the type that the court's of the Commonwealth would consider shifting the burden of proof regarding. Nearly every plaintiff is faced with the burden of pleading and proving facts which a defendant may have superior access to.[6] It is precisely for this reason that the courts in the Commonwealth have only shifted the burden of proof to a defendant where facts are peculiarly within his knowledge in only a few

---

[6] "A doctrine often repeated by the courts is that where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue. Examples are the burdens commonly placed upon the defendant to prove payment, discharge in bankruptcy, and license. (footnote omitted) This consideration should not be overemphasized. Very often one must plead and prove matters as to which his adversary has superior access to the proof. Nearly all required allegation of the plaintiff in actions in tort or breach of contract relating to the defendant's acts or omissions describe matters peculiarity with defendant's knowledge. Correspondingly, when the defendant is required to plead contributory negligence, it pleads facts peculiarity known to the plaintiff." Kenneth S. Broun, ed., Annotation, <u>2 McCormick Evidence,</u> § 337at p. 2 (6'" ed. 2006)

isolated instances, such as where instruments or facts are wholly within a defendant's control such as a bailor/bailee relationship. This is significantly different from the facts of the instant case. *See, e.g.,* William Rodman & Sons, Inc. v. State Tax Commission, 373 Mass. 606, 611 (1977) ( When it is established that a stamper wholesaler has received certain cigarettes, burden is on him to prove that he did not dispose of them by sale in order to abate imposition of excise); Knowles v. Gilchrist Co., 362 Mass. 642, 651 (1972) (burden of proof on bailee after proof of delivery by bailor to show absence of negligence caused destruction of property).

**7.      PRT submits that the burden of proof (both production and persuasion) to demonstrate that the operation of the engine of the vehicles was "unnecessary" and did not fall within any one of three (3) enumerated exceptions should be borne by the Plaintiff, because the enforcement of the Regulation could entail criminal penalties and it is well established that in criminal cases the  plaintiff bears the burden of proof, even regarding affirmative defenses claimed by the defendant**.

<u>**Argument**</u>

In seeking to enforce the Regulation the Plaintiff is relying on the enforcement provision of 42 USC §7413 (b) and (c). 42 USC§ 7413 (c) is subtitled "criminal penalties" and permits the imposition of criminal penalties of up to five (5) years of incarceration in some instances. Insofar as Plaintiffs reliance on this statue for its authority to enforce the Regulation could possibly potentially expose PRT Revere to criminal sanctions it is inappropriate to shift the burden to PRT and require that it prove that the idling was necessary. It is well established that in criminal cases in federal courts the plaintiff bears the burden of proof, even regarding affirmative defenses claimed by the defendant. *See, e.g.,* U.S. v. Guzman, 85 F.3d 823 (1St. Cir. 1996).

**8.      PRT submits that the Court may not permit the jury to infer from the evidence presented by the Plaintiff regarding alleged observations of  instances of violations of the Regulation  that  additional unobserved violations of the Regulation occurred  as it has expressed the desire to do.**

## Argument

In its Complaint and summary judgment motion the Plaintiff has expressed the desire to permit the jury to infer from the alleged observations of the inspector between March and April of 2006 and the handful of observations by another witness, Ms. Faye, that PRT has committed hundreds of additional violations since 2002. According to the Plaintiff these alleged observed violations are evidence that PRT is guilty of a "pattern and practice" of such violations, and therefore the jury may infer additional hundreds of like violation since 2002.

PRT argues that such an argument is unorthodox, irregular, contrary to established law, and violates Fed.R.Evid. 401, 402, 403, and 404(b). PRT submits that Plaintiff has borrowed the use of this "pattern and practice" argument from Title VII of the 1964 Civil Rights Act which specifically provide for the making of such arguments in cases involving discrimination.

This case does not involve any action under Title VII.. Moreover, PRT argues that the Federal Rules of Evidence do not provide support for such arguments outside of the context of a Title VII action. Although Fed.R.Evid. 406 does permit evidence regarding a "routine practice" to be introduced to prove conformity with that pattern "on a particular occasion," Plaintiff here is alleging additional numerous -- not "particular" --violations over an extended period of time since 2002. PRT submits that the use of this testimony to infer additional violation also explicitly violates Fed.R.Evid 404(b) which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person [i.e. PRT as an organization] in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident …"

This argument also fails to satisfy the relevancy requirement of Fed.R.Evid. 402 that requires that only relevant evidence is admissible. Under Fed.R.Evid. 401 relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In this instance, without testimony regarding what vehicles were in use during these periods, what personnel were employed during this period, expert testimony regarding the conditions during the period of time in questions, and expert testimony regarding a probability study to support any inference from this testimony, the evidence is not relevant but mere idle speculation. Even if the court were to deem it relevant, which PRT submits it is not, permitting the introduction of such testimony would violate Fed.R.Evid. 403 which provides "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**9.     PRT submits that the term "necessary" may have multiple meanings and that the definition set forth by the Plaintiff as appropriate for the Court to use "as absolutely essential" or "absolutely required" is not appropriate.**

<u>Argument</u>

The Plaintiff acknowledges that the federal enforceable Massachusetts regulations do not define the term "necessary." The Plaintiff argues that that PRT should have the burden of proving that the idling was "absolutely required" based on a definition of the term "necessary" located in Webster's Dictionary.

The meaning of the term "necessary" does not easily submit to one definition and the United States Supreme Court has expressly advised that a contextual approach be used to

defining the meaning of the term "necessary." <u>McCullouch v. Maryland</u> 17 U.S. (4 Wheat)

316, 414,  4 L.Ed. 579 (1819)   Different courts  that have followed the Supreme Court's

contextual  approach  and have declined to mechanically apply dictionary definitions of the

term  "necessary."  For example, in <u>Cellular Telecommunications & Internet Association v.

FCC</u>, 330 F.3d 502, 510 (D.C.Cir. 2003) the D.C. Circuit determined that the word

"necessary" did not always mean absolutely required or indispensible. <u>Id</u>.  at 509-510.  The

court explicitly found that a measure may be "necessary" even though acceptable alternatives

have not been exhausted.  <u>Id.</u> at 510.   Similarly the Second Circuit in <u>FTC v. Rockefeller</u> , 591

F.2d 182, 188 (2nd Cir. 1979)  rejected the argument that "necessary" means that the FTC must

pursue all other "reasonably available alternatives" before engaging  in an ancillary

investigation. <u>Id</u>. at 188.  *See, also*, <u>In Re: Microsoft Corporation Anti-Trust Litigation</u>, 335

F.3d 322, 330-333 (4th Cir.  2004).

The United States Supreme Court has used this contextual approach in its tax

jurisprudence to define the term "necessary" in regard to business expenses as "appropriate

and helpful" rather than "absolutely essential." <u>Commissioner v. Tellier</u>, 383 U.S. 687, 689, 86

S.Ct. 1118, 16 L.Ed.2d 185 (1966) (quoting <u>Welch v. Helvering</u>, 290 U.S. 111, 113, 54 S.Ct.

8, 78 L.Ed. 212 (1933)).

PRT submits that under the circumstances, given that no definition has been provided

for a term in a regulation that could expose PRT to criminal penalties, the definition of the

term "necessary" should be less be less rigid to allow for behavior that was "appropriate and

helpful" but did not necessary require PRT to exhaust alternatives before engaging in the

activity.  Therefore, PRT submits, that since the burden of proof (both production and

persuasion) should be on the Plaintiff, as argued above, the Plaintiff should be required to

prove that the idling behavior of PRT was "unnecessary" in that it was neither "appropriate nor helpful."

**10.     PRT submits that in the instant action, the application of the vagueness doctrine is appropriate and the Regulation is subject to strict analysis due to the potential criminal penalties involved with the enforcement of the Regulation.**

<u>Argument</u>

Under the void for vagueness doctrine "[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. <u>Grayned</u> v. <u>City of Rockford,</u> 408 U.S. 104, 108 (1972).   A law will be deemed unconstitutionally vague if it does not meet the following two requirements: (1) the law must provide "fair warning by giving the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly"; and, (.2) the law must provide "explicit standards for those who will apply the law in order to prevent arbitrary or discriminatory enforcement". <u>Metro Produce Distributors, Inc. v. City of Minneapolis,</u> 473 F. Supp. 2d 955, 960 (2007) (ordinance prohibiting <u>idling</u> of motor vehicles in residential area found unconstitutionally vague).

PRT submits because the Regulation cannot satisfy either of the two vagueness doctrine requirements PRT is entitled to judgment as a matter of law because the Regulation's enforcement does not provide due process of law, in violation of the Fourteenth Amendment to the federal Constitution, and the statutory term "unnecessary" in the prohibitory language portion of the Regulation is unconstitutionally vague.

**11.     PRT submits that it is entitled to judgment as a matter of law because the civil penalty enumerated in 42 U.S.C. A. § 7413 (b) violates the Excessive Fines Clause of the Eighth Amendment as it relates to violations of the Regulation.**

Argument

The Eighth Amendment provides: "Excessive <u>bail</u> shall not be required, not excessive fines imposed, nor cruel and unusual punishments inflicted." *U S. Const., Amendment 8.* The Eighth Amendment's prohibition of excessive fines applies to the states <u>through</u> the Due Process Clause of the Fourteenth Amendment. *See* <u>Cooper Industries. Inc.</u> v. <u>Leatherman Tool Group, Inc.</u> 532 U.S. 424, 433-34 (2001). The Excessive Fines Clause limits the government's power to extract payments as punishment for some offenses. <u>United States v. Bajakajian,</u> 524 U.S. 321, 328 (1998). The Supreme Court has held that the Excessive Fines Clause applies to civil fines. *See* <u>Byrd v. Hunt,</u> 136 F. Supp. 2d 511, 516 (2001) *citing* <u>Hudson v .United States,</u> 522 U.S. 93, 103 (1997).

PRT submits that given the fact of the case, the fine sought by the Plaintiff is "grossly disproportional." The constitutional standard to determine whether a fine is excessive for purposes of the Excessive Fines Clause was first enumerated in the <u>Bajakajian</u> decision and is known as the "grossly disproportional" test. If a <u>fine,</u> forfeiture or other type of penalty is grossly disproportional to the gravity *of* a defendant's offense, it is unconstitutional. <u>Bajakajian</u> at 337. The "grossly disproportional" test first enumerated by the Supreme Court in <u>Bajakajian</u> was expounded upon by the Courts in <u>BMW of North America. Inc. v. Gore,</u> 517 U.S. 559 (1996) and <u>Cooper</u> and all three Courts treated the question of excessiveness as a question of law, not fact. In determining whether a particular fine was unconstitutional, ˙<u>Cooper</u> Court cited three factors specifically outlined in the <u>Gore</u> decision: (1) the degree of the defendant's reprehensibility or culpability; (2) the relationship between the penalty and the harm to the victim caused by the .defendant's actions; and ( 3) the sanctions imposed in other cases for comparable misconduct (the "Gore" factors). <u>Cooper</u> at 4˙35 <u>;  See also</u> <u>McLean v. State Board of Retirement</u>, 432 Mass. 339 (Court applied <u>Bajakajian</u>

principles to facts of particular case where plaintiff argued revocation of pension benefits was an "excessive fine" prohibited by Eighth Amendment to the United-States Constitution).

In the instant case, all three above mentioned factors weigh in favor of PRT. First, PRT submits that in the present matter, none of the aggravating factors related to reprehensible conduct enumerated by the courts are present. Acccoarding to the <u>Gore</u> court "Exemplary damages imposed on the defendant should reflect the enormity of his offense. Gore, at 575. The <u>Gore</u> Court  noted that in past decisions non-violent crimes are less serious then violent crimes. And trickery and deceit are more refreshable than negligence. <u>BMW of North America. Inc. v. Gore,</u> 517 U.S. 559 (1996). The PRT employees in  this case if they did violate the Regulation did so mistakenly, unintentionally and/or for good cause.  On five of the <u>nine</u> days the Violations were alleged to have occurred, the overnight temperatures were below freezing. According to expert reports prepared for PRT and filed in this action, it is necessary for the PRT vehicles  to idle for considerably longer than five minutes in order heat the engine block (and engine oil contained therein) to an acceptable operating temperature and to properly charge the <u>air</u> tanks to the required pressure necessary to operate the vehicle's air  brake system.

Second, PRT submits that in the present matter, given  the small amount of the civil penalties under the Massachusetts anti-idling statute, similar anti-idling statutes in other jurisdictions and the EPA's model idling law, it is evident that the federal and state authorities charged with monitoring and controlling air pollution believe the harm to the environment and the public likely to result from PRT's alleged  actions or the actual ham committed by PRT is minimal.  Further, given   PRT's voluntary use of Ultra Low Sulphur Diesel Fuel and diesel particulate matter filters  in its vehicles (and the small amount  of the fines

in other jurisdictions for the exact same offense), it is clear that the <u>fines</u> which the Plaintiff is attempting to impose on PRT are not reasonably or rationally related to the actual harm PRT caused to the environment; therefore the fines sought by the Plaintiff are "grossly disproportional". to the gravity of PRT's offenses and fail the second prong of the <u>Gore t</u>est.

Third, PRT submits that the third prong of the <u>Gore</u> test is also satisfied in the present matter, when we compare the federal civil fine under 42 U.S.C.A §7413(b) for a violation of the Regulation to the civil fine under the Statute. Both the Regulation and the Statute prohibit the exact same conduct; however the Statute imposes a fine of $100 for a first offense and $500 for each subsequent offense <u>while</u> the Plaintiff is attempting to impose a fine of $32,500.00 per violation on PRT circuitously through the Plaintiff's supposed authority under the Clean Air Act:. In this case it is obvious that the $32,500.00 fine the Plaintiff is attempting to impose on PRT is substantially greater. than the statutory fine under the. Statute and other jurisdictions' anti idling statutes for the identical offense.

**12.      PRT submits that the court is not prevented from reviewing the Regulation by 42 U.S.C.A. §7607(b)(l) because the Regulation is "any other final action of the [EPA] Administrator" and therefore only a federal Court of Appeals may review the Regulation.**

<u>**Argument**</u>

Section 7607(b)(1) states in pertinent part "[a] petition for review of the Administrator's action in approving or promulgating any implementation plan... *or any other final action of the Administrator [of* the Environmental Protection Agency] under this chapter(including any denial or disapproval by the Administrator under subchapter I of this chapter) which is locally or regionally applicable may be filed only in the United States

Court of Appeals for the appropriate circuit (emphasis added)." The Plaintiff asks this Court to find that the Regulation is "any other final action of the Administrator" and in turn find that this Court is barred from reviewing the Regulation by Section 7607(b)(1). PRT submits that commonsense alone precludes this finding.

The Regulation is a state regulation adopted by the Commonwealth of Massachusetts Department of Environmental Protection (the "DEP") pursuant to the authority granted to the DEP by the Massachusetts legislature. The DEP is not the Administrator of the Environmental Protection Agency (the "EPA") and the Regulation is not "any other final action of the Administrator." The fact that the EPA may have approved the Regulation's inclusion into the Massachusetts SIP in 1972 is irrelevant because as we already know the Regulation is a state agency created regulation, was not created by the EPA, is not a provision of the Clean Air Act and is not a "final action" (or decision) of the EPA Administrator and therefore is not subject to the judicial review procedures or deadlines enumerated in Section. 7607(b)(1). PRT is not challenging the EPA's approval of the Regulation or the Regulation's inclusion in the SIP, PRT is challenging the constitutionality of the Regulation itself. Furthermore, it is irrational to think that the defendant in this action, PRT, is now barred from challenging a state regulation on constitutional grounds because it did not challenge the Regulation in 1972, twenty-five (25) years before PRT was organized as a business entity in Massachusetts. This Court possesses jurisdiction and the authority to review the Regulation and decide the constitutionality of the same.

**H.**     **Any requested amendments to the pleading**

None

I.   **Any additional matters to aid in the disposition of the action**

A.   **JOINT REQUEST FOR BIFURCATION OF PROCEEDINGS**

This is a civil action under the Clean Air Act, 42 U.S.C. §§ 7401 et seq. ("Act"), and federal and state regulations implementing the Act, regarding idling violations allegedly committed by Paul Revere Transportation, LLC ("Paul Revere") at its facility in Massachusetts. The liability of Paul Revere for the alleged idling violations and the proper penalty to assess against Paul Revere, if liable, represent independent inquiries the parties believe are more appropriate to be adjudicated in separate proceedings.

Federal Rule of Civil Procedure 42(b) provides, in part: "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues . . . ."   The decision to bifurcate is a matter "peculiarly within the discretion of the trial court." *Gonzalez-Marin v. Equitable Life Assurance Society of U.S.*, 845 F.2d 1140, 1145 (1st Cir. 1988); *Warner v. Rossignol*, 513 F.2d 678, 684 (1st. Cir. 1975).  The issue is guided by consideration of several factors: (1) whether a separation of the issues for trial will expedite disposition of the action; (2)  whether such separation will conserve trial time and other judicial resources; (3) whether such separation will be likely to avoid prejudice to any party at trial that may occur in the absence of separation; and (4) whether the issues are essentially independent of each other so that there will be no need to duplicate the presentation of significant areas of the evidence in the separated proceedings.  *McKellar v. Clark Equip. Co.*, 101 F.R.D. 93, 94 (D. Me. 1984); *see* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2388 (2d ed. 2003) ("Wright & Miller") ("The district judge must weigh whether one trial or separate trials best will serve the convenience of the parties and the court, avoid prejudice and minimize expense and delay.  The major consideration, of course, must be which

procedure is more likely to result in a just and expeditious final disposition of the litigation"); *see also In re Bendectin Litig.*, 857 F.2d 290, 307 (6th Cir. 1988) (the principal purpose of Rule 42(b)'s provision for separate trials is to "further convenience, avoid delay and prejudice, and serve the ends of justice."); *In re Beverly Hills Fire Litig.*, 695 F.2d 207, 216 (6th Cir. 1982) (after considering the prejudice to the parties, potential confusion to the jury and the relative convenience and economy that would result from separate trials, the trial court did not abuse its discretion by ordering a separate trial on the issue of causation in a products liability case).

Section 113(e) of the Act dictates that the Court shall consider the following factors when determining the amount of any penalty to be assessed under the Act: (i) the size of the business; (ii) the economic impact of the penalty on the business; (iii) the violator's full compliance history and good faith efforts to comply; (iv) the duration of the violation; (v) payment by the violator of penalties previously assessed for the same violation; (vi) the economic benefit of noncompliance; and (vii) the seriousness of the violation. 42 U.S.C. §113(e)(1). Only the issue of liability should be tried by the jury. Issues related to injunctive relief or penalty are to be tried separately to the Court. *Tull v. United States*, 481 U.S. 412 (1987). The evidence relevant to the penalty assessment criteria, however, is not relevant to the inquiry of whether or not Paul Revere is liable for idling its buses in violation of the federally enforceable Massachusetts idling regulation. The Act, and therefore the federally enforceable state regulation, is a strict liability statute. That is, the defendant's intent to comply with the law is not a relevant consideration for determining liability. Likewise, prior penalties and past compliance history should not be considered by the jury when determining liability.

The presentation of penalty factors set forth in Section 113(e) of the Act would prejudice the jury and would jeopardize the "just and expeditious final disposition of the litigation ." 9

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2388 (2d ed. 2003) ("Wright & Miller"). The consequence of the court attempting to deal with both liability and penalty assessment at the same time will not only result in jury confusion but a much longer jury trial than necessary. If the proceedings are bifurcated, the jury can hear the evidence relative to liability in a streamlined and organized fashion and later, if necessary, the court would hear the evidence relative to the proper penalty assessment.

Bifurcation of these proceedings will not only significantly shorten the duration of the jury trial but could also enhance the possibility of settlement, a factor some courts deem relevant in deciding whether to bifurcate. *See McKellar v. Clark Equipment Company*, 101 F.R.D. 93, 94 (D. Maine 1984) (bifurcating liability and damages in personal injury suit, on grounds that resolution of liability would likely greatly facilitate the ultimate resolution by voluntary settlement); *In re Aircrash Disaster at Stapleton Intern. Airport, Denver, Colo.*, 720 F. Supp. 1455, 1459 (D. Colorado 1988) (bifurcating liability and damage claims in airplane crash case to encourage settlement of damages issues).

**J.**  **The probable length of the trial**

Two weeks.

**K.**  **A list of the names and address of witnesses who will testify at trial and the purpose of the testimony of each witness**

**Plaintiff**

Attached as Appendix D is a copy of the United States list of witnesses.

**Defendant**

Attached as Appendix E is a copy of the Defendant's list of witnesses.

**L.**     **A list of the proposed exhibits each will offer the party's affirmative case.**

Attached as Appendix F is a list of proposed exhibits which are not subject to objection.

Attached as Appendix G is a list of the United States' proposed exhibits to which Defendant objects.

Attached as Appendix H is a list of Defendant's proposed exhibits to which the United States' objects.

**M.**     **Jury Instructions**

The United States has attached an initial proposed set of jury instructions at Appendix I. The parties agree that these jury instructions should be supplemented in the Trial Memorandum.

**N.**     **Voir Dire**

The United States has attached an initial proposed voir dire at Appendix J. The parties agree that the proposed voir dire should be supplemented in the Trial Memorandum.

**O.**     **Special Verdict Form**

Because the content of a special verdict form, in this case, is contingent upon pre-trial evidentiary decisions and the evidence is actually admitted at trial, the parties have not attached a proposed special verdict form at this juncture. The parties, however, will submit a special verdict form at any time the Court deems it appropriate.

PLAINTIFF,                             DEFENDANT,
By his attorney                        By its attorneys,

__/s/ Rachel A. Hankey_____    _/s/ Jonathon D. Friedmann_____
RACHEL HANKEY                 JONATHON D. FRIEDMANN
JEFFREY K. SANDS              THOMAS K. ALEXANDER
Trial Attorney                    Rudolph Friedmann LLP

Environmental Enforcement Section
Environmental and Natural Resources
Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC  20044
(202) 514-4454 (RH)
(202)514-3908 (JS)
Rachel.hankey@usdoj.gov
Jeffrey.Sands@usdoj.gov

MICHAEL K. LOUCKS
United States Attorney

GEORGE B. HENDERSON, II
Assistant U.S. Attorney
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617) 748-3272
*George.henderson2@usdoj.gov*
OF COUNSEL:

GREG DAIN
Senior Enforcement Counsel
U.S. Environmental Protection Agency
One Congress Street
Boston, MA 02114
(617) 918-1777

92 State Street
Boston, Massachusetts 02109