IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) C.A. NO.: 06 CA 12297 GAO<br>)<br>PAUL REVERE TRANSPORTATION, LLC ) Honorable George A. O'Toole, Jr.<br>)<br>Defendant. )<br>) | |

## OPPOSITION TO THE UNITED STATES' MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF JAMES LYONS

The Defendant Paul Revere Transportation, LLC ("Defendant" or "PRT" or "Paul Revere") submits this Opposition to <u>United States' Motion In Limine To Exclude the Testimony Of James Lyons</u> ( Plaintiff's Motion") and the <u>Memorandum In Support Of The United States' Motion In Limine To Exclude the Testimony Of James Lyons</u> (Plaintiff's Memo) filed by the Plaintiff United States of America. ("Plaintiff"). As set forth below, PRT argues that the Plaintiff's Memo relies on innuendo, omissions of salient facts, and aggressive spin to support its arguments that the expert report and testimony of James Lyons ("Mr. Lyons") fails to satisfy Rule 702 of the Federal Rules of Evidence ("FRE"), as defined by <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993) and <u>Kumho Tire v. Carmichael</u>, 526 U.S. 137 (1999), or comply with the disclosure requirements of Rule 26(a)(2) of Federal Rules of Civil Procedure ("FRCP").

## I. LEGAL STANDARD

### A. Rule 26 Disclosure Requirements

FRCP 26(a)(2) provides that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under FRE 702..." Such party must submit, unless otherwise authorized by the court, a "detailed report identifying the expert's qualification, all opinions to be expressed and the basis and reason for them," and "the data and other information considered by the witness in forming them." In rare, particularly egregious instances, the courts have invoked this rule and its related provisions to preclude evidence. For, example, Klonoski v. Malhab 156 F.3d 225 (1st Cir. 1998), cited by the Plaintiff as almost the sole legal authority for mandating the preclusion of evidence under this principle in this instance, actually did not involve the preclusion of expert testimony. Rather, in that case a trial court decision in which the defendant had been permitted to "ambush" the plaintiff by introducing into evidence during the trial at the close of plaintiff's case highly prejudicial letters from the plaintiff's deceased wife to her sister that had not been disclosed to plaintiff's counsel was overturned. The court relied on FRCP 26(b)(1), which under a discovery order in place required pretrial disclosure of these letters. Id. at 267-270.

### B. Legal Standard for the Admissibility of Expert Testimony under Daubert

It is a generally accepted principle that under Daubert the rejection of expert testimony by the trial judge should be the exception rather then the rule. Doubts as to whether the expert's testimony will be useful should generally be resolved in favor of admissibility. Williams v. Wal-Mart Stores, Inc. 922 F.2d 1357, 31 Fed. R. Evid. Serv.

1480 (8th Cir. 1990). A trial court should exclude an expert opinion only if it so fundamentally unsupportable that it cannot help the fact finder. Id. See, e.g., Mannino v. International Mfg. Co.. 650 F.2d 846, 851 (6th Cir. 1981) ("Under the Federal Rules of Rules of Evidence, the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth. The weight of the expert's testimony must be for the trier of fact.")   Daubert did not work "a sea change over federal evidence law" and the "trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." U.S. v. 14.38 Acres of Land More Or Less Situated in Leflore County, State of Mississippi, 80 F.3d 1074, 1078 (5th Cir. 1996).[1]

Daubert does not require that the trial judge ascertain whether the proposed expert's testimony satisfies scientific certainty. In Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co, 161 F.3d 77 (1st Cir. 1998), which case is also cited by the Plaintiff, the First Circuit after overturning a trial court decision that had excluded an expert because he did not rely on peer reviewed articles, warned that a trial court must not apply a standard of scientific certainty beyond which Daubert envisions. According to the court, "[t]his requirement [i.e. of scientific certainty] solicits a level of assurance that science realistically cannot achieve and that Daubert does not demand. See Daubert, 509 U.S. at

---

[1] As the court in Daubert stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 595. In fact, the Committee's note to the 2000 amendment to FRE 702, which incorporated the Supreme Court's rulings in Daubert and Kumho, state that it not the intention that the "gate keeper" function of the trial courts should deprive citizens of the right to a jury trial, which PRT submits if disqualification was the rule rather then the exception it would do. Federal Rule of Evidence 702, Committee Notes on Rules - 2000 Amendment.

590, 113 S.Ct. 2786 (commenting that 'arguably, there are no certainties in science'). The adoption of such a standard impermissibly changes the trial judge's role under Daubert from that of gatekeeper to that of an armed guard. That mistaken application of the law … constitutes an abuse of discretion. (citations omitted)." Ruiz -Troche, 161 F.3d at 86.[2]

It is a generally accepted principle that the application of FRE 702 under Daubert is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise Heller v. Shaw Industries , Inc. 167 F.3d 146, 160 (3rd Cir. 1999) "Proponents do not have demonstrate to the judge by a preponderance of the evidence that their experts are correct, they only have to demonstrate that their opinions are reliable. The evidentiary requirement of reliability is lower then the merits standards of correctness." In re Paoli R.R. Yard PCB Litigation v. SEPTA, 35 F.3d 717, 744 (3rd. Cir. 1994).[3] In Ruiz-Troche the First Circuit stated that "Daubert does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct. As long as the expert's testimony rests 'upon good grounds based on what is known' Daubert, 509 U.S. at 590, 113 S.Ct. 2786 (internal quotations omitted), it should be tested by the adversary process -- competing expert testimony and active cross-examination – rather

---

[2] The Third Circuit in Heller v. Shaw Industries Inc., 167 F.3d 146 (3rd Cir. 1999), also cited by the Plaintiff, took an even more pragmatic position and stated "[c]learly the Court [in Daubert] envisioned cases in which expert testimony is "shaky," and cases in which admissible evidence provides only a 'scintilla' of support for a claim or defense. Put differently, an expert's opinion must be based on a reliable methodology and must reliably flow from that methodology and the facts at issue – but it need not be so persuasive as to meet a party's burden of proof or even necessarily its burden of production." Heller, 167 F.3d at 152.

[3] The Third Circuit in Heller, citing Paoli, stated that "even if the judge believes 'there are better grounds for some alternative conclusion' and that there are some flaws in the expert's methods, if there are 'good grounds' for the expert's testimony it should be admitted." Heller, 167 F.3d. at 158.

than excluded from juror's scrutiny for fear that they will not grasp its complexities or satisfactorily weigh it inadequacies, *see id.* at 596, 113 S.Ct. 2786." Ruiz-Troche, 161 F.3d at 85. "Daubert neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance. It demands only that the proponent of the evidence show that the expert's conclusions have been arrived at by a scientifically sound and methodologically reliable fashion. (citations omitted)." Id.

Under the Daubert standard, the proposed testimony in addition to being relevant must rest on a reliable foundation, but no one factor can be dispositive of whether a reliable foundation exists. The analysis must also be reliably applied. The ultimate standard regarding reliability is whether the proposed testimony will be" helpful" to the trier of fact. *See, e.g.,* In re Paoli R.R. Yard PCB Litigation v. SEPTA, 35 F.3d 717, 744 (3rd. Cir. 1994) ("'The reliability requirement must not be used as a tool by which the court excludes all questionably reliable evidence (citations omitted).' The 'ultimate touchstone is helpfulness to the trier of fact, and with regard to reliability, helpfulness turns on whether the 'expert's technique or principle [is] sufficiently reliable to so that it will aid the jury in reaching accurate results'" *citing* DeLuca, 911 F.2d at 956 (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence 702 [03] at 702-35)) Paoli, 35 F.3d. at 744.

Although the United States Supreme Court in Daubert and Kumho identified a number of factors for a trial court to consider regarding reliability, the Court warned that such a list was not "exhaustive" or a "check list." Kumho, 526 U.S. at 149.[4] In general,

---

[4] Among the different factors identified by the United States Supreme Court in Daubert and Kumho to determine if there if a reliable foundation are the following: (1) the technique's "general acceptance" (whether the discipline is known to reach generally reliable results); (2) whether the opinion can be or has been tested (i.e. can it be challenged in an objective sense or is

the federal courts have heeded this advice and declined to exclude the testimony of an expert witness even when one or more of the factors identified by <u>Daubert</u> or <u>Kumho</u> is absent. For example, the Court in <u>Heller</u> stated that "[g]iven the liberal thrust of the Federal Rules of Evidence, the flexible nature of the <u>Daubert</u> inquiry, and the proper role of the judge and jury in evaluating the ultimate credibility of an expert's opinion, we do not believe that a medical expert must always cite published studies on general causation in order to reliably conclude that a particular object caused a particular illness." <u>Heller</u>, 167 F.3d. at 155. *See, also*, <u>Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co</u>, 161 F.3d 77, 84-86 (1st Cir. 1998). The federal courts have followed this injunction that no one factor is dispositive regarding the conclusiveness of the expert's findings; [5] regarding the error rate of a procedure, [6] regarding whether the expert prepared the report especially for

---

it just conclusory); (3) the technique's known or potential error rate; (4) whether the theory or technique on which the opinion is based has been subjected to peer review and publication; (5) is the expert proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.

[5] <u>See, e.g., DaSilva v. American Brands, Inc.</u> 845 F.2d 356, 361, 25 Fed. R. Evid. Serv. 413 (1st. Cir. 1988) (doctor could testify to cause of death and how injuries occurred; he was not "impermissibly speculating" and conclusion expressing reasonable medical certainty could be framed in probabilities); <u>U.S. v. Allen.</u> 390 F.3d 944, 949, 65 Fed.R.Evid. Serv. 1137 (7th Cir. 2004) (admitting expert testimony on shoe prints, which satisfied <u>Daubert</u> and could assist jury even though testimony was "inconclusive" in saying only that shoes defendant was wearing "could have made" impression found in cement dust); <u>Walker v. Soo Line R. Co.</u>, 208 F.3d 581, 587, 54 Fed. R. Evid. Serv. 439 (7th Cir. 2000) (in suit by railroader disabled by lightening, error to exclude psychological testimony on effect of lightening, even though witness could not "state definitively" that electrical trauma caused IQ drop; error to exclude testimony by engineer on different ways lightening could penetrate tower, suggesting "possible dangers" even though not saying with certainty where lighting struck) (reversing); <u>Stuztman v. CRST, Inc,</u> 997 F.2d 291, 296, 39 Fed. R. Evid. Serv. 168 (7th Cir. 1993) (lack of absolute certainty goes to weight); <u>U.S. v. Hardrich,</u> 707 F.2d 992, 994, 12 Fed.R.Evid. Serv. 2036 (8th Cir. 1980) (admitting testimony by handwriting expert that endorsements and signatures may have been written by defendant, even though inconclusive).

[6]   Although the rate of error was a negative factor in the analysis of whether the FBI's DNA matching and probability calculation procedures constituted scientific knowledge so as to be admissible in a firearms prosecution, the Court of Appeals affirmed the District Court's ruling that

purposes of litigation, regarding whether an expert relied on peer reviewed studies, or was a specialist in the field.[7]

## II.  ARGUMENT

The Plaintiff sets forth three (3) arguments for exclusion of James Lyons testimony: (1) Defendant did not comply with FRCP 26 disclosure requirements (Plaintiff's Memo at 4); (2) his testimony should be excluded under FRE 702 and Daubert (Plaintiff's Memo at 2-7); and, (3) his testimony should be excluded under FRE 401, 402, and 403. (Plaintiffs Memo at 12).

**(1)   Plaintiff complied with FRCP 26 Disclosure Requirements and Mr. Lyons's testimony should be admitted under FRE 702 and Daubert.**

---

the evidence was admissible in United States v. Bonds, 12 F.3d 540, 38 Fed. R. Evid. Serv. 688 (6th Cir. 1993) The Court noted that the rate of error factor was but one factor in a non-exclusive list of factors bearing on admissibility under Daubert. Likewise, in Janopoulos v. Harvey L. Walner & Assocs 855 F.Supp 1086, 41 Fed. R.. Evid. Serv. 285 (N.D. Ill. 1994) the court accepted expert testimony in a sexual harassment action despite the argument that the testimony failed the Daubert test because the expert did not know the potential rate of error of the ink analysis he relied upon with regard to the relative age of certain documents. The court noted that rates of error are but one factor to be considered.

[7] It is very well established that a generalist may testify regarding matters which might be considered a specialty within his discipline. This is particularly true of engineering and mechanical engineering, where the overwhelming majority of courts have determined that the principles of engineering can be applied to subspecialties within this discipline. See, e.g., DaSilva v. American Brands, Inc. 845 F.2d 356, 361 (1st Cir. 1988) (trial court did not abuse its discretion in permitting mechanical engineer to give opinion as to safety of design of machine even though witness had no design experience with machine); Exum v. General Electric Co., 819 F.2d 1158, 1163 (D.C.Cir.1987), (in action for personal injuries caused by allegedly negligent design of french fryer, trial court erred in precluding testimony from engineer who had experience with issues of industrial safety and product design but no specific expertise in kitchen design or kitchens of fast-food restaurants); Smith v. Ford Motor Co., 215 f.3d 713, 720 (7th Cir. 2000) (in products liability action against manufacturer of automobile, trial court did not err in permitting engineers to testify even though they were not qualified as automotive engineers and, thus, could not testify to ultimate issues in the case).

Plaintiff's entire argument regarding whether the defendant complied with FRCP 26 and whether Mr. Lyons should be permitted to testify under FRE 702 and Daubert, rests on the probably spurious, but certainly very dubious proposition that although Mr. Lyons testified that the catalyzed particulate trap filters and the Cleaire Longview after treatment devices (hereafter collectively the "filters") reduce emissions at idle and on-road, there are no studies that prove that that the filters are effective at idle -- the only evidence that exists, or that either party can point to, prove that they are effective while the vehicles are on-road (i.e. while the vehicle is transient or in motion ). (See attached as Exhibit "1" the expert report of James Lyons, hereinafter "Lyons Expert Report at __.") Therefore, Mr. Lyons may not infer that those vehicles are polluting less than other vehicles not so equipped, while they are being operated at idle. The Plaintiff admits that these filters have been approved by either the EPA or the California Air Resource Board to reduce the emission of particulate matter and other pollutants while on-road. (Plaintiff's Memo at 5, fn 2.) In fact, one of Plaintiff's own experts, David J. Brzezinski, acknowledges that the use of low sulphur fuel practiced by PRT reduces the sulphur contribution to particulate matter emissions by as much as 95% even in the vehicles not equipped with filters and that the use of the filters, specifically the Clearie Longview device, has been tested and certified by the California Air Resources Board to reduce all particulate matter emissions by 85% and N0x emissions by 25% while on-road. (See attached as Exhibit "2" portions of the July 31, 2008 report of David J. Brzezinski entitled "Supplemental Estimate of Total Idling Emissions" hereinafter "Brzezinski Report at ____.") (Brzezinski Report at 2.) PRT acknowledges that Mr. Lyons testified

that he was unaware of any such studies of the use of the filters at idle.[8] (Plaintiff's Memo at 5, ¶ 1.)

Plaintiff's argument is based on several logical fallacies and contrary to established law. First, Plaintiff is essentially arguing that while the vehicle is on the road and traveling at, for example, 30 MPH, the evidence supports Mr. Lyons' conclusion that the filters reduce emissions, but since no studies have been done while the vehicles are at idle, traveling 0 MPH, there is no evidence that the filters are effective in these circumstances. Using the very same logic, by reductio ad absurdum, one must infer that when the EPA and California Air Resource Board conducted their studies and approved these filters, if the vehicles were traveling at 30 MPH instead of 29 MPH, these studies provide no evidence for the Plaintiff that the filters were effective at 29 MPH.

This is a level of scientific certainty that the court in Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co, 161 F.3d 77 (1st Cir. 1998), discussed above, warned the courts against seeking. Moreover, it is contrary to the well established principle, also discussed above, that experts are permitted to testify regarding probabilities not certainties. See, e.g., DaSilva v. American Brands, Inc. 845 F.2d 356, 361, 25 Fed. R. Evid. Serv. 413 (1st. Cir. 1988) (doctor could testify to cause of death and how injuries occurred; he was not "impermissibly speculating" and conclusion expressing reasonable medical certainty could be framed in probabilities); U.S. v. Allen. 390 F.3d 944, 949, 65 Fed.R.Evid. Serv. 1137 (7th Cir. 2004) (admitting expert testimony on shoe prints, which satisfied Daubert

---

[8] One would surmise that the reason why no studies appear to have been done regarding the use of the filters while the vehicles are at idle is because people and companies do not purchases vehicles to operate them at idle. They purchase vehicles to provide transportation. Therefore, it has not occurred to anyone to conduct such studies. Moreover, one may infer that it is only common sense to assume that it does make any difference whether the vehicle is moving or not provided the engine is on.

9

and could assist jury even though testimony was "inconclusive" in saying only that shoes defendant was wearing "could have made" impression found in cement dust).

Moreover, "trained experts commonly extrapolate from existing data" and their testimony is allowed provided that there is not "too great an analytical gap between the data and the opinion proffered. Joiner, 118 S.Ct. at 519." Ruiz-Troche, 161 F.3d at 82. It is only commonsense to conclude that if a product that is designed to reduce emissions works effectively while the engine is on and the vehicle is in motion, it will also work effectively when the engine is on and the vehicle is not in motion. *See*, Damon v. Sun Company, Inc. 87 F.3d 1467, 1475 (1st Cir. 1996) ("The issue is not whether [the expert] was right; but, rather whether he had sufficient factual grounds from which to draw his conclusions.(citations omitted) .On the basis of our review of the record, we conclude that [the] expert's testimony was predicated on facts legally sufficient to provide a basis for his conclusions.")  In fact, the Plaintiff does not present a scintilla of credible evidence, scientific, technical, anecdotal, or otherwise, to support the surmise that the filters do not function, or there functioning is impaired, when the vehicle is operating but not moving (i.e. at idle).

Second, the cases cited by the Plaintiff in support of its claims that Mr. Lyons testimony should be precluded under either FRCP 26, FRE 702 or Daubert are typically inapposite. For example, in Romero v. Drummond Co., 552 F.3d 1303, 1323 (11th Cir. 2008) the expert report only consisted of one single paragraph of the expert's proposed testimony. Likewise, in National Union Fire Insurance Co. v. Midwestern Gen. Brokerage, Inc., 2007 WL 1529011 (WD .Mo.. May 23, 2007) the expert provided absolutely no basis or reason for his opinion. Similarly, in Cook v. Sheriff of Monroe

County, 402 F.3d 1092, 113-114 (11th Cir. 2005) the expert's report was wholly and utterly conclusory and, unlike in the instant case, absolutely no facts were offered to support it.

(2)     **Mr. Lyons's testimony should not be excluded under FRE 401, 402, or 403**

Plaintiff proposes that eight (8) conclusions made by Mr. Lyons in his report should be excluded, because they are either not supported by the evidence or are cumulative or not relevant (Plaintiff's Memo at 10, ¶ 1.) The eight conclusions are:

(1) There are many sources of pollution in both Suffolk County and Roxbury Massachusetts besides the Paul Revere facility and vehicles operated by Paul Revere.

(2) The amount of emissions estimated by the U.S. EPA to have resulted from the observed idling of vehicle at the Paul Revere Roxbury facility and other locations during March and April 2006 is quite small compared to the emission from all mobile sources operating in Suffolk County, Massachusetts.

(3) Emissions from idling motor vehicles vary from gasoline and Diesel vehicles and are affected by the design of the engine and the characteristics of the emission control system. As a result, the amount of pollution produced by five minutes of idling can vary from vehicle to vehicle.

(4) In order to estimate the total amount of emissions from idling vehicles one needs to know, at a minimum, the age and type of each vehicle, the type of emission control system installed on the vehicle, the characteristic of fuel on which the vehicle is operating, and the duration of each vehicle's idling period.

11

(5) The use of ultra low sulfur Diesel fuel reduces PM from Diesel engines during idling as well as during on- road operation.

(6) The use of catalyzed particulate traps reduces PM from Diesel engines during idling as well as during on-road operation.

(7) The retro-fit instillation of Cleaire Longview exhaust aftertreatment devices combined with the of ultra-law sulfur Diesel fuel reduced PM emission during idling and PM, NOx, VOC and CO emissions during operation.

(8) the voluntary use of Ultra Low Sulphur Diesel fuels and the retrofit of 12 buses with Cleaire Longview devices by Paul Revere resulted in emissions from Paul Revere being lower than required by federal or Massachusetts regulation.

(Plaintiff's Memo at 10, ¶ 2.)

Plaintiffs contends, the conclusions 6-8 are not supported by the evidence, since it claims that there is insufficient evidence of the effectiveness of the filters while the vehicle is idling. For reasons discussed above, PRT submits that this argument is logically flawed and contrary to established law and must be ignored by the court. Regarding conclusions 1-5, the Plaintiff primarily argues that they do not fall within the factors that a court may consider when assessing a penalty under the Clean Air Act as articulated and set forth in 42 U.S.C. 7413(e)(1). (Plaintiff's Memo at 10, ¶ 2.) However, this is factually incorrect as 42 U.S.C. 7413(e)(1) (iii) permits the introduction of "the violator's full compliance history and good faith efforts to comply" and 42 U.S.C.7413(e)(1) (vii) permits the introduction of the "seriousness of the violation." Clearly, all of the conclusions 1-5 fall within these two categories, as each of the conclusion either are evidence of PRT's good faith efforts to reduce emissions or

potential evidence that the violation is less serious then the EPA submits it is. *See, e.g.,* U.S. v. Anthony Dell'Aquilla Enterprises and Subsidiaries, 150 F.3d 329, 338 (1st Cir. 1998) ( Fine that is imposed under the Clean Air Act must have some reasonable and proportionate nexus to the violations and the violators).

## CONCLUSION

For all the forgoing reason the Defendant Paul Revere Transportation LLC respectfully requests that the Court deny United States' Motion In Limine To Exclude the Testimony Of James Lyons.

Respectfully submitted,
Defendant, Paul Revere Transportation,     LLC
By its Attorney,

/s/ Jonathon D. Friedmann
Jonathon D. Friedmann
BBO #180130
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
(617) 723-7700

Dated: May 11, 2009

### Certificate of Service

I, Jonathon D. Friedmann, do hereby certify that I have on this day served a true copy of the above document upon the opposing party by mailing a copy thereof to counsel of record this 11th day of May, 2009.

/s/ Jonathon D. Friedmann
Jonathon D. Friedmann