UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
                                          )
UNITED STATES OF AMERICA,                 )
                                          )
          Plaintiff,                      )
                                          )  Civil Action
v.                                        )  No. 06-12297-GAO
                                          )
PAUL REVERE TRANSPORTATION, LLC,          )
                                          )
          Defendant.                      )
                                          )
```

BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE

**DAY ONE - JURY TRIAL**
**JURY IMPANELMENT**

John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts 02210
Monday, June 1, 2009
9 a.m.

Marcia G. Patrisso, RMR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
One Courthouse Way, Room 3510
Boston, Massachusetts 02210
(617) 737-8728

Mechanical Steno - Computer-Aided Transcript

```
 1    APPEARANCES:

 2         UNITED STATES DEPARTMENT OF JUSTICE
           ENVIRONMENTAL ENFORCEMENT SECTION
 3         By: Rachel A. Hankey, Esq.
           P.O. Box 7611
 4         Ben Franklin Station
           Washington, D.C. 20044-7611
 5         - and -
           U.S. AIR FORCE DEPARTMENT OF LAW
 6         By: Jeffrey K. Sands, Esq.
           HQ USAFA/DFL Suite 8J100
 7         USAFA, Colorado 80840
           On Behalf of the Government
 8
           RUDOLPH FRIEDMANN, LLP
 9         By: Jonathon D. Friedmann, Esq.
               Zachary Tuck, Esq.
10         92 State Street
           Boston, Massachusetts 02109
11         On Behalf of the Defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (The following proceedings were held in open court

 2    before the Honorable George A. O'Toole, Jr., United States

 3    District Judge, United States District Court, District of

 4    Massachusetts, at the John J. Moakley United States Courthouse,

 5    One Courthouse Way, Boston, Massachusetts, on June 1, 2009.)

 6              THE CLERK:  All rise

 7              Hear ye, hear ye, hear ye, all persons having business

 8    with the United States District Court for the District of

 9    Massachusetts, draw near, give your attention and you shall be

10    heard.  God save these United States and this Honorable Court.

11    The Honorable George A. O'Toole, Jr., presiding.

12              Please be seated.

13              For a trial in the case of United States of America

14    versus Paul Revere Transportation, Docket 06-12297.

15              THE COURT:  Good morning, jurors -- potential jurors.

16              Good morning.

17              THE JURORS:  Good morning.

18              THE COURT:  We're about to begin the trial of a civil

19    lawsuit brought by the United States.  I'll explain a little

20    bit more about it in a minute.  And we are going to select some

21    of you to be participants in the case as the jurors who will

22    hear the evidence and ultimately render a decision at the close

23    of the evidence in the case.

24              As I say, this is a civil action brought by the United

25    States of America against a company known as Paul Revere
```

1  Transportation, LLC.  And the allegations of the complaint are

2  that the defendant, Paul Revere Transportation, operates a

3  fleet of busses and has been violating -- on particular

4  occasions violated a regulation adopted by the Commonwealth of

5  Massachusetts under the federal Clean Air Act.  The regulation

6  in question forbids the unnecessary idling of motor vehicle

7  engines for a period exceeding five minutes.  And the statute

8  involved authorizes the United States to sue to enforce the

9  regulation.  The method of enforcement at hand is that if a

10 violation is shown, a civil penalty, a sum of money, can be

11 assessed, as well as other types of relief, perhaps.  But the

12 key would be the assessment of a penalty.  That's the nature of

13 the case.

14        The plaintiff is the United States acting through an

15 agency, the Environmental Protection Agency, and bringing a

16 claim that is founded in a Massachusetts regulation, but the

17 regulation is adopted pursuant to the federal Clean Air Act.

18 So that is what the case is about.

19        We want to be sure that the people who participate and

20 listen to the evidence and render a judgment as jurors are

21 people who are completely fair-minded and impartial as to the

22 issues and the people involved in the case.  One way of

23 assuring that is that I'm going to ask you all as a group some

24 questions to see whether you can be in that condition, that you

25 will be completely impartial and fair-minded as to the issues

1    and people involved in this case.

2          The way I do that is I ask questions -- there's just a

3    few of them.  I'll ask them to you generally as a group.  If

4    you personally would answer any of the questions yes, then just

5    stand up wherever you are.  And if there's a number of you

6    we'll just jot down your name and note that you've answered

7    that question affirmatively.  If that's the case, later on when

8    I finish the general questions we'll call you over to the side

9    and follow up briefly as to why you answered yes; what the

10   facts are that led you to give that answer.  If your answer to

11   the questions would be no, then just sit there, make no signal,

12   and we'll take it by your inaction that your answer to the

13   question is no, all right?

14         This is an important part of the process of impaneling

15   a jury, a trial jury, and the law requires that your answers to

16   the questions I'm about to put to you be given under oath.  So

17   if you'd all rise, the clerk will administer the oath to you.

18         (Jury pool sworn.)

19         THE CLERK:  Please be seated.

20         THE COURT:  Okay.  My first questions relate to the

21   people who are going to take part in the case and whether you

22   have any connection or relationship to any of them.  The

23   parties to the case are institutions, in a sense, rather than

24   individual people, but let me ask you about that.  The

25   plaintiff, of course, is the United States of America, but the

PDF created with pdfFactory trial version www.pdffactory.com

1    Environmental Protection Agency, as the plaintiff; and Paul

2    Revere Transportation, Inc., as I say, a business located here

3    in Massachusetts, is the defendant.

4         Do you or does anybody close to you have any

5    employment or other connection or relationship with either the

6    EPA, on the one side, or Paul Revere Transportation on the

7    other side?  Any relationship of any kind?  No?  Okay.

8         The case for each side will be presented by attorneys.

9    And I would ask the attorneys if they would now introduce

10   themselves to the jurors, and then I'll have a similar question

11   about whether you have any connection with any of the lawyer

12   participants.

13        Mr. Sands?

14        MR. SANDS:  Jeffrey Sands on behalf of the United

15   States Department of Justice.

16        MS. HANKEY:  Rachel Hankey on behalf of the United

17   States Department of Justice.

18        MR. DAIN:  Greg Dain on behalf of the Environmental

19   Protection Agency.

20        MR. FRIEDMANN:  Good morning.  I'm Jonathon Friedmann

21   on behalf of Paul Revere Transportation.  My law firm is

22   located at 92 State Street in Boston.  With me is my associate,

23   Zachary Tuck.

24        THE COURT:  Could we have the name of your firm just

25   in case they have a connection?

1           MR. FRIEDMANN:  Rudolph Friedmann.

2           Thank you.

3           THE COURT:  Okay.  Jurors, anybody have any personal,

4     business, professional or other relationship with any of the

5     attorneys or the law firm, Rudolph Friedmann?  If you have a

6     doubt, the answer is yes.

7           THE JUROR:  Your Honor, I can't hear anything.  I'm

8     sorry.  I can't even hear them.

9           THE COURT:  You couldn't hear?

10          THE JUROR:  A lot of people are having difficulty.

11          THE COURT:  Let's redo it, then.

12          Try to use the microphones.

13          MR. SANDS:  Good morning.  My name is Jeffrey Sands.

14    I'm an attorney with the United States Department of Justice.

15          MS. HANKEY:  Rachel Hankey on behalf of the United

16    States Department of Justice.

17          MR. DAIN:  My name is Greg Dain.  I'm an attorney with

18    the Environmental Protection Agency.

19          MR. FRIEDMANN:  Jonathon Friedmann from the law firm

20    Rudolph Friedmann, 92 State Street here in Boston.  And with me

21    is Zachary Tuck.

22          THE COURT:  Okay.  Everybody able to hear the

23    introductions?  Okay.

24          Now, anybody, on the basis of that, have any business,

25    professional, social or other connection with any of the

1    attorneys in the case?

2         As I'm sure you realize, a good bit of evidence in a

3    case like this will come from witnesses who will appear and

4    testify.  I'm going to read a list of names of people who may

5    testify in the course of the case.  We try to be overinclusive

6    rather than underinclusive, so we have a list of people who may

7    or may not, but since they may, I'm going to read the list.

8    It's probably maybe a couple of dozen names.  So I'd like you

9    to -- I'm going to read through the entire list.  I would like

10   you to pay close attention as I do that.  After I've finished

11   reading all of the witnesses, if you think you recognize

12   somebody who you have a connection with, I'm going to ask that

13   question.  So be listening to see if there's somebody on the

14   list who you have some connection or relationship with.

15        I may need some help with the pronunciation on this.

16   Abdi Mohamoud -- is that --

17        MR. SANDS:  That's correct, your Honor.

18        THE COURT:  -- an employee of the U.S. Environmental

19   Protection Agency working out of the Boston office; David

20   Brzezinski also with the EPA in Ann Arbor, Michigan; Nigel

21   Clark of Morgantown, West Virginia; Mary Fay of Lexington,

22   Massachusetts; Graham Weller of Burr Ridge, Illinois; Bill

23   Parsley of Remsenburg, New York; Christine Sansevero of the EPA

24   Boston office; Mary Beth Smuts of the EPA Boston office; Jane

25   Daly of Boston; Richard Brown of Boston; James O'Leary of

PDF created with pdfFactory trial version www.pdffactory.com

1    Boston; Richard Daley of Somerville; Thomas Gedaminsky of

2    Marlborough; Peter Henderson of Wilbraham, Massachusetts;

3    Patricia Cargill of Wilmington, Massachusetts; Paul Kiernan of

4    Millis, Massachusetts; James Viola of Tewksbury; John Carney of

5    Wakefield; Frederick Jones of Pembroke; Kenneth Wood of North

6    Quincy; James E. Powers, Jr., of Arlington; Ernesto Aguilar of

7    Brockton; Gregory Roland of Danville, New Hampshire; Michael

8    Swartz of Taunton, Massachusetts; Garvin Andrews of Dorchester;

9    James C. Williams of Dorchester; Victor Wong of Peabody.

10            Did any of you recognize any names of people whom you

11    are related to or have any other business, professional or

12    social connection on the list of names I've just read to you?

13    No?  Okay.

14            Have you or has anyone particularly close to you,

15    members of your immediate family, for example, people in your

16    household, very close friends, ever been employed or otherwise

17    worked for a governmental unit that had the responsibility of

18    promulgating and enforcing regulations, particularly business

19    regulations?  I mean it to be a very broad question, so...

20    That would include regular employment but, for example,

21    voluntary participation in town boards or something like that.

22            Anybody had the responsibility or opportunity to

23    participate in the making or enforcement of regulations?

24            THE JUROR:  Would you repeat the question, please?

25            THE COURT:  Have you or has anyone close to you ever

1    been involved, either as a regular employee or any other way,

2    in a governmental unit, state, federal, local, that had as its

3    responsibility the promulgation and enforcement of regulations?

4    And if you have a doubt about it, we'll take an affirmative

5    answer and follow up on the side.  Okay.  Okay.

6            So, ma'am.

7            THE JUROR:  Lillian Desrosiers.

8            THE COURT:  Number 2.  Okay.  Thank you.  You can sit

9    down.

10           THE JUROR:  Christine Keener.

11           THE COURT:  Number 4.

12           THE JUROR:  Fred Pearson.

13           THE COURT:  Twelve.

14           Yes, sir?

15           THE JUROR:  Roy Lavender.

16           THE COURT:  Number 26.

17           THE JUROR:  Vincent Fuoco.

18           THE COURT:  Thirty-two.  Okay.  Anybody else?

19           THE JUROR:  Katelyn Buote.

20           THE COURT:  Seven.

21           Okay.  Thank you.

22           Now, let me ask sort of the other side of that

23    question.  Are you or anybody particularly close to you

24    employed in a way, or have you been employed in a way, where

25    part of your responsibilities have been assuring compliance

1    with state or local or federal regulations for your employer as

2    part of your business?  We all, of course, as citizens submit

3    to the laws and regulations of the community, but if you've had

4    particular responsibilities or participation in compliance with

5    regulations, is what I'm getting at.

6             Yes, ma'am?

7             THE JUROR:  Elaine Pegurri.

8             THE COURT:  Number 34.  Okay.  Let me start with the

9    box.

10            Okay.  Thank you.  Okay.  Seven and 12.  Thanks.

11            THE JUROR:  Peter Goldberg.

12            THE COURT:  Number 35.

13            THE JUROR:  Margo Furman.

14            THE COURT:  Number 42.

15            Okay.  Let's start closest to the wall and work to the

16   center.  Yes?

17            THE JUROR:  Lauri McGuinness.

18            THE COURT:  That would be 24.

19            THE JUROR:  Linda Mou.

20            THE COURT:  Number 28.

21            THE JUROR:  Sabrina Ialuna.

22            THE COURT:  Number 27.

23            THE JUROR:  Laurie Fortin.

24            THE COURT:  Number 25.  Okay.

25            Sir?

```
 1              THE JUROR:  Robert Truslow.

 2              THE COURT:  Thirty-nine.

 3         Ma'am?

 4              THE JUROR:  Robin Saipe.

 5              THE COURT:  Thirty-eight.

 6              THE JUROR:  I'm not sure.

 7              THE COURT:  Okay.

 8              THE JUROR:  Christine Keener.

 9              THE COURT:  Understanding in very general terms the

10    nature of the case as I've just described it to you, do you

11    have any -- have you had any personal experience or do you have

12    any personal beliefs, attitudes, potential biases that you

13    think would interfere with your own ability to be a fair and

14    impartial juror in this case?

15              THE JUROR:  Wayne Klein.

16              THE COURT:  Six.  Thank you.

17              THE JUROR:  Lisa Skaff.

18              THE COURT:  Nine.

19              THE JUROR:  Taylor Shelby.

20              THE COURT:  Sixteen.

21              THE JUROR:  Sabrina Ialuna.

22              THE COURT:  Number 27.

23              THE JUROR:  Faye Ruopp.

24              THE COURT:  Five.

25         Okay.  Let me tell you a little bit about the schedule
```

1    we're going to follow.  Conducting jury trials is only one of
2    the things we do here in the courtroom.  We have a number of
3    other kinds of business that we have to attend to, and we
4    customarily divide our working day into two -- morning and
5    afternoon tracks.  And in the morning we do jury trials from
6    nine to one, and in the afternoons, from two on, we do other
7    kind of business; motion hearings, criminal sentencings and
8    things like that.  So this trial will proceed in the morning
9    track on a nine-to-one schedule.  So that means for jurors most
10   days while the trial is ongoing and the case is being
11   presented, after one o'clock or so you'll be free to go about
12   your other affairs.
13          That continues until the jurors begin deliberating
14   because the deliberations obviously are done in a separate room
15   and that can -- we can then have the jury deliberating in the
16   afternoon and still conduct our courtroom business.  So once
17   the jury begins deliberating, the day would go to a normal
18   business day, a full nine to five, roughly.
19          On that schedule it is the estimate by the lawyers,
20   and I think it's a sound one, that this case will take between
21   one and two weeks to present.  So probably this week and next
22   week is what we're looking at on that schedule.
23          Now, we understand and appreciate that every one of
24   you would be someplace else if you had not responded to the
25   summons to be a juror, or to be available to be a juror.  We

1    know that asking people to come to be available for jury

2    service means that they have to rearrange things, put aside

3    some things they have otherwise planned on doing, perhaps.

4    It's a necessary burden of citizenship.  If we didn't do that,

5    we wouldn't have juries, and the jury system, of course, is one

6    of the most fundamental aspects of our participatory democracy.

7              So we know there is some level of inconvenience and

8    disruption for anybody to serve as a juror under any

9    circumstances.  Apart from that kind of inconvenience that

10   everybody shares, is there something over the next two weeks

11   that would make it particularly difficult for you to serve on

12   the schedule that I've outlined?

13             Okay.  Number 2, 4, 5, 6.  Okay.  I'm sorry.  And

14   Number 11, I guess, right?  Okay.  Let me start over here.

15             THE JUROR:  Amanda Paglia.

16             THE COURT:  That's Number 14.

17             THE JUROR:  Erin Rose.

18             THE COURT:  Number 22.

19             THE JUROR:  Linda Mou.

20             THE COURT:  That's 28.

21             THE JUROR:  Peter Goldberg.

22             THE COURT:  Number 35.

23             THE JUROR:  Robin Saipe.

24             THE COURT:  Let's see.  That's 38.  Thank you.

25             THE JUROR:  Paul Menard.

1           THE COURT:  Forty.

2           THE JUROR:  Rosita Costa.

3           THE COURT:  Forty-one.

4           THE JUROR:  Sheila Mulcahey.

5           THE COURT:  Forty-three.

6           THE JUROR:  Katelyn Buote.

7           THE COURT:  Okay.  Those are my general questions.

8   For those of you that have answered any of them affirmatively,

9   we're going to have a little quiet chat at the side and I'll

10  find out the reasons.  And we'll try to get this done as soon

11  as possible.  I appreciate that this is going to leave a lot of

12  you just sitting around, but, again, it's part of the process.

13  We appreciate your patience as we proceed through this next

14  stage.

15          All right.  So I'll see counsel, and we'll begin with

16  Juror No. 2.

17          THE CLERK:  Mr. Latorella.

18          (Discussion at sidebar and out of the hearing of the

19  jury:)

20          THE COURT:  We're calling you over, first, because I

21  don't have any employment information.

22          THE JUROR:  Hi.

23          THE COURT:  For most jurors we have some information

24  about their employment or occupation.  For you, for some

25  reason, there's --

PDF created with pdfFactory trial version www.pdffactory.com

```
 1            THE JUROR:  The reason I didn't have employment, I
 2   work at Tufts University, and I only work 42 weeks per year.
 3            THE COURT:  What do you do when you work?
 4            THE JUROR:  I'm a clerk over there.
 5            THE COURT:  Okay.  So --
 6            THE JUROR:  But I do have one problem that I want you
 7   to know right now.  I wear hearing aids and I misinterpret
 8   words; I don't hear them correctly.  So that's one thing.
 9            THE COURT:  How did you do this morning?
10            THE JUROR:  I could hear, but it was in and out.  So
11   it was hard for me, but I still could -- you know.  I don't
12   want you to think that -- all right?
13            THE COURT:  Okay.  Good.  Thanks.
14            THE JUROR:  Okay.  Thank you.
15            (The juror is excused.)
16            THE COURT:  Before I call the next one, what I
17   typically do is go through a bunch of interviews without
18   addressing any cause.  We don't do it after each one.  When we
19   get enough -- which is not going to take long because the
20   maximum is going to be 18 cause-free -- when we get enough,
21   then we'll go through and see if there are any cause
22   objections.  So I'm not sure I'm going to interview all 40
23   people here because we're not going to have to go that far.
24            So we'll see how it goes.  Okay.  Number 2.
25            (In open court:)
```

1            THE CLERK:  Lillian Desrosiers.

2            (Discussion at sidebar and out of the hearing of the

3       jury:)

4            THE COURT:  Good morning.

5            THE JUROR:  Good morning.

6            THE COURT:  You answered a couple of the questions.

7       One was connection with a governmental unit that might

8       regulate.

9            THE JUROR:  Correct.  My best friend is the selectman

10      of our town.  He also serves on the council of our church,

11      which I'm chairperson of.

12           THE COURT:  How long has he been in town government?

13           THE JUROR:  Two years in this position and three years

14      in a previous position.

15           THE COURT:  What was the previous position?

16           THE JUROR:  Board of public health.

17           THE COURT:  Okay.  And does he have any professional

18      training in any -- in that area in public health at all, do you

19      know?

20           THE JUROR:  Just his college education.

21           THE COURT:  Would that friendship affect your ability

22      to be an impartial juror in a case like this?

23           THE JUROR:  I don't believe so.

24           THE COURT:  There was a concern about the schedule?

25           THE JUROR:  Correct.  The concern about the schedule

```
 1    is that I'm also a pastor of parish counsel for the elderly, so

 2    I'm on call hospice call, and I visit the elderly every week to

 3    take care of their spiritual needs.  So to be that far away

 4    from all of these elderly people would be very difficult for

 5    them, to not be able to be in touch.

 6              THE COURT:  Okay.  Thank you.

 7              THE JUROR:  Thank you.

 8              (The juror is excused.)

 9              (In open court:)

10              THE CLERK:  Christine Keener.

11              (Discussion at sidebar and out of the hearing of the

12    jury:)

13              THE COURT:  Good morning.

14              THE JUROR:  Hello.

15              THE COURT:  You answered several of the questions, so

16    we'll take them one by one.  One was a connection with a

17    governmental unit that does regulations.

18              THE JUROR:  I wasn't sure, because my brother-in-law

19    is a police officer and my mom and dad work for the Town of

20    Dennis.

21              THE COURT:  Okay.  Your brother-in-law is a police

22    officer?

23              THE JUROR:  Yes.  My sister's --

24              THE COURT:  Where is he a police officer?

25              THE JUROR:  In the Cape.  Cape Cod.
```

1          THE COURT:  How long has he done that?

2          THE JUROR:  Oh, my gosh.  Seven or so years.  He's a

3      sergeant.

4          THE COURT:  He's a sergeant?

5          THE JUROR:  Yes.

6          THE COURT:  Okay.  As far as you know, standard police

7      duties is what he does?

8          THE JUROR:  Yes.  I don't know much about it.

9          THE COURT:  All right.  And your parents?

10         THE JUROR:  My mom and dad work for the Town of

11     Dennis.

12         THE COURT:  What do they do?

13         THE JUROR:  In the town dump.  And my dad works out of

14     the office and my mom works in the office.  She's in charge of

15     payroll and a lot of things I don't know about.

16         THE COURT:  Okay.  Then I asked the other side,

17     whether you had ever worked or somebody close to you had been

18     in a business that was regulated.

19         THE JUROR:  I wasn't sure because he's a police

20     officer, so I don't know what that covers.

21         THE COURT:  I see.  Right.  Would any of those things

22     have any impact on your ability to be an impartial juror?

23         THE JUROR:  No, not at all.

24         THE COURT:  You also mentioned some impact on the

25     schedule?

1          THE JUROR:  Yes.  Because we have one vehicle for the

2    family and I work two jobs, so I wasn't sure about that.

3          THE COURT:  Tell me a little bit more about the car

4    trouble.

5          THE JUROR:  I have two jobs, my fiancé has a job, and

6    my stepson also has a job, and we all rely on that vehicle to

7    get to work and everywhere else.

8          THE COURT:  And so what would the practical impact be?

9          THE JUROR:  If I had to stay, everybody would miss

10   work.

11         THE COURT:  Okay.  Thanks.

12         (The juror is excused.)

13         (In open court:)

14         THE CLERK:  Faye Ruopp.

15         (Discussion at sidebar and out of the hearing of the

16   jury:)

17         THE COURT:  Hi.

18         THE JUROR:  Hi, Judge.

19         THE COURT:  Before we get to the questions that you've

20   already indicated, we have some rudimentary information about

21   people including employment.  For you it says self-employment.

22         THE JUROR:  Mathematics education.  So I consult

23   school districts.

24         THE COURT:  Now, you said you had a concern that you

25   might have some experience or attitudes that would affect your

1    impartiality?

2         THE JUROR:  Well, I belong to several environmental

3    groups, and at first hearing the case I was thinking how can

4    anyone defend idling.  So I may be able to be persuaded

5    otherwise, but I think it's my personal concerns on top of

6    that.

7         THE COURT:  Tell me about those.

8         THE JUROR:  If I don't work, I don't get paid.  Since

9    I work for school systems, they contract me for days, and if I

10   don't go, I won't get paid for those days.  So I'm willing to

11   make a financial sacrifice to a point, but I have five days of

12   scheduled work in the next two weeks.

13        I also have three elderly in-laws and parents, one of

14   whom is in the hospital now with congestive heart failure, a

15   mother with Alzheimer's.  I'm in charge of their medical

16   correspondence.  So I'm not at my most capable right now.  So

17   if the trial extends and I'm called away to New Jersey, I'm

18   worried about that.

19        THE COURT:  Okay.  Thanks.

20        (The juror is excused.)

21        (In open court:)

22        THE CLERK:  Wayne Klein.

23        (Discussion at sidebar and out of the hearing of the

24   jury:)

25        THE COURT:  Good morning.

```
 1            THE JUROR:  Hi.

 2            THE COURT:  You answered a couple of questions.  One

 3    was a concern about your impartiality -- or partiality?

 4            THE JUROR:  Yeah.

 5            THE COURT:  Tell us about that.

 6            THE JUROR:  Yeah.  I've actually called the police

 7    twice in the last three months about diesel trucks on the road.

 8    I drive to Cape Cod once or twice a week for work, and that's

 9    why I see the pollution, from that.  I've been active with

10    environmental causes for a long time.  I've forced my town to

11    set extra parking aside for the MBTA.  I think the law is

12    too -- it may be ambiguous, but it's not strict enough, if

13    anything.  I think their claim is absurd.

14            THE COURT:  Tell me about your concern about the

15    schedule.

16            THE JUROR:  I'm a neuropsychologist and I have

17    promised things to a lot of patients, which I won't be able to

18    deliver on, depending on how long this goes.  I also consult

19    with the Mass. Hospital school, which my services are most

20    needed right now.

21            THE COURT:  Okay.  Thank you.

22            (The juror is excused.)

23            (In open court:)

24            THE CLERK:  Katelyn Buote.

25            (Discussion at sidebar and out of the hearing of the
```

1  jury:)

2          THE COURT:  Hi.

3          THE JUROR:  Hi.

4          THE COURT:  You answered several of the questions.

5  One was that somebody -- you or somebody close to you had

6  worked for a governmental unit.  Can you tell us about that.

7          THE JUROR:  I'm very close friends to the mayor of

8  Lowell, and I see him on a daily basis.  I go to the YMCA and I

9  always see him when I go.  And also, I'll be interning for a

10 law firm this summer, starting as soon as possible.  So I'm

11 constantly in touch with them.  It's Gallagher & Cavanaugh in

12 Lowell.

13         THE COURT:  Okay.  How about, I think you also

14 answered that you have a connection with a business that was

15 regulated?

16         THE JUROR:  Yeah.  I wasn't sure about that one.  But

17 the mayor, with what he's allowed to do, and it's a law firm

18 and the kind of law they do.

19         THE COURT:  I see.  And you're concerned about the

20 schedule?

21         THE JUROR:  Yeah.  My dad would have to bring me in to

22 Boston.  So it kind of conflicts with his schedule.  Like

23 things could be moved around, but it would just definitely be

24 difficult to make sure I get in here on time.

25         THE COURT:  We have some basic employment and other

1    information about jurors, and for you it says "unemployed."

2            THE JUROR:  I wasn't employed.

3            THE COURT:  You're a student?

4            THE JUROR:  Yeah.  I wasn't employed at the time that

5    I filled that out, yeah.

6            THE COURT:  Are you a student or --

7            THE JUROR:  I am a full-time student, yeah.

8            THE COURT:  So you have a summer internship?

9            THE JUROR:  Yeah.

10            THE COURT:  And that starts when?

11            THE JUROR:  As soon as possible.

12            THE COURT:  Okay.  Thanks.

13            THE JUROR:  Okay.

14            (The juror is excused.)

15            (In open court:)

16            THE CLERK:  Lisa Skaff.

17            (Discussion at sidebar and out of the hearing of the

18    jury:)

19            THE COURT:  Hi.

20            THE JUROR:  Hi.

21            THE COURT:  I think you expressed some concern about

22    your ability to be impartial?

23            THE JUROR:  It's just I was a somewhat vocal staff

24    member at school about a similar issue.  It seemed like town

25    trucks parking in front of the classroom windows using the

1   store across the street.  I just thought it was fair to

2   mention.

3          THE COURT:  Do you think that would affect your

4   ability to be a fair --

5          THE JUROR:  I don't know a whole lot about what's

6   going to happen.  I felt in that situation, you know, shut it

7   off.  You're just going across the street.  But I'm sure it's

8   more than that.  I don't know.

9          THE COURT:  Well, I guess the question is:  Do you

10  think that you are -- would be able to be open-minded about it,

11  and if the facts warrant it, you could come to a different

12  conclusion?

13         THE JUROR:  I think if the facts warranted it, I could

14  come to a different conclusion.

15         THE COURT:  Okay.  All right.  Thank you.

16         THE JUROR:  Thank you.

17         (The juror is excused.)

18         (In open court:)

19         THE CLERK:  Caitlin Hogg.

20         (Discussion at sidebar and out of the hearing of the

21  jury:)

22         THE COURT:  Hi.

23         THE JUROR:  Hi.

24         THE COURT:  You had some concern about the schedule?

25         THE JUROR:  Yes.  I have an elderly mom at home so

1    it's -- you know, I'm the only one that lives there, and I'm

2    the one who has the car and stuff, so I don't know what will

3    happen if I'm not home.  That's the only --

4              THE COURT:  And home is where?

5              THE JUROR:  Eastham -- Cape.  It's the only problem I

6    have.

7              THE COURT:  And does she have any current health

8    issues?

9              THE JUROR:  Yeah.  She's got, like, heart problems.

10   She's got a bypass in her and things like that.  She's fine

11   right at the moment but -- that's the only problem I have.

12             THE COURT:  Okay.  Thank you.

13             (The juror is excused.)

14             (In open court:)

15             THE CLERK:  Pearson Frederick.

16             (Discussion at sidebar and out of the hearing of the

17   jury:)

18             THE COURT:  Hello.  Are you Pearson Frederick or

19   Frederick Pearson?

20             THE JUROR:  Frederick Pearson.

21             THE COURT:  I was just wondering whether the list

22   was -- you answered a couple of questions.  One was -- I guess

23   each of them were about either a connection with a unit with

24   the government that regulates; on the other hand, a company

25   that complies with regulations.  Can you tell us about those

1   answers?

2         THE JUROR:  My father-in-law was a state prison guard

3   for 20-something years, and I'm pretty close to him.  But other

4   than that, I work for an FDA-regulated medical device

5   manufacturer.  I'm a manufacturing engineer.

6         THE COURT:  What do you do?

7         THE JUROR:  I'm a manufacturing engineer.

8         THE COURT:  Oh, I see.  I'm sorry.

9         Does that bring you -- do you have any direct

10  responsibilities for compliance?

11        THE JUROR:  Yeah.  We -- I run three or four

12  manufacturing lines.  I help design and put together the design

13  binders and make sure we're in code with FDA regulations.

14  We're an EN 46001 registered company.

15        THE COURT:  What's the name of the company?

16        THE JUROR:  S.T. Medical in Stoughton.

17        THE COURT:  As a result of your work, do you have any

18  feelings or beliefs that would interfere with your ability to

19  be an impartial judge in this case?

20        THE JUROR:  No, not really.  It's a pretty different

21  case than what this, but it's federal, so...

22        THE COURT:  Okay.  Thank you.

23        THE JUROR:  You're welcome.

24        (The juror is excused.)

25        (In open court:)

```
 1              THE CLERK:  Amanda Paglia.

 2              (Discussion at sidebar and out of the hearing of the

 3    jury:)

 4              THE COURT:  Hi.

 5              THE JUROR:  Hi.

 6              THE COURT:  You had a concern about the schedule?

 7              THE JUROR:  Yeah.  I have an internship that started

 8    two weeks ago.

 9              THE COURT:  I'm sorry?

10              THE JUROR:  I have an internship that started two

11    weeks ago.  It's not paid; I get the credits.  So I need a

12    certain number of hours to get the school credit, and if not, I

13    need to withdraw before it turns up on my transcript.

14              THE COURT:  And where's the internship?

15              THE JUROR:  The Patriots.

16              THE COURT:  And what's the time commitment?

17              THE JUROR:  It's 16 hours a week, but it has to be on

18    Tuesdays and Thursdays because they only have a certain number

19    of interns allowed in the building.

20              THE COURT:  And what hours in the day?

21              THE JUROR:  It's nine to five.

22              And also, for one of the other questions I probably

23    should have stood up.  But my organization at school sponsored

24    a "BC is Green" week, so I just didn't want you to --

25              THE COURT:  "BC is Green"?  Is that what you said?
```

```
 1            THE JUROR:  Yes.  A sustainable week at school.

 2            THE COURT:  What's your role in that?

 3            THE JUROR:  I'm in BC, as you can see.  And we brought

 4   in speakers for the week just to talk about being green.

 5            THE COURT:  Would that affect your ability to be an

 6   impartial juror in a case like this?

 7            THE JUROR:  No.  I just didn't want you to end up

 8   seeing my name on a thing that was sponsored for that if I got

 9   picked.

10            THE COURT:  Okay.  Thanks.

11            (The juror is excused.)

12            (In open court:)

13            THE CLERK:  Taylor Shelby.

14            (Discussion at sidebar and out of the hearing of the

15   jury:)

16            THE JUROR:  Hello.

17            THE COURT:  Hi.  I think you said you had some concern

18   about your ability to be --

19            THE JUROR:  I do.  I'm a very active environmentalist,

20   and I have a very active interest in emission standards.

21            THE COURT:  And so you think you would have trouble

22   being impartial --

23            THE JUROR:  I think so.  Yes.

24            THE COURT:  Thank you.

25            (The juror is excused.)
```

```
 1              (In open court:)

 2              THE CLERK:  Erin Rose.

 3              (Discussion at sidebar and out of the hearing of the

 4       jury:)

 5              THE COURT:  Hi.

 6              THE JUROR:  Hi.

 7              THE COURT:  You had some concern about the schedule?

 8              THE JUROR:  Yes.  I actually have two separate issues.

 9       I have four children, and in order to be here I have to leave

10       my ten-year-old alone and I won't be home in time.  And I also

11       watch my sister's kids -- she goes for daily radiation -- and

12       they're two, seven, nine and eleven.

13              THE COURT:  Okay.

14              THE JUROR:  Okay.  Thank you.

15              (The juror is excused.)

16              (In open court:)

17              THE CLERK:  Lauri McGuinness.

18              (Discussion at sidebar and out of the hearing of the

19       jury:)

20              THE COURT:  Hi.

21              THE JUROR:  Hi.

22              THE COURT:  Some connection with a company that is

23       regulated, I think was the answer you gave.

24              THE JUROR:  Yeah.  I just wanted to make sure I

25       understood it.  I work for an insurance company, and you said
```

PDF created with pdfFactory trial version www.pdffactory.com

1    compliance with the state.  So I have to make sure, when we

2    appoint the agencies and individuals, that we're compliant with

3    the state to write our insurance company *[sic]*.  And I'm also a

4    continuing education coordinator, and I have to make sure we're

5    compliant.  And there's a lot of regulations with that.

6              THE COURT:  So you assure your company's compliance

7    with the state regulations; is that right?

8              THE JUROR:  Yes, because we get audited a lot.

9              THE COURT:  Do you deal with regulators a lot in that

10   job?  Do you deal with --

11             THE JUROR:  I deal with the states, wherever we --

12             THE COURT:  The Division of Insurance or something,

13   whoever does it?

14             THE JUROR:  Yes.  Yup.  The Division of Insurance.

15             THE COURT:  And do you have personal contact with

16   them?

17             THE JUROR:  Yes.

18             THE COURT:  Okay.  Would that have any effect on your

19   ability to be an impartial juror in this case, knowing what you

20   know about this case?

21             THE JUROR:  I don't think so.  I don't think so.

22             THE COURT:  Okay.  All right.  Thanks.

23             THE JUROR:  Thanks.

24             (The juror is excused.)

25             THE COURT:  Let's just do this page.  Actually, we

```
 1    might just stop at 30.

 2             (In open court:)

 3             THE CLERK:  Laurie Engler Fortin.

 4             (Discussion at sidebar and out of the hearing of the

 5    jury:)

 6             THE COURT:  Hi.

 7             THE JUROR:  Good morning.

 8             THE COURT:  Let me find you here on the list.

 9    Connection with a business that is regulated?

10             THE JUROR:  I work for the state for the mentally

11    challenged, and we do drive them to a work program and we do

12    deal with services outside, like these people, and we do have

13    issues with the smell that comes from their vehicles.  And, you

14    know, because we are lined up in a row, so we're kind of behind

15    them, and we kind of get the exhaust and all of that.

16             THE COURT:  So in your work you travel by bus; is that

17    what you're saying?

18             THE JUROR:  No.  We bring them in their own vehicle to

19    work, but there's outside people that transfer other residents.

20             THE COURT:  To some of the places where you bring the

21    clients, is that it?

22             THE JUROR:  Right.  And they transfer them.  And we

23    also have to deal with their -- you know, the fumes that come

24    from them.  So there's been issues with that.

25             THE COURT:  Okay.  And do you think that would affect
```

```
 1   your ability to be impartial?
 2           THE JUROR:  Absolutely.
 3           THE COURT:  All right.  Thanks.
 4           THE JUROR:  Thank you.
 5           (The juror is excused.)
 6           (In open court:)
 7           THE CLERK:  Roy Lavender.
 8           (Discussion at sidebar and out of the hearing of the
 9   jury:)
10           THE COURT:  Hi.
11           THE JUROR:  Hi.
12           THE COURT:  Connection with a governmental unit that
13   regulates?
14           THE JUROR:  My father was the mayor of Newburyport,
15   and my sister works for the Department of Agriculture.  I don't
16   know if that --
17           THE COURT:  What kind of position does your sister
18   have?
19           THE JUROR:  To be honest, I'm not 100 percent sure.
20   She's --
21           THE COURT:  It's not likely to affect you, then?
22           THE JUROR:  Probably not.
23           (Laughter.)
24           THE COURT:  And your father was mayor of Newburyport?
25           THE JUROR:  (Nonverbal response.)
```

```
1              THE COURT:  For how long?

2              THE JUROR:  Two years.

3              THE COURT:  Is that recently or a while ago?

4              THE JUROR:  Four years ago, about.

5              THE COURT:  Any other positions held by him in town

6      government?

7              THE JUROR:  He was, like, a selectman or -- before he

8      was mayor he was on, like, city council.

9              THE COURT:  On the planning board or the zoning board

10     of appeals or anything like that?

11             THE JUROR:  Just the city council.

12             THE COURT:  Would that have any impact on your

13     fair-mindedness as a juror?

14             THE JUROR:  I can't see how.

15             THE COURT:  Okay.  Could you just -- you're an

16     engineer, senior SQA engineer.  I mean, what --

17             THE JUROR:  It software quality assurance.

18             THE COURT:  For Acme Packet, which is what?

19             THE JUROR:  It's a voice-over-IP company in

20     Burlington.

21             THE COURT:  That kind of packet.  Okay.

22             All right.  Thank you.

23             THE JUROR:  Uh-huh.  Is that it?

24             THE COURT:  Yup.

25             (The juror is excused.)
```

```
1                  (In open court:)

2              THE CLERK:  Sabrina Ialuna.

3              (Discussion at sidebar and out of the hearing of the

4      jury:)

5              THE COURT:  Hi.

6              THE JUROR:  Hi.

7              THE COURT:  Connection with a company that is

8      regulated, I think you answered my question.

9              THE JUROR:  I'm a litigation paralegal with the law

10     firm of Weil, Gotshal & Manges.  We were just defending an

11     employee of W.R. Grace, and one of the allegations was a

12     violation of the Clean Air Act.  And the government was the

13     plaintiff, but it was in conjunction with the EPA, and I looked

14     at a lot of EPA documents.

15             THE COURT:  Was it a civil action or a prosecution?

16             THE JUROR:  Criminal.

17             THE COURT:  It was a criminal prosecution?  Where was

18     that, here in this court?

19             THE JUROR:  In Montana.

20             THE COURT:  In Montana?

21         And so you -- and what was the particular violation or

22     violations?

23             THE JUROR:  Conspiracy, defrauding the government, a

24     violation of the Clean Air Act.

25             THE COURT:  What kinds of -- what was the violations
```

1    in fact; in other words -- first of all, before you go any

2    further, is the case over?

3              (Laughter.)

4              THE JUROR:  Yes, the case is over.  The case is over.

5    The case is over, yes, and the company and the defendants were

6    cleared of all of their charges.

7              THE COURT:  And when was it concluded?

8              THE JUROR:  A few weeks ago.  It was a long trial.

9              THE COURT:  And you think that would affect your

10   ability to be --

11             THE JUROR:  Yes.

12             THE COURT:  Okay.  All right.  Thank you.

13             THE JUROR:  Thank you.

14             (The juror is excused.)

15             (In open court:)

16             THE CLERK:  Linda Mou.

17             (Discussion at sidebar and out of the hearing of the

18   jury:)

19             THE COURT:  Hi.

20             THE JUROR:  Hello.

21             THE COURT:  You answered a couple of the questions.

22   One was about a connection with a business that is regulated.

23             THE JUROR:  I wasn't sure about that one, but I work

24   for a social mental health -- a mental health agency on the

25   South Shore, so we do regulations with DMH all the time.

```
 1            THE COURT:  What do you do there?
 2            THE JUROR:  I'm a case coordinator.
 3            THE COURT:  Do you have any personal contact with
 4    regulators?
 5            THE JUROR:  As in, like, state regulators for the
 6    house and stuff?
 7            THE COURT:  Yeah.
 8            THE JUROR:  Yeah.  They come to our house to make sure
 9    that everything's in line, so...  We prep for it.
10            THE COURT:  How long have you been doing that?
11            THE JUROR:  Three years.
12            THE COURT:  Does that experience leave you with any
13    concern about your ability to be an impartial juror in a case
14    like this?
15            THE JUROR:  Not really.
16            THE COURT:  Okay.  You had a concern about the
17    schedule?
18            THE JUROR:  Yeah.  I am buying a house.  I'm closing
19    in less than two weeks.  And I haven't finished all of my loan
20    application things.  Because it's a short sale, there's a lot
21    of -- the approval is June 15th, so we have to get everything
22    done by then.  And I work from 12 to eight, but in the mornings
23    is when I would normally do the other things.
24            THE COURT:  Okay.  Thank you.
25            THE JUROR:  Thank you.
```

PDF created with pdfFactory trial version www.pdffactory.com

1          (The juror is excused.)

2          THE COURT:  Let's stop there and see how we're doing.

3    So what I would suggest is just run down the list.  If you have

4    a concern or an objection on the basis of cause -- now, this is

5    only cause.  We're looking for a cause-free group.

6          Number 1, Ms. Desrosiers?

7          MS. HANKEY:  The hearing issue could be a problem.

8          THE COURT:  Oh, the first fella?

9          MS. HANKEY:  Yeah.

10         THE COURT:  Well, you know, we do have a good sound

11   system here, and it's always difficult to get a sense of how

12   impairing it might be.

13         MR. FRIEDMANN:  I would think, your Honor, we could

14   say:  "If you can't hear us, raise your hand."

15         THE COURT:  Yeah, I think there are ways.

16         MS. HANKEY:  The EPA inspector has a fairly thick

17   accent, and he said that he has trouble hearing words and

18   interchanging words.  And, frankly, it will be difficult for

19   you and I to understand him sometimes with his accent, so if

20   someone has a hearing problem, I think it will be particularly

21   troublesome.

22         MR. FRIEDMANN:  I think that's easily solvable.  If

23   he's not catching words, like any of us, if you're not catching

24   words because of an accent, you can let the Court know.

25         THE COURT:  Yeah, I think I'll have to leave it to a

1    peremptory if that's your concern.  So no on him.

2         So Number 2, then, Ms. Desrosiers.  Anybody?  You

3    don't have to; I just want to know.  If not, okay.

4         Number 4.  This one has a car problem.  It sounds like

5    it's an economic problem for the unit, so I think I would be

6    inclined to excuse her for hardship reasons.

7         MR. FRIEDMANN:  That's Number 4, your Honor?

8         THE COURT:  That was Number 4.

9         THE CLERK:  Christine Keener.

10        THE COURT:  Number 5?

11        MR. FRIEDMANN:  We have some problems.

12        THE COURT:  Yes, I think it was fairly evident.  I'll

13   excuse Number 5.

14        Number 6?

15        MR. FRIEDMANN:  Same thing.

16        THE COURT:  Same thing.

17        Number 7?  She's one of our interns, right?  I think

18   the interns I'm going to let go, generally.

19        MR. FRIEDMANN:  It certainly didn't seem like she

20   wanted to be here, that's for sure.

21        THE COURT:  Number 9?

22        MR. FRIEDMANN:  I think she was another one that I

23   would suggest had the burden of proof on us already.

24        MS. HANKEY:  I think she said she could impartial.

25        THE COURT:  I think she said it, but I don't believe

PDF created with pdfFactory trial version www.pdffactory.com

1    it.  I think she was too affected by the -- I'm going to excuse

2    her.  I think her personal experience is too close to the case.

3              Number 11?

4              MR. SANDS:  She has her mother in the Cape.

5              THE COURT:  It doesn't sound like an acute problem; it

6    sounded like the normal problems.  I don't think it's enough of

7    a problem.

8              Number 12?  Number 14?

9              MR. FRIEDMANN:  Yeah.

10             THE COURT:  I'd let her go as an intern, but she also

11   has got the environmental interest, so...

12             Sixteen?

13             MR. FRIEDMANN:  She had environmental also.

14             THE COURT:  Right.

15             MR. TUCK:  Yup.

16             THE COURT:  I'll excuse 16, particularly about

17   emissions, she said.

18             Twenty-two?  This was child-care issues.

19             MS. HANKEY:  Yeah, she said, I guess, she has kids who

20   would be coming home during the day.

21             MR. FRIEDMANN:  And also emotional, your Honor.  I

22   thought she was going to cry.

23             THE COURT:  Yes, I think there are child-care issues.

24             Number 24?  Number 25?

25             I think that's the same thing.  She expressed concern

```
 1    about idling specifically.

 2            Twenty-six?  Twenty-seven?

 3            MR. FRIEDMANN:  Twenty-seven, your Honor.

 4            THE COURT:  I'll excuse 27.

 5            THE CLERK:  Twenty-seven you're excusing?

 6            THE COURT:  Yes.

 7            MR. FRIEDMANN:  Actually, I wanted to know how the

 8    trial came out.

 9            MR. SANDS:  The defendants were acquitted.

10            THE COURT:  Number 28?  Okay.  I think -- let me just

11    see what we've got.  I think we're okay.  Let's excuse those in

12    the box.  What we'll do is excuse the ones that we've just

13    dealt with in the box, fill those with the next in sequence,

14    except that if someone is one of the those we've just

15    identified, we'll excuse them and fill the next ones.  And then

16    we'll begin the peremptory.

17            (In open court:)

18            THE CLERK:  The following prospective jurors in the

19    jury box will be excused:  Christine Keener, Faye Ruopp, Wayne

20    Klein, Katlin Bruno and Lisa Skaff.

21            Juror No. 4 is now Nezha, N-E-Z-H-A, Talal, T-A-L-A-L.

22    Would you take the fourth seat in the first row, please.

23            THE JUROR:  I have a question.

24            THE CLERK:  Come up.

25            (Discussion at sidebar and out of the hearing of the
```

```
 1   jury:)

 2            THE JUROR:  I'm sorry.  If you know someone that works

 3   for the company, Paul Revere.  I have a close friend --

 4            THE COURT:  I'm sorry?

 5            THE JUROR:  -- that works for the company, Paul

 6   Revere.

 7            I have a close friend that works for the company, so

 8   it's okay?

 9            THE COURT:  Works for what company?

10            THE JUROR:  Paul Revere.

11            THE COURT:  Oh, I'm sorry.  Paul Revere.  Who is your

12   friend?

13            THE JUROR:  Yeah.

14            THE COURT:  What's his name, or her name?

15            THE JUROR:  Satura.

16            THE COURT:  In what capacity?

17            THE JUROR:  He's a bus driver.

18            THE COURT:  Where does he work?

19            THE JUROR:  They live in Medford.  His wife is close

20   friends to me.  And we always go to their house on the weekend.

21   I don't know what station --

22            THE COURT:  How long has he been a driver?

23            THE JUROR:  Like six years.

24            THE COURT:  Okay.  And how frequently do you see them?

25            THE JUROR:  Once a month, something like that.
```

```
 1              THE COURT:  Okay.  Thanks.  Why don't you just take a
 2    seat.
 3              (The juror is excused.)
 4              (In open court:)
 5              THE CLERK:  Juror No. 5 is now Barbara Naughton.
 6              Ms. Paglia, you're going to be excused.
 7              Just take that next seat there.
 8              Return to the jury room, second floor.  Thanks.
 9              Taylor Shelby, you'll be excused.
10              And Paula Cutter, you're the next juror up.  Please
11    take the next empty seat in the next row.  There you go.
12              Juror No. 7 is now Anthony Alley, A-L-L-E-Y.  Take the
13    second empty seat in the second row there.
14              And Juror No. 9 is now Kathleen Sanfacon,
15    S-A-N-F-A-C-O-N.  Take the next empty seat in the second row,
16    please.
17              (Discussion at sidebar and out of the hearing of the
18    jury:)
19              THE COURT:  Now there's a question about Juror No. 13
20    who came over.  I think it's -- I don't know which way it would
21    work, but it's likely to hurt somebody, so I think we'll excuse
22    her.  We'll fill that seat with someone else.
23              (In open court:)
24              THE CLERK:  Ms. Talal, you'll be excused.  Return to
25    the jury room on the second floor, please.
```

1          Juror No. 4 is now Jennie Twombly, T-W-O-M-B-L-Y.

2     Take the fourth seat in the first row, please.

3          (Discussion at sidebar and out of the hearing of the

4     jury:)

5          THE COURT:  Okay.  Now we have a cause-free box, so

6     I'm ready for peremptories.  So if you want to have a minute or

7     two to consult.

8          (Pause.)

9          THE COURT:  How are we doing?  All set?  Okay.  You go

10    first.

11         MR. SANDS:  We're going to strike Juror No. 1.

12         THE COURT:  Okay.  Is that it?

13         MR. SANDS:  Do we do all three?

14         THE COURT:  You can do as many as you want; in other

15    words, as many as you want to strike from this box you do now,

16    and then he'll do his, and then we'll excuse those and fill

17    them.  And if you have any left, you can then take a crack at

18    the newcomers, but it's only the newcomers in the next round

19    that --

20         MR. FRIEDMANN:  Will be subject to strike?

21         MR. SANDS:  Number 15.

22         THE COURT:  In Seat No. 5.

23         MR. SANDS:  That's it, Judge.

24         MR. FRIEDMANN:  You normally don't seat and then we

25    challenge; you have us each challenge first before you seat

PDF created with pdfFactory trial version www.pdffactory.com

```
 1  more?

 2          THE COURT:  Yes.

 3          MR. FRIEDMANN:  Okay.

 4          THE COURT:  Yes.  For the group in the box.  Right.

 5          MR. FRIEDMANN:  Okay.

 6          In Seat 8, Juror No. 8.

 7          THE CLERK:  What's his name?

 8          MR. FRIEDMANN:  Seat 8, Juror 8.

 9          THE CLERK:  Okay.

10          MR. FRIEDMANN:  Seat 10, Juror 10.

11          THE CLERK:  Okay.

12          THE COURT:  That's it?

13          Okay.  Would you excuse those four?

14          THE CLERK:  Sure.

15          (In open court:)

16          THE CLERK:  The following jurors will be excused:

17  Frederick Latorella, return to the jury room; Matthew Morris;

18  Mr. Sanghvi, you'll be excused; Ms. Naughton, you'll be

19  excused.

20          Juror No. 1 is now Beth Buckley, B-U-C-K-L-E-Y.  Take

21  the first seat in the first row, ma'am.

22          Erin Rose, you'll be excused.  Would you return to the

23  jury room, please.

24          Juror No. 5 is now Claudia Edwards, E-D-W-A-R-D-S;

25  Juror No. 8 is now Lauri McGuinness.  Seat 5, ma'am.  Next
```

```
 1   empty seat.  Take the next empty seat, second row, please.
 2            Laurie Engler Fortin, you'll be excused.
 3            And Juror No. 10 is now Roy Lavender.
 4            (Discussion at sidebar and out of the hearing of the
 5   jury:)
 6            THE COURT:  You each have one left.  The defense will
 7   go first, followed by the government.  All right.  You each
 8   have one left.
 9            You will go first, followed by the government.
10            (Pause.)
11            MR. FRIEDMANN:  I'm ready, your Honor.  Seat 5, Juror
12   26.
13            THE COURT:  Wait a minute.
14            THE CLERK:  Number 23?
15            MR. FRIEDMANN:  I'm sorry.
16            MR. TUCK:  Seat 10, Juror 26.
17            THE COURT:  And from the government, anything?
18            MR. SANDS:  No, your Honor.
19            THE COURT:  No?  Okay.
20            THE CLERK:  All right.
21            (In open court:)
22            THE CLERK:  Mr. Lavender, you'll be excused.  Return
23   to the jury room.
24            Sabrina Ialuna, you may return to the jury room.
25            And Juror No. 10 is now Linda Mou.
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1              (Discussion at sidebar and out of the hearing of the
 2     jury:)
 3              THE CLERK:  It's up to you guys.  Your turn, if you
 4     want it.
 5              MR. SANDS:  We're fine, your Honor.
 6              THE COURT:  Fine?  Okay.  We have a jury.
 7              We'll take a break and let them go.  How long for
 8     opening?
 9              MS. HANKEY:  About 20 minutes.
10              THE COURT:  So we could get openings in?
11              (In open court:)
12              THE COURT:  Okay.  We're completed.  The other jurors
13     will be excused.  Take your card and return to the jury room.
14              (Remaining jury panel excused.)
15              THE COURT:  All right, jurors.  We're going to take a
16     short break now.  And I'll let you get a little comfortable.
17     Mr. Lyness, the clerk, will also show you where the jury room
18     is.  And if you have to use the facilities or something that,
19     that will be available to you now.
20              After the short break we'll come back and we'll
21     actually begin the presentation with the openings -- I have a
22     few opening introductory remarks -- but then the opening
23     statements by the lawyers, and we'll get underway.
24              So we'll take a short recess and then come back.
25              THE CLERK:  All rise.
```

```
 1              The Court will take a short recess.

 2              (The Honorable Court and jury out at 12:04 p.m.)

 3              (There is a recess in the proceedings at 12:05 p.m.)

 4

 5                    C E R T I F I C A T E

 6

 7              I, Marcia G. Patrisso, RMR, CRR, Official Reporter of

 8     the United States District Court, do hereby certify that the

 9     foregoing transcript constitutes, to the best of my skill and

10     ability, a true and accurate transcription of my stenotype

11     notes taken in the matter of Civil Action No. 06-12297-GAO, USA

12     v. Paul Revere Transportation, LLC.

13

14                        /s/ Marcia G. Patrisso
                          MARCIA G. PATRISSO, RMR, CRR
15                        Official Court Reporter

16

17

18

19

20

21

22

23

24

25
```