UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-cv-12297 GAO |
| v. | ) | |
| | ) | The Honorable George A. O'Toole, Jr. |
| | ) | |
| PAUL REVERE TRANSPORTATION, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF UNITED STATES' TRIAL BRIEF**

## I.    INTRODUCTION

Now that the Defendant, Paul Revere Transportation, LLC ("Paul Revere") has been adjudged liable by a jury for 234 separate violations of the Clean Air Act, 42 U.S.C. §7401, *et seq.* (the "Act"), the question posed in the remedy phase of this matter is how to address Paul Revere's longstanding violations.  The organizing principles of the remedy that the United States seeks are Paul Revere's continued compliance with the Act and a significant civil penalty to serve as a deterrent for future violations of the Act, by Paul Revere, but also by others in the regulated community.  As requested by the Court, this brief sets forth the appropriate legal standards to be applied in determining the appropriate remedy in this case.

The evidence will demonstrate that diesel emissions, like the emissions released from Paul Revere's Roxbury facility, negatively affect human health and the environment.  In addition, the evidence will show that Paul Revere has a history of non-compliance with the Massachusetts Idling Law, 310 C.M.R. § 711, which is part of the Massachusetts State Implementation Plan and therefore federally enforceable under the Act.  As the evidence adduced during the liability phase of the trial show, Paul Revere was cited for the same kind of violations – violations of the Massachusetts Idling Law – in 2002, and entered into an administrative settlement with the U.S. Environmental Protection Agency ("EPA") to resolve those cited violations.  As part of that settlement agreement, Paul Revere paid a civil penalty and agreed to comply with the Massachusetts Idling Law.  Despite the prior enforcement action for violations of the anti-idling regulation, the jury has found that Paul Revere continued to violate the Massachusetts Idling Law between 2003 and 2006.  Moreover, the evidence will show that the violations of the Massachusetts Idling Law at the Roxbury facility were occurring even prior to 2003.  Paul Revere received repeated complaints regarding idling at its facility, including from

1

the City, yet idling in violation of the law continued to occur.  Thus, the United States intends to demonstrate at trial that a significant civil penalty is appropriate in this matter.

### A.    *Structure and Purpose of the Clean Air Act*

The Clean Air Act, passed in 1970 was intended, in part, to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring that the air we breathe throughout the Nation is wholesome once again."  H.R. Rep. No. 91-1146, at 1 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5356, 5356.  One primary purpose of the statute is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population."  42 U.S.C. § 7401(b)(1).

### B.    *Case Background*

The trial for the remedy phase of this case, including the assessment of a civil penalty, has been set for three days beginning August 10, 2009.  During the liability phase of this case, the jury found that Paul Revere had committed 234 separate violations of the Massachusetts Idling Law.  In fact, the jury found that the company had violated the anti-idling regulation on 37 separate dates.  The remedy phase of this case addresses the appropriate relief for those violations found.

The United States' list of witnesses and evidence it expects to rely on in this phase of the trial was submitted to the Court as Appendices D, F, and G of the Joint Pretrial Memorandum that was filed by the Parties in April 2009.[1]  *See* Doc. Nos. 62-5, 62-7, and 62-8.  To the extent that Paul Revere introduces evidence or testimony on a topic or issue that has not been

---

[1] At present, the United States anticipates calling Mr. David Brzezinski, an expert on emission calculations; Dr. Marybeth Smuts, an expert on health effects and impacts of diesel emissions; and Christine Sansevero, Acting Chief of the Air Technical Unit in EPA's Region 1 office.  The United States has made no final decision on our witnesses or the precise contours of their testimony.  It should be noted that the witness list submitted by Plaintiff identifies the purpose that person's testimony.  The witness list submitted by Paul Revere in the Pretrial Memorandum does not identify the purpose or scope of that witness' testimony, nor was such information ever supplemented.

previously identified, the United States may seek the Court's permission to supplement our list of witnesses and evidence to address the new evidence presented by Defendant.

## II.    STANDARD FOR CIVIL PENALTY

The United States seeks a significant penalty for the violations found by the jury during the liability trial based on the statutory penalty scheme set forth in Section 113 of the Clean Air Act.

Congress's intent was that violators of the Clean Air Act pay significant fines. *United States v. B & W Invest. Props., Inc.*, 1994 WL 53781, at *4 (N.D. Ill. Feb. 18, 1994) *aff'd* 38 F.3d 362. "It is clear from the statutory language of the Clean Air Act that Congress envisioned penalties to serve strong deterrent purposes." *United States v. A.A. Mactal Constr. Co. Inc.,* No. 89-2372-V, 1992 WL 245690, at *1 (D. Kan. Apr. 10, 1992). Discussing a similar penalty provision in the Clean Water Act, the United States Supreme Court found that, "The legislative history of the Act reveals that Congress wanted the district court to consider the need for retribution and deterrence, in addition to restitution, when it imposed civil penalties." *Tull v. United States,* 481 U.S. 412, 422 (1987). To serve as a deterrent, a civil penalty must be high enough to preclude violators from simply absorbing the penalty as a cost of doing business. *A.A. Mactal Constr. Co.,* 1992 WL 245690, at *2. "[D]eterrence is effective only to the extent that the risk of incurring significant civil penalties for noncompliance is real and substantial." *Id.*

The majority of the courts calculate a fine under the Clean Air Act by starting with the maximum penalty and applying the factors set forth in the Act to determine whether a reduction is appropriate. *See, United States v. Dell'Aquilla*, 150 F.3d 329, 338 (3rd Cir. 1998); *see also*, *Pound v. Airosol Co.*, 498 F.3d 1089, 1095 (10th Cir. 2007) ("When starting with the maximum penalty, courts then consider the factors described in 42 U.S.C. § 7413(e) to determine what

degree of mitigation, if any, is proper."); *United States v. Marine Shale Processors*, 81 F.3d 1329, 1337 (5th Cir. 1996) ("we note that when imposing penalties under the environmental laws, courts often begin by calculating the maximum possible penalty, then reducing that penalty only if mitigating circumstances are found to exist."); *United States v. B & W Inv. Props.,* 38 F.3d 362, 368 (7th Cir. 1994) (citing *United States v. Midwest Suspension & Brake,* 824 F. Supp 713, 735 (E.D. Mich. 1993)) ("in calculating the amount of civil penalties to be imposed on defendant, this court must start with the statutory maximum and make any downward adjustments based on the evidence adduced at trial."); *cf. Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1142 (11th Cir. 1990) ("Upon remand, the district court should first determine the maximum fine . . . . If it chooses not to impose the maximum, it must reduce the fine in accordance with the factors spelled out in [the statute], clearly indicating the weight it gives to each of the factors in the statute and the factual findings that support its conclusions.")[2]

## A.     *The Statutory Maximum*

Here, the maximum fine is $27,500 per day per violation for each violation found between January 31, 1997 and March 15, 2004; and $32,500 per day per violation for each violation found between March 16, 2004 and January 12, 2009. *See* 40 C.F.R. § 19.  During the trial, the jury determined that Paul Revere had committed a total of 45 violations of the federally-enforceable Massachusetts Idling Law between January 27, 2003 and February 22, 2004.  The jury further found that Paul Revere had committed an additional 189 violations between January 17, 2005 and April 12, 2006.  Thus, the penalty assessed by this Court should reflect, as an initial

---

[2] *Tyson Foods* dealt with violations of the Clean Water Act, rather than the Clean Air Act.  However, several Circuit Courts have found parity between the penalty provisions of the Clean Water Act and the Clean Air Act and deemed them to be in *pari materia*.  Consequently, courts have often relied on interpretations of the Clean Water Act to assist with an analysis under the Clean Air Act.  *See, e.g.*, *United States v. Stauffer Chemical Co.*, 684 F.2d 1174 (6th Cir. 1982), *aff'd*, 464 U.S. 165 (1984); *Public Interest Research Group of N.J. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64 (3rd Cir. 1990).

matter, the jury's finding of more than 200 separate violations of the Act between January 2003 and April 2006.

### B.    The Court Must Apply the Factors Set Forth in Section 113(e) of the Act, if Necessary

The factors a court is to consider when determining whether any downward adjustment in the statutory maximum penalty is justified are set forth in Section 113(e)(1) of the Clean Air Act:

> (in addition to such other factors as justice may require) the size of the business, the economic impact of the penalty on the business, the violator's full compliance history and good faith efforts to comply, the duration of the violation as established by any credible evidence (including evidence other than the applicable test method), payment by the violator of penalties previously assessed for the same violation, the economic benefit of noncompliance, and the seriousness of the violation.

42 U.S.C. § 7413(e)(1).  The Act "does not prescribe with precision how or with what weight to apply" the factors.  *B & W Inv. Props.*, 38 F.3d at 368.  However, guidance may be obtained from a review of how other courts have considered the factors.  After considering the Section 113(e)(1) factors in this case, the Court should find that no significant downward adjustment in the statutory maximum penalty is justified for Paul Revere.

*Size of the Business*.  Paul Revere operates a sizeable fleet of vehicles and the United States does not expect any evidence to be presented to justify a significant reduction in the penalty based upon this factor.

*Economic Impact on the Business*.  Paul Revere has indicated that it intends to introduce evidence related to the impact of a penalty on the business.  However, the penalty is designed to punish and deter noncompliance, and the burden is on the defendant to prove that a proposed penalty would have a ruinous effect, thereby justifying a reduction.  *See United States v. Gulf Park Water Co., Inc.*, 14 F. Supp.2d 854, 868 (S.D. Miss. 1998).

*Compliance History and Good Faith Efforts to Comply.*  As the evidence adduced during the liability trial clearly established, Paul Revere was cited by EPA for violations of the same Massachusetts Idling Law in 2002 as a result of buses idling at Logan Airport.  Paul Revere entered into an administrative settlement with the Agency and paid a penalty for those violations.  The evidence established that while Paul Revere did take some steps to inform its workforce about the idling regulation, those steps were in direct response to the 2002 Notice of Violation from EPA and subsequent administrative settlement.  So, while Paul Revere has indicated that it intends to offer evidence of its efforts to comply, the context in which those efforts were undertaken must also be considered.  Moreover, the evidence will show that Paul Revere did not adequately monitor the Roxbury facility in the early morning hours when this idling was generally occurring, failing to provide oversight over its employees.  Additionally, the evidence will show this failure to monitor persisted despite receipt of repeated complaints, including from the City, regarding excessive idling at the Roxbury facility.

*Duration of the Violation.*  The jury found violations dating back to as early as January 2003 and through April 2006.  The evidence will show that violations at the Roxbury facility began before 2003 and that Paul Revere had a routine practice of violating the Massachusetts Idling law.

*Payments for Same Violations.*  Defendants have not paid a penalty for any of the violations at issue, so there is no cause for reducing the statutory maximum based on this factor.

*Economic Benefit of Non-Compliance.*  The United States believes that the evidence will demonstrate that Paul Revere received an economic benefit from its noncompliance with the Massachusetts Idling Law.  However, considering the nature of the violations, this should be a minimal factor for the Court to consider.

*Seriousness of the Violation*.  This case involves numerous violations of the Massachusetts Idling Law.  Despite being cited for violations of the same regulation in 2002, Paul Revere failed to ensure that the violations would not continue.  The evidence will demonstrate that these violations are significant both for their environmental and health impacts and because they represent Paul Revere's failure to ensure compliance with the law, even after the 2002 administrative settlement with EPA.  Diesel exhaust contributes to many environmental and health problems.  Constituents of diesel exhaust contribute to respiratory problems, such as asthma, and to both carcinogenic and non-carcinogenic health effects.  Massachusetts has some of the highest asthma rates in the Country, especially for children, and Roxbury, where Paul Revere's violations occurred has some of the highest rates in Boston.  Paul Revere's Roxbury facility is located in an area where sensitive populations, including children and hospitals, are nearby.  Additionally, Boston has some of the highest densities of air toxics – constituents of diesel emissions – in the Country.

*Other Factors as Justice May Require*.  In addition to the enumerated factors identified above, the Act also allows the courts to consider "such other factors as justice may require."  42 U.S.C. § 7413(e)(1).  In this case, the Court should consider other factors, such as Paul Revere's cooperation in addressing the violations, its willingness to comply, and the costs the United States was compelled to incur in enforcing this action against Paul Revere.

When all relevant factors are considered, a significant penalty should be assessed to deter Paul Revere from future violations of the Massachusetts Idling Law, as well as others in the regulated community who affect the air quality of Boston area residents.

## III.    STANDARD FOR INJUNCTIVE RELIEF

The traditional standard for an injunction requires the plaintiff to show:

7

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

While the proof that the United States presents will be sufficient to compel an injunction under this traditional weighing analysis, this is not the typical case for injunctive relief, and thus an injunction is even more compelling. First, this case involves environmental harm. "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987); *see also United States v. Prod. Plated Plastics, Inc.*, 762 F. Supp 722, 729 (W.D. Mich. 1991) ("an injunction is normally the proper remedy for violations of an environmental statute."). Therefore, if the injury is sufficiently likely, the "balance of harms will usually favor the issuance of an injunction to protect the environment." *Village of Gambell*, 480 U.S. at 545.

Second, Congress "has already balanced the equities and has determined that, as a matter of public policy, an injunction should issue where the defendant is engaged in, or is about to engage in, any activity which the statute prohibits." *Burlington N. R.R. Co. v. Bair*, 957 F.2d 599, 601-02 (8th Cir. 1992) (citing *Atchison, T. & S.F. Ry. v. Lennen*, 640 F.2d 255, 259, 261 (10th Cir. 1981)).

Finally, Plaintiffs here are acting on behalf of the public, further tilting the traditional analysis toward granting an injunction. "[W]hen the plaintiff is a governmental entity, or private attorney general, and the activity may endanger public health, injunctive relief is proper without undertaking a balancing of the equities." *Prod. Plated Plastics* , 762 F. Supp. at 728 (citing

8

*Envtl. Def. Fund, Inc. v. Lamphier*, 714 F.2d 331, 337-38 (4th Cir. 1983)).  The Supreme Court has made clear that sovereigns are "somewhat more certainly entitled to specific relief than a private party might be."  *Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 237 (1907) (Holmes, J.).  "[W]hen the United States or a sovereign state sues in its capacity as protector of the public interest, a court may rest an injunction entirely upon a determination that the activity at issue *constitutes a risk of danger to the public*."  *United States v. Marine Shale Processors*, 81 F.3d 1329, 1359 (5th Cir. 1996) (emphasis added) (referring to the idea as a "traditional principle of equity" and citing cases).

In this case, the factors outlined above apply: the case involves environmental harm, and the United States is acting to protect the public in an area where Congress has established priorities.  Thus, after hearing the proof and deciding that these factors are present, the Court can order an injunction without resorting to the traditional equitable balancing.  The Seventh Circuit has stated that, "Where the plaintiff is a sovereign and where the activity may endanger the public health, 'injunctive relief is proper, without resort to balancing.'"  *U.S. E.P.A. v. Environmental Waste Control, Inc.*, 917 F.2d 327, 332 (7th Cir. 1990) (citing *Lamphier*, 714 F.2d at 337-38) (additional internal citations omitted); *see also United States v. Bethlehem Steel Corp.*, 38 F.3d 862, 867-68 (7th Cir. 1994) (in environmental case with United States as plaintiff, it was "not improper for the district court to have awarded injunctive relief . . . without conducting an equitable balancing.").  If the Court decides that the traditional equitable framework is appropriate here, the fact that this case involves sovereigns acting on behalf of the public interest to enforce a federal statute designed to protect human health means that the analysis is weighted heavily in favor of injunctive relief.  *See Maine People's Alliance v. Mallinckrodt, Inc.*, 471 F.3d 277, 296 (1st Cir. 2006) (finding trial court should consider balance

of harms in case under environmental statute, but adding, "We caution, however, that the operation of that framework is inevitably colored by the nature of the case and the purposes of the underlying environmental statute").

## CONCLUSION

The jury found that Paul Revere violated the Massachusetts Idling Law on 234 separate occasions at its Roxbury facility.  Plaintiff's evidence at trial will show that these violations negatively affect human health and the environment in the community surrounding the Roxbury facility.  This is not the first time that Paul Revere has been found to have violated this anti-idling regulation.  After entering into an administrative settlement with EPA in 2002 and paying a penalty in conjunction with that settlement, the evidence reveals that the idling of vehicles at Paul Revere's facility continued for extended periods, far in excess of the five minutes allowed under the law.  In addition, the measures taken by Paul Revere to address the idling in 2002 were clearly insufficient to prevent further violations and the amount of the penalty paid for each violation was not an effective deterrent to ensure future compliance. Consequently, the United States will ask this Court to assess a substantial penalty against Paul Revere for the violations found by the jury, and to order such injunctive relief as the Court deems appropriate in light of the evidence presented.

Respectfully submitted,

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

10

_/s/Jeffrey K. Sands_____
RACHEL A. HANKEY
JEFFREY K. SANDS
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC  20044
(202) 514-3908
jeffrey.sands@usdoj.gov


MICHAEL K. LOUCKS
Acting United States Attorney
District of Massachusetts

GEORGE B. HENDERSON, II
Assistant U.S. Attorney
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617) 748-3272
George.henderson2@usdoj.gov


OF COUNSEL:
GREG DAIN
Senior Enforcement Counsel
U.S. Environmental Protection Agency
One Congress Street
Boston, MA 02114
(617) 918-1777

11